**14 CV 8659**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PERRY CIRAULU, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, DAVID S. KAY, BRIAN BLOCK, and LISA MCALISTER, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |



RECEIVED
OCT 30 2014
U.S.D.C. S.D. N.Y.
CASHIERS

**CLASS ACTION COMPLAINT**

Plaintiff Perry Ciraulu ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding American Realty Capital Properties, Inc., ("American Realty" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired American Realty securities between February 27, 2014 and October 28, 2014, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     American Realty Capital Properties, Inc. owns and acquires single tenant, freestanding commercial real estate that is net leased on a medium-term basis, primarily to investment grade credit rated and other creditworthy tenants. The company principally invests in retail and office properties. As of June 20, 2012, its portfolio consisted of 118 properties.

3.     The company was founded in 2010, is based in New York, New York, and its shares trade on the NASDAQ under the ticker symbol "ARCP."

4.     Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) American Realty's financial statements contained errors related to the improper classification of its adjusted funds from operations, ("AFFO"), resulting in an overstatement of AFFO for the three months ended March 31, 2014 and an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014; (2) American Realty lacked adequate internal controls over financial reporting; and (3) as a result of the foregoing, American Realty's public statements were materially false and misleading at all relevant times.

5.    On October 29, 2014, the Company issued a press release and filed a Form 8-K

with the SEC, announcing that certain of its previously issued financial statements contained

errors and should no longer be relied upon.  In addition, the Company announced the resignation

of its CFO and Chief Accounting Officer who had key roles in preparing the financial

statements. In the press release, the Company stated, in part:

> NEW YORK, NY October 29, 2014 – American Realty Capital Properties, Inc.
> ("ARCP") (NASDAQ: ARCP) announced today the conclusion of its Audit
> Committee that **the previously issued financial statements and other financial
> information contained in the Company's Annual Report on Form 10-K for
> the fiscal year ended December 31, 2013 and Quarterly Reports on Form 10-
> Q for the fiscal periods ended March 31, 2014 and June 30, 2014, and the
> Company's earnings releases and other financial communications for these
> periods, should no longer be relied upon**. The Audit Committee based its
> conclusions on the preliminary findings of its investigation into concerns that
> were first reported to it on September 7, 2014. The Audit Committee promptly
> initiated an investigation, which is being conducted with the assistance of
> independent counsel and forensic experts. Senior management was informed of
> the preliminary findings of the investigation on October 24, 2014.

> \*        \*        \*

> [B]ased on the preliminary findings of the investigation, the Audit Committee
> believes that the Company incorrectly included certain amounts related to its non-
> controlling interests in the calculation of adjusted funds from operations
> ("AFFO"), a non-U.S. GAAP financial measure, for the three months ended
> March 31, 2014 and, as a result, overstated AFFO for this period. **The Audit
> Committee believes that this error was identified but intentionally not
> corrected, and other AFFO and financial statement errors were intentionally
> made**, resulting in an overstatement of AFFO and an understatement of the
> Company's net loss for the three and six months ended June 30, 2014.

> \*        \*        \*

> The investigation is ongoing and there can be no assurance that the potential
> adjustments set forth in the attached financial table will not change based upon
> the final results of the investigation, and any such change could be material.

> The Audit Committee has indicated that nothing has come to its attention that
> leads it to believe that there are any errors in the Company's previously issued
> audited consolidated financial statements for the fiscal year ended December 31,
> 2013 contained in the Company's 2013 Form 10-K. However, the Audit
> Committee has expanded its investigation to encompass the Company's audited

financial statements for this period in light of the fact that the Company's former Chief Financial Officer and former Chief Accounting Officer had key roles in the preparation of those financial statements.

*      *      *

The Company also announced that effective immediately, Michael Sodo has been named Chief Financial Officer of the Company, replacing Brian Block . . . . Gavin Brandon will serve as Chief Accounting Officer, replacing Lisa McAlister and reporting to Mr. Sodo . . . . **Mr. Block and Ms. McAlister have resigned effective immediately.**

**In light of the preliminary findings of the Audit Committee's investigation, the Company is re-evaluating its financial reporting controls and procedures.** The Company intends to make the necessary changes to its controls and procedures to remediate any control deficiencies that are identified through the Audit Committee's investigation.

The Company will work with the Audit Committee and the Audit Committee's independent advisors to determine the adjustments required to be made to the Company's previously issued financial statements, including the calculation of AFFO, as expeditiously as possible. Upon completion of this process, which could identify further required adjustments in addition to those discussed above, the Company will restate prior financial statements and amend its prior periodic filings to the extent required and update its earnings guidance at that time.

The Company will file its Quarterly Report on Form 10-Q for the period ended September 30, 2014 after the amended filings have been made.

6.     As a result of this news, shares of American Realty fell as much as $4.53 or over 36% in intraday trading, on extremely heavy volume, to as low as $7.85 on October 29, 2014.

7.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant is headquartered in this District and a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired American Realty securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant American Realty is a Delaware corporation with its principal executive offices located at 405 Park Avenue, New York, N.Y.  American Realty's common stock trades on the NASDAQ under the ticker symbol "ARCP."

14.     Defendant Nicholas S. Schorsch ("Schorsch") has served at all relevant times as the Company's Chairman of the Board and until September 30, 2014, as the Company's Chief Executive Officer ("CEO").

15.     David S. Kay ("Kay") has served from December 2013 until September 30, 2014 as the company's President, and from October 1, 2014, as the Company's Chief Executive Officer ("CEO").

16.     Defendant Brian Block ("Block") has served at all relevant times until his resignation on October 29, 2014, as the Company's Chief Financial Officer ("CFO").

17.    Defendant Lisa McAlister ("McAlister") has served at all relevant times until her resignation on October 29, 2014, as the Company's Chief Accounting Officer.

18.    The defendants referenced above in ¶¶ 14 - 17 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.    American Realty Capital Properties Inc. is a real estate investment trust. The Trust is focused on owning and acquiring single tenant freestanding commercial real estate properties subject to medium-term leases with high credit quality tenants. As of June 20, 2012, its portfolio consisted of 118 properties.

20.    The company was founded in 2010, is based in New York, New York, and its shares trade on the NASDAQ under the ticker symbol "ARCP."

### Materially False and Misleading
### Statements Issued During the Period

21.    On February 27, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2013. Total revenues were $94.1 million for the three months ended December 31, 2013, compared to revenues for the three months ended September 30, 2013 of $61.0 million, representing a 54.3% increase. Total revenues were $240.5 million for the 12 months ended December 31, 2013, compared to $66.8 million for the prior year. Property Level net operating income ("NOI") was $83.3 million for the three months ended December 31, 2013, compared to NOI for the three months ended September 30, 2013 of $56.9 million, representing a 46.4% increase. NOI was $220.6 million for the 12 months ended December 31, 2013 compared to $63.3 million for the 12 months ended December 31, 2012, representing a 249%

increase.  AFFO for the three months ended December 31, 2013, totaled $55.8 million, or $0.25

per fully diluted share. AFFO for the 12 months ended December 31, 2013 totaled $163.9

million, or $0.86 per share fully diluted.

22.    In the press release, the Company defined the terms "Funds From Operations and

Adjusted Funds From Operations" stating, in part:

> <u>Funds From Operations and Adjusted Funds From Operations</u>
>
> Due to certain unique operating characteristics of real estate companies, as
> discussed below, the National Association of Real Estate Investment Trusts, Inc.
> ("NAREIT"), an industry trade group, has promulgated a measure known as funds
> from operations ("FFO"), which we believe to be an appropriate supplemental
> measure to reflect the operating performance of a REIT. The use of FFO is
> recommended by the REIT industry as a supplemental performance measure. FFO
> is not equivalent to our net income or loss as determined under U.S. GAAP.
>
> We define FFO, a non-GAAP measure, consistent with the standards established
> by the White Paper on FFO approved by the Board of Governors of NAREIT, as
> revised in February 2004 (the "White Paper"). The White Paper defines FFO as
> net income or loss computed in accordance with U.S. GAAP, excluding gains or
> losses from sales of property but including asset impairment write downs, plus
> depreciation and amortization, after adjustments for unconsolidated partnerships
> and joint ventures. Adjustments for unconsolidated partnerships and joint ventures
> are calculated to reflect FFO. Our FFO calculation complies with NAREIT's
> policy described above.
>
> *     *     *
>
> By providing AFFO, we believe we are presenting useful information that assists
> investors and analysts to better assess the sustainability of our ongoing operating
> performance without the impacts of transactions that are not related to the
> ongoing profitability of our portfolio of properties. We also believe that AFFO is
> a recognized measure of sustainable operating performance by the REIT industry.
> Further, we believe AFFO is useful in comparing the sustainability of our
> operating performance with the sustainability of the operating performance of
> other real estate companies that are not as involved activities which are excluded
> from our calculation.
>
> *     *     *
>
> As a result, we believe that the use of FFO and AFFO, together with the required
> U.S. GAAP presentations, provide a more complete understanding of our

performance relative to our peers and a more informed and appropriate basis on which to make decisions involving operating, financing, and investing activities.

23.    On February 27, 2012, the Company filed a Form 10-K with the SEC which was signed by all of the Individual Defendants, and reiterated the Company's previously announced quarterly and fiscal year-end financial results and financial position. In addition, the 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Schorsch and Block, stating, in part:

> 1. I have reviewed this Quarterly Report on Form 10-Q of American Realty Capital Properties Inc.;
>
> 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
>
> 4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
>> (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
>>
>> (b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

24.     On May 8, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the first quarter ending March 31, 2014.   Total revenues were $320.6 million for the three months ended March 31, 2014, compared to $42.9 million, for the year-ago period, representing an increase of 647.4%.   NOI was $236.9 million for the three months ended March 31, 2014, compared to NOI of $40.3 million, for the year-ago period, representing a 487.2% increase. Funds from operations ("FFO") for the three months ended March 31, 2014 totaled $(183.8) million.  AFFO  for the three months ended March 31, 2014 totaled $147.4 million, or $0.26 per fully diluted share.

25.     In the press release, the Company included a substantially similar explanation of FFO and AFFO as those set forth in the Company's earlier press release referenced above in ¶22.

26.     On May 8, 2014, the Company filed a Form 10-Q with the SEC which was signed by Defendants Schorsch and Block, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Schorsch and Block, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On May 21, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing it had commenced a public offering of 100,000,000 shares of its common stock. The Company stated that it expects to grant the underwriters a 30-day option to purchase up to 15,000,000 additional shares of common stock and that it intends to use the net proceeds of the offering (a) to repay outstanding indebtedness under its existing credit facility and (b) for other general corporate purposes. Amounts repaid under such credit facility may, subject to the satisfaction of customary draw conditions, be reborrowed by ARCP at any time, including to fund acquisitions consistent with ARCP's acquisition strategy.

28.     On May 28, 2014, the Company issued a press release and filed a Form 8-K with the SEC announcing the closing of its previously announced public offering which had been increased on May 22, 2014 to an offering of 138,000,000 shares, including an underwriter option of 18,000,000 additional shares. The Company sold 138,000,000 shares of its common stock, par value $0.01 per share, at a price of $12.00 per share (before underwriting discounts and commissions). The 138,000,000 shares sold included the exercise in full by the underwriters of their option to purchase up to 18,000,000 shares.

29.     On July 29, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the second quarter ending June 30,

2014. Total revenues were $382.0 million for the three months ended June 30, 2014, compared to $54.9 million for the prior year period, representing an increase of 595.2%.  NOI was $305.2 million for the three months ended June 30, 2014, compared to NOI of $51.9 million for the prior year period, representing a 488.1% increase.   FFO for the three months ended June 30, 2014 totaled $174.7 million, or $0.20 per share fully diluted. FFO for the six months ended June 30, 2014 totaled ($15.1) million.  AFFO for the three months ended June 30, 2014 totaled $205.3 million or $0.24 per fully diluted share. AFFO for the six months ended June 30, 2014 totaled $353.1 million, or $0.49 per fully diluted share.

30.    In the press release, the Company included a substantially similar explanation of FFO and AFFO as those set forth in the Company's earlier press release referenced above in ¶22.

31.    On July 29, 2014 the Company filed a Form 10-Q with the SEC which was signed by Defendants Schorsch, Block, and McAlister, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Schorsch and Block, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.    The statements referenced in ¶¶ 21-26 and 29-31 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) American Realty's financial statements contained errors related to the improper classification of its adjusted funds from operations, or AFFO, resulting in an overstatement of AFFO for the three months ended March 31, 2014 and an overstatement of AFFO and an understatement of the

11

Company's net loss for the three and six months ended June 30, 2014; (2) American Realty lacked adequate internal control over financial reporting; and (4) as a result of the foregoing, American Realty's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

33.    On October 29, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing that certain of its previously issued financial statements contained errors and should no longer be relied upon. In addition the Company announced the resignation of its CFO and Chief Accounting Officer who had key roles in preparing the aforementioned financial statements. In the press release, the Company stated, in part:

> NEW YORK, NY October 29, 2014 – American Realty Capital Properties, Inc. ("ARCP") (NASDAQ: ARCP) announced today the conclusion of its Audit Committee that **the previously issued financial statements and other financial information contained in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 and Quarterly Reports on Form 10-Q for the fiscal periods ended March 31, 2014 and June 30, 2014, and the Company's earnings releases and other financial communications for these periods, should no longer be relied upon**. The Audit Committee based its conclusions on the preliminary findings of its investigation into concerns that were first reported to it on September 7, 2014. The Audit Committee promptly initiated an investigation, which is being conducted with the assistance of independent counsel and forensic experts. Senior management was informed of the preliminary findings of the investigation on October 24, 2014.
>
> \*      \*      \*
>
> [B]ased on the preliminary findings of the investigation, the Audit Committee believes that the Company incorrectly included certain amounts related to its non-controlling interests in the calculation of adjusted funds from operations ("AFFO"), a non-U.S. GAAP financial measure, for the three months ended March 31, 2014 and, as a result, overstated AFFO for this period. **The Audit Committee believes that this error was identified but intentionally not corrected, and other AFFO and financial statement errors were intentionally made**, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014.
>
> \*      \*      \*

The investigation is ongoing and there can be no assurance that the potential adjustments set forth in the attached financial table will not change based upon the final results of the investigation, and any such change could be material.

The Audit Committee has indicated that nothing has come to its attention that leads it to believe that there are any errors in the Company's previously issued audited consolidated financial statements for the fiscal year ended December 31, 2013 contained in the Company's 2013 Form 10-K. However, the Audit Committee has expanded its investigation to encompass the Company's audited financial statements for this period in light of the fact that the Company's former Chief Financial Officer and former Chief Accounting Officer had key roles in the preparation of those financial statements.

*     *     *

The Company also announced that effective immediately, Michael Sodo has been named Chief Financial Officer of the Company, replacing Brian Block . . . . Gavin Brandon will serve as Chief Accounting Officer, replacing Lisa McAlister and reporting to Mr. Sodo . . . . **Mr. Block and Ms. McAlister have resigned effective immediately.**

**In light of the preliminary findings of the Audit Committee's investigation, the Company is re-evaluating its financial reporting controls and procedures.** The Company intends to make the necessary changes to its controls and procedures to remediate any control deficiencies that are identified through the Audit Committee's investigation.

The Company will work with the Audit Committee and the Audit Committee's independent advisors to determine the adjustments required to be made to the Company's previously issued financial statements, including the calculation of AFFO, as expeditiously as possible. Upon completion of this process, which could identify further required adjustments in addition to those discussed above, the Company will restate prior financial statements and amend its prior periodic filings to the extent required and update its earnings guidance at that time.

The Company will file its Quarterly Report on Form 10-Q for the period ended September 30, 2014 after the amended filings have been made.

34.     As a result of this news, shares of American Realty fell as much as $4.53 or over 36% in intraday trading, on extremely heavy volume, to as low as $7.85 on October 29, 2014.

35.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired American Realty securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, American Realty securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by American Realty or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of American Realty;

- whether the Individual Defendants caused American Realty to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of American Realty securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- American Realty securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold American Realty securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the

other members of the Class; made various untrue statements of material facts and omitted to state

material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; and employed devices, schemes and artifices to

defraud in connection with the purchase and sale of securities.  Such scheme was intended to,

and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and

other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of

American Realty securities; and (iii) cause Plaintiff and other members of the Class to purchase

or otherwise acquire American Realty securities and options at artificially inflated prices.  In

furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them,

took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the

defendants participated directly or indirectly in the preparation and/or issuance of the quarterly

and annual reports, SEC filings, press releases and other statements and documents described

above, including statements made to securities analysts and the media that were designed to

influence the market for American Realty securities.   Such reports, filings, releases and

statements were materially false and misleading in that they failed to disclose material adverse

information and misrepresented the truth about American Realty's finances and business

prospects.

49.     By virtue of their positions at American Realty, defendants had actual

knowledge of the materially false and misleading statements and material omissions alleged

herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the

alternative, defendants acted with reckless disregard for the truth in that they failed or refused to

ascertain and disclose such facts as would reveal the materially false and misleading nature of

the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of American Realty securities from their personal portfolios.

51. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of American Realty, the Individual Defendants had knowledge of the details of American Realty's internal affairs.

52. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of American Realty. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to American Realty's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of American Realty securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning American Realty's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired American Realty securities at artificially

inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

53.     During the Class Period, American Realty securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of American Realty securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of American Realty securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of American Realty securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

54.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     During the Class Period, the Individual Defendants participated in the operation and management of American Realty, and conducted and participated, directly and indirectly, in the conduct of American Realty's business affairs.  Because of their senior positions, they knew the adverse non-public information about American Realty's misstatement of income and expenses and false financial statements.

58.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to American Realty's financial condition and results of operations, and to correct promptly any public statements issued by American Realty which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which American Realty disseminated in the marketplace during the Class Period concerning American Realty's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause American Realty to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of American Realty within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of American Realty securities.

60.     Each of the Individual Defendants, therefore, acted as a controlling person of American Realty.  By reason of their senior management positions and/or being directors of American Realty, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, American Realty to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of American Realty and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by American Realty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

21

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 30, 2014

Respectfully submitted,

POMERANTZ, LLP

Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        fmcconville@pomlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1.  I, _Perry P. Ciraulo_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against American Realty Capital Properties, Inc. ("American Realty" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire American Realty securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired American Realty securities during the class period, including providing testimony at deposition and trial, if necessary.   I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in American Realty securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed   <u>OctoBER 30, 2014</u>
               **(Date)**

                                                         **(Signature)**

                                   PERRY P. CiRAuLo

                                      **(Type or Print Name)**

**AMERICAN REALTY CAPITAL PROPERTIES (ARCP)**    **Ciraulo, Perry P.**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 10/7/2014 | PUR | 1,000 | $11.9099 |