# Exhibit A

*Source: Pomerantz LLP*
*October 30, 2014 12:33 ET*

# Pomerantz Law Firm Announces the Filing of a Class Action Against American Realty Capital Properties, Inc. and Certain Officers -- ARCP

NEW YORK, Oct. 30, 2014 (GLOBE NEWSWIRE) -- Pomerantz LLP has filed a class action lawsuit against American Realty Capital Properties, Inc. ("American Realty" or the "Company") (Nasdaq: ARCP) and certain of its officers. The class action, filed in United States District Court, Southern District of New York, and docketed under 14-cv-08659, is on behalf of a class consisting of all persons or entities who purchased American Realty securities between February 27, 2014 and October 28, 2014, inclusive (the "Class Period"). This class action seeks to recover damages against Defendants for alleged violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

If you are a shareholder who purchased American Realty securities during the Class Period, you have until December 29, 2014 to ask the Court to appoint you as Lead Plaintiff for the class. A copy of the Complaint can be obtained at www.pomerantzlaw.com. To discuss this action, contact Robert S. Willoughby at rswilloughby@pomlaw.com or 888.476.6529 (or 888.4-POMLAW), toll free, x237. Those who inquire by e-mail are encouraged to include their mailing address, telephone number, and number of shares purchased.

American Realty Capital Properties, Inc. owns and acquires single tenant, freestanding commercial real estate that is net leased on a medium-term basis, primarily to investment grade credit rated and other creditworthy tenants. The company principally invests in retail and office properties. As of June 20, 2012, its portfolio consisted of 118 properties.

The Complaint alleges that throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) American Realty's financial statements contained errors related to the improper classification of its adjusted funds from operations, ("AFFO"), resulting in an overstatement of AFFO for the three months ended March 31, 2014 and an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014; (2) American Realty lacked adequate internal controls over financial reporting; and (3) as a result of the foregoing, American Realty's public statements were materially false and misleading at all relevant times.

On October 29, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing that certain of its previously issued financial statements contained errors and should no longer be relied upon. In addition, the Company announced the resignation of its CFO and Chief Accounting Officer who had key roles in preparing the Company's financial statements.

On this news, shares of American Realty fell as much as $4.53, or over 36%, in intraday trading, on extremely heavy volume, to as low as $7.85 on October 29, 2014.

The Pomerantz Firm, with offices in New York, Chicago, Florida, and San Diego, is acknowledged as one of the premier firms in the areas of corporate, securities, and antitrust class litigation. Founded by the late Abraham L. Pomerantz, known as the dean of the class action bar, the Pomerantz Firm pioneered the field of securities class actions. Today, more than 70 years later, the Pomerantz Firm continues in the tradition he established, fighting for the rights of the victims of securities fraud, breaches of fiduciary duty, and corporate misconduct. The Firm has recovered numerous multimillion-dollar damages awards on behalf of class members. See www.pomerantzlaw.com.

```
Robert S. Willoughby
Pomerantz LLP
```

Retrieved from "http://globenewswire.com/news-release/2014/10/30/678321/10105497/en/Pomerantz-Law-Firm-Announces-the-Filing-of-a-Class-Action-Against-American-Realty-Capital-Properties-Inc-and-Certain-Officers-ARCP.html"

# Exhibit B

# CERTIFICATION ON BEHALF OF SJUNDE AP-FONDEN

I, Richard Gröttheim, on behalf of Sjunde AP-Fonden ("AP7"), make this Certification pursuant to 28 U.S.C. § 1746 and 15 U.S.C. § 78u-4, and state as follows:

1. I am the Chief Executive Officer of AP7. I am familiar with the matters set forth herein and am duly authorized to make this certification on behalf of AP7.

2. I have reviewed the first-filed securities class action complaints filed against American Realty Capital Properties, Inc. ("ARCP"), on behalf of purchasers of ARCP common stock and I submit this certification in support of the motion to be appointed lead plaintiff and for approval of its selection of counsel in the class action (the "Motion"). AP7 has authorized the filing of the Motion.

3. Attached as **Schedule A** to this Certification is a list of AP7's transactions in the securities that are the subject of the action.

4. AP7 did not purchase the securities that are the subject of the action at the direction of counsel or in order to participate in any private action. AP7 invested in ARCP common stock solely for its own business purposes.

5. AP7 is willing and able to serve as a lead plaintiff in a representative capacity on behalf of the proposed class in the action, including providing testimony at deposition and trial, if necessary.

6. AP7 has served as a representative party for a class in the following matters under the federal securities laws during the last three years:

- *Louisiana Municipal Police Employees' Retirement System, et al. v. Green Mountain Coffee Roasters, Inc., et al.*, U.S. District Court for the District of Vermont, 11-289

- *In re JPMorgan Chase & Co. Securities Litigation*, U.S. District Court for the Southern District of New York, 12-3852

- *United Union of Roofers Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Financial Corporation*, U.S. District Court for the Southern District of Florida, 14-81057

AP7 has sought, but has not been appointed, to serve as a representative party for a class in the following actions under the federal securities laws during the last three years:

- *In re Genworth Financial, Inc. Securities Litigation*, U.S. District Court for the Eastern District of Virginia, 14-682

7.    AP7 will not accept any payment for serving as a representative party on behalf of the class beyond its *pro rata* share of any recovery, except such reasonable costs and expenses as may be ordered and approved by the court.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 19th day of December 2014.

Sjunde AP-Fonden

By: _____

Richard Gröttheim

## Schedule A
## Sjunde AP-Fonden

**Cusip:**        02917T104
**Ticker:**        ARCP
**Class Period:**   May 6, 2013 through October 29, 2014

| Class Period Purchases/Acquisitions | | | | Class Period Sales | | |
|---|---|---|---|---|---|---|
| Trade Date | Quantity | Price | | Trade Date | Quantity | Price |
| 01/17/14 | 352,970 | $13.99 | | | | |
| 02/10/14 | 69,540 | $13.75 | | | | |
| 04/11/14 | 23,931 | $13.40 | | | | |
| 05/30/14 | 61,600 | $12.41 | | | | |
| 07/31/14 | 171,270 | $13.10 | | | | |
| 10/02/14 | 20,663 | $12.04 | | | | |



# Exhibit C



**American Realty Capital**
**May 6, 2013 through October 29, 2014**
**AP7**

| Loss Summary: | Shares | Avg Price | Value | Losses by section |
|---|---|---|---|---|
| Section I: Opening Position | 0 | | | |
| Section I: Sales Offsetting Opening Position | 0 | | $0 | $0 |
| Section II Purchases: Purchased and Sold in the Period | 0 | | $0 | |
| Section II Sales:  Purchased and Sold in the Period | 0 | | $0 | $0 |
| Section III Purchases: Purchased in and Sold After the Period | 0 | | $0 | |
| Section III Sales: Purchased in and Sold After the Period | 0 | | $0 | $0 |
| Section IV Purchases: Purchased and Held | 699,974 | $13.53 | $9,472,432 | ($3,251,784) |
| 90-Day Average Lookback Price | | $8.8870 | | |
| **Total FIFO/LIFO Losses** | | | | **($3,251,784)** |

| | | | | |
|---|---|---|---|---|
| Class Period Purchases | 699,974 | | $9,472,432 | |
| Class Period Sales | 0 | | $0 | |
| Net | 699,974 | | $9,472,432 | |

| | |
|---|---|
| **Total Offset Losses** | **($3,251,784)** |

# Exhibit D

# GRANT & EISENHOFER P.A.
## FIRM BIOGRAPHY

Grant & Eisenhofer P.A. ("G&E") is a national litigation boutique with over 65 attorneys that concentrates on federal securities and corporate governance litigation and other complex class litigation. G&E primarily represents domestic and foreign institutional investors, both public and private, who have been damaged by corporate fraud, greed and mismanagement. The Firm was named to *The National Law Journal*'s "Plaintiffs' Hot List" for the last ten years and is listed as one of America's Leading Business Law Firms by Chambers & Partners, who reported that G&E "commanded respect for its representation of institutional investors in shareholder and derivative actions, and in federal securities fraud litigation." Based in Delaware, New York, Chicago, and Washington, D.C., G&E routinely represents clients in federal and state courts throughout the country. G&E's clients include the California Public Employees' Retirement System, New York State Common Retirement Fund, Ohio Public Employees' Retirement System, State of Wisconsin Investment Board, Teachers' Retirement System of Louisiana, PIMCO, Trust Company of the West, The Capital Guardian Group and many other public and private domestic and foreign institutions.

G&E was founded in 1997 by Jay W. Eisenhofer and Stuart M. Grant, former litigators in the Wilmington office of the nationally prominent firm of Skadden, Arps, Slate, Meagher & Flom LLP. Over the years, the Firm's directors have gained national reputations in securities and corporate litigation. In fact, G&E was the first law firm in the country to argue the provisions of the Private Securities Litigation Reform Act ("PSLRA") allowing an institutional investor to be appointed as lead plaintiff in a securities class action. The Firm has gone on to build a national and international reputation as a leader in securities litigation. In both class action and "opt-out" cases, G&E has attracted widespread recognition for protecting investors' rights and recovering their damages. The Firm has recovered over $28 billion for its clients in the last ten years, and RiskMetrics Group has twice recognized G&E for winning the highest average investor recovery in securities class actions.

G&E has served as lead counsel in many of the largest securities class action recoveries in U.S. history, including:

      $3.2 billion settlement from Tyco International Ltd. and related defendants
      $922 million from UnitedHealth Group
      $450 million Pan-European settlement from Royal Dutch Shell
      $448 million settlement in Global Crossing Ltd. securities litigation
      $422 million total class recovery for investors in the stock and bonds of Refco
      $400 million recovery from Marsh & McLennan
      $325 million from Delphi Corp.
      $303 million settlement from General Motors
      $300 million settlement from DaimlerChrysler Corporation
      $300 million recovery from Oxford Health Plans
      $276 million judgment & settlement for Safety-Kleen bond investors

G&E has also achieved landmark results in corporate governance litigation, including:

*In re UnitedHealth Group Inc. Shareholder Derivative Litigation*: G&E represented the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative and class action suit in which G&E successfully challenged $1.2 billion in back-dated options granted to William McGuire, then-CEO of health care provider UnitedHealth Group ("UHG"). This was among the first – and most egregious – examples of options backdating. As previously stated, G&E's case against UHG produced a settlement of $922 million, the largest settlement in the history of derivative litigation in any jurisdiction.

*In re Digex, Inc. Shareholders Litigation* – G&E initiated litigation alleging that the directors and majority stockholder of Digex, Inc. breached fiduciary duties to the company and its public shareholders by permitting the majority shareholder to usurp a corporate opportunity that belonged to Digex. G&E's efforts in this litigation resulted in an unprecedented settlement of $420 million, the largest settlement in the history of the Delaware Chancery Court.

*Caremark / CVS Merger* - G&E represented two institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as the board's decision to reject a competing proposal from a different suitor. Through the litigation, Caremark's board was forced to renegotiate the terms of the merger agreement with CVS. The settlement ensured statutory rights of Caremark shareholders, providing an additional $3.19 billion in cash consideration.

*Teachers' Retirement System of Louisiana v. Greenberg, et al. and American International Group, Inc.*: In what was, at the time, the largest settlement of shareholder derivative litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a lawsuit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets.

*AFSCME v. AIG* – This historic federal appeals court ruling in favor of G&E's client established the right, under the then-existing proxy rules, for shareholders to place the names of director candidates nominated by shareholders on corporate proxy materials – reversing over 20 years of adverse rulings from the SEC's Division of Corporate Finance and

achieving what had long been considered the "holy grail" for investor activists. Although the SEC took nearly immediate action to reverse the decision, the ruling renewed and intensified the dialogue regarding proxy access before the SEC, ultimately resulting in a new rule currently being considered by the SEC that, if implemented, will make proxy access mandatory for every publicly traded corporation.

*Unisuper Ltd. v. News Corp., et al.* – G&E forced News Corp. to rescind the extension of its poison pill on the grounds that it was obtained without proper shareholder approval.

*Teachers' Retirement System of Louisiana v. HealthSouth* – G&E negotiated a settlement which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby shareholders would nominate their replacements.

*Carmody v. Toll Brothers* – This action initiated by G&E resulted in the seminal ruling that "dead-hand" poison pills are illegal.

*In re Refco Inc. Securities Litigation* – G&E represented Pacific Investment Management Company LLC ("PIMCO") as co-lead plaintiff in a securities class action alleging that certain officers and directors of Refco Inc., as well as other defendants including the company's auditor, its private equity sponsor, and the underwriters of Refco's securities, violated the federal securities laws in connection with investors' purchases of Refco stock and bonds. Recoveries for the class exceeded $400 million, including $140 million from the company's private equity sponsor, over $50 million from the underwriters, and $25 million from the auditor.

In addition, the Firm's lawyers are often called upon to testify on behalf of institutional investors before the SEC and various judicial commissions, and they frequently write and speak on securities and corporate governance issues. G&E managing director Jay Eisenhofer and director Michael Barry are co-authors of the *Shareholder Activism Handbook*, and in 2008, Jay Eisenhofer was named one of the 100 most influential people in the field of corporate governance.

G&E is proud of its success in fighting for institutional investors in courts and other forums across the country and throughout the world.

## G&E's Attorneys

**Jay W. Eisenhofer**

Jay Eisenhofer, co-founder and managing director of Grant & Eisenhofer P.A., has been counsel in more multi-hundred million dollar cases than any other securities litigator, including the $3.2 billion settlement in the Tyco case, the $922 million UnitedHealth Group settlement, the $450 million settlement in the Global Crossing case, the historic $450 million pan-European settlement in the Shell case, as well as a $400 million settlement with Marsh & McLennan, a $303 million settlement with General Motors and a $300 million settlement with DaimlerChrysler. Mr. Eisenhofer was also the lead attorney in the seminal cases of *American Federation of State, County & Municipal Employees, Employees Pension Plan v. American International Group, Inc.*, where the U.S. Court of Appeals required shareholder proxy access reversing years of SEC no-action letters, and *Carmody v. Toll Brothers*, wherein the Delaware Court of Chancery first ruled that so-called "dead-hand" poison pills violated Delaware law.

Mr. Eisenhofer has served as litigation counsel to many public and private institutional investors, including, among others, Amalgamated Bank, APG Asset Management, California Public Employees Retirement System, California State Teachers Retirement System, Colorado Public Employees Retirement Association, the Florida State Board of Administration, John Hancock, Louisiana State Employees Retirement System, New York City Retirement Funds, Inc., and Service Employees International Union.

Mr. Eisenhofer is consistently ranked as a leading securities and corporate governance litigator and he has been named by Lawdragon to its annual list of the top 500 lawyers in America each year since 2006. He is also recognized by Benchmark Litigation as one of the Top 100 Trial Lawyers. *The National Law Journal* has selected Grant & Eisenhofer as one of the top plaintiffs' law firms in the country for the last ten years in the annual "Plaintiffs' Hot List," earning the firm a place in *The National Law Journal's* "Plaintiffs' Hot List Hall Of Fame" in 2008. The firm has been selected as a "Most Feared Plaintiffs Firm" by Law360 and "one of the most high-profile shareholder and whistleblower advocates in the country, securing record-high cash settlements." *U.S. News & World Report* has also repeatedly named Grant & Eisenhofer to its list of "Best Law Firms" in the fields of Securities Litigation, Commercial Litigation, and Corporate Law.

Mr. Eisenhofer has written and lectured widely on securities fraud and insurance coverage litigation, business and employment torts, directors' and officers' liability coverage, and the Delaware law of shareholder rights and directorial responsibilities. Among the publications he has authored: "The Shareholders Activism Handbook" Aspen Publishers; "Proxy Access Takes Center Stage – The Second Circuit's Decision in *AFSCME Employees Pension Plan v. American International Group, Inc.*" *Bloomberg Law Reports*, Vol. 1, No. 5; "Investor Litigation in the U.S. - The System is Working" *Securities Reform Act Litigation Reporter*, Vol. 22, #5; "*In re Walt Disney Co. Deriv. Litig.* and the Duty of Good Faith Under Delaware Corporate Law" *Bank & Corporate Governance Law Reporter*, Vol. 37, #1; "Institutional Investors As Trend-Setters In Post-PSLRA Securities Litigation" *Practising Law Institute*, July, 2006; "*In re Cox Communications, Inc.*: A Suggested Step in the Wrong Direction," *Bank and Corporate Governance Law Reporter,* Vol. 35, #1; "Does Corporate Governance Matter to Investment Returns?" *Corporate Accountability Report*, Vol. 3, No. 37; "Loss Causation in Light of Dura: Who is Getting it Wrong?" *Securities Reform Act Litigation Reporter*, Vol. 20, #1; "Giving

Substance to the Right to Vote: An Initiative to Amend Delaware Law to Require a Majority Vote in Director Elections," *Corporate Governance Advisor*, Vol. 13, #1; "An Invaluable Tool in Corporate Reform: Pension Fund Leadership Improves Securities Litigation Process," *Pensions & Investments*, Nov. 29, 2004; and "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, Aug. 2004. Mr. Eisenhofer has also authored a number of articles on illiquid and rouge hedge funds, including "Time for Hedge Funds to Become Accountable to Fiduciary Investors," *Pensions & Investments*, April 30, 2012; and "Hedge Funds of the Living Dead," *New York Times Dealbook*, June 4, 2012.

Mr. Eisenhofer serves as a member of the NYU Law School Advisory Board for the Center on Civil Justice, and as co-chair for the Securities Litigation Committee of the American Association for Justice. He is a graduate of the University of Pittsburgh, and a 1986 *magna cum laude* graduate of Villanova University School of Law, Order of the Coif. He was a law clerk to the Honorable Vincent A. Cirillo, President Judge of the Pennsylvania Superior Court and thereafter joined the Wilmington office of Skadden Arps Slate Meagher & Flom. Mr. Eisenhofer was a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming Grant & Eisenhofer P.A. in 1997.

**Stuart M. Grant**

Stuart M. Grant, co-founder and managing director of Grant & Eisenhofer P.A., is internationally recognized for his extensive knowledge in the areas of Delaware corporate law, fiduciary responsibility, securities and investments, private equity and fixed income, appraisal remedies, valuation, proxy contests and other matters related to protecting and promoting the rights of institutional investors. He serves as litigation counsel to many of the largest public and private institutional investors in the world.

Mr. Grant was the first attorney to argue the provisions of the PSLRA allowing an institutional investor to be appointed as sole lead plaintiff and has served as lead counsel in six of the seven largest settlements in the history of Delaware Chancery Court.

Among his many accolades, Mr. Grant is consistently ranked in Band 1 of Chambers USA as a leading litigator for his work in Delaware Chancery and securities, regulatory and corporate governance litigation. For the past several years, he has been named to Best Lawyers, ranked as a leading lawyer by Legal 500, and selected for inclusion in Super Lawyers. Mr. Grant, who has also been recognized as one of the Top 500 Leading Lawyers in America by Lawdragon, is rated AV by Martindale-Hubbell, and is recognized by Benchmark Litigation as one of the Top 100 Trial Lawyers. Additionally, The National Law Journal has selected Grant & Eisenhofer to its 2014 inaugural list of "Elite Trial Lawyers: The 50 Leading Plaintiffs Firms in America."

Mr. Grant has successfully argued on behalf of institutional investors in many groundbreaking corporate governance cases including:

*In re Del Monte Foods Company Shareholders Litigation,* which resulted in an unprecedented and immediate change in lending policy practices among major investment banks regarding the way the banks approach financing transactions in which they represent the seller;

*In re Digex Stockholders Litigation*, the largest settlement in Delaware Chancery Court history, which led to the establishment of lead plaintiff provisions in Delaware;

*Teachers' Retirement System of Louisiana v. Aidinoff, et al. and American International Group, Inc.,* the largest derivative shareholder litigation settlement in the history of Delaware Chancery Court;

*UniSuper Ltd., et al. v. News Corporation, et al.*, a landmark case in which the Delaware Chancery Court ruled that shareholders may limit board authority without amending the corporation's charter;

*In re Tyson Foods, Inc.*, which resulted in historic rulings from the Delaware Court of Chancery clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans;

*Teachers' Retirement Systems of Louisiana v. Richard M. Scrushy, et. al.*, which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby shareholders would nominate their replacements;

*In re Cablevision Systems Corp. Options Backdating Litigation* and *In re Electronics for Imaging, Inc. Shareholder Litigation*, both of which held directors and officers of their respective companies accountable for improperly granting backdated options and, most importantly, required the individual defendants to reach into their own pockets to cover a significant portion of the settlement.

Included among Mr. Grant's more notable securities class action representations are: *Gluck, et al. v. CellStar*, the first allowing an institutional investor to be appointed as lead plaintiff in a securities class action under the Private Securities Litigation Reform Act (PSLRA) and widely considered the landmark on the standards applicable to lead plaintiff/lead counsel practice under the PSLRA; *In re Refco Inc. Securities Litigation*, which resulted in a recovery exceeding $400 million; *In re Safety-Kleen Securities Corporation Bondholders Litigation*, which, after a six-week securities class action jury trial, resulted in judgments holding the company's CEO and CFO jointly and severally liable for nearly $200 million and settlements with the remaining defendants for $84 million; and *In re Parmalat Securities Litigation*, which resulted in a settlement of approximately $100 million in what the SEC described as "one of the largest and most brazen financial frauds in history."

Mr. Grant serves as Vice-Chairperson of the Delaware Judicial Nominating Commission, as a member of the Board of Trustees for the University of Delaware, and on the Advisory Board for the Weinberg Center for Corporate Governance at the University of Delaware. Mr. Grant was an Adjunct Professor of Law at the Widener University School of Law from 1994-2009, where he taught securities litigation, and is a past trustee of the Delaware Art Museum.

Mr. Grant has authored a number of articles which have been cited with approval by the U.S. Supreme Court, U.S. Court of Appeals for the 2nd and 5th Circuits and numerous U.S. District Courts. His articles include, among others, "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is so Fraught With Uncertainty That They May be Void for Vagueness"; "Class Certification and Section 18 of the Exchange Act"; "*Unisuper v. News Corporation*: Affirmation that Shareholders, Not Directors, Are the Ultimate Holders of Corporate Power"; "Executive Compensation: Bridging the Gap Between What Companies Are Required to Disclose and What Stockholders Really Need to Know"; and a number of annual PLI updates under the heading of "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act."

Mr. Grant was graduated in 1982 *cum laude* from Brandeis University with a B.A. in economics and received his J.D. from New York University School of Law in 1986. He served as Law Clerk to the Honorable Naomi Reice Buchwald in the U.S. District Court for the Southern District of New York. Mr. Grant was an associate at Skadden, Arps, Slate, Meagher & Flom (1987-94), and a partner in the Wilmington office of Blank Rome Comisky & McCauley from 1994 until forming Grant & Eisenhofer P.A. in 1997.

**Jeff A. Almeida**

Jeff Almeida is a director at Grant & Eisenhofer practicing in the areas of corporate, securities and complex commercial litigation. Mr. Almeida has represented domestic and foreign institutional investors in prominent securities fraud actions including, *In re Qwest Communications International Securities Litigation*; *In re Alstom SA Securities Litigation*; *In re Refco Inc. Securities Litigation*; *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*; *In re Pfizer Inc. Securities Litigation*; and *In re Global Cash Access Holdings Securities Litigation*. Mr. Almeida has also been actively engaged in derivative and class litigation in the Delaware Court of Chancery, including the matters *In re Tyson Foods, Inc.*, which resulted in historic rulings clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans; *Louisiana Police Employees Retirement System v. Crawford* ("*Caremark*"), a well-publicized derivative action challenging the terms of the Caremark and CVS merger that resulted in a $3.2 billion settlement; and *In re Genentech Inc. Shareholder Litigation*, where he successfully represented Genentech minority stockholders against Roche's heavy-handed attempt to squeeze out the minority to seize control of Genentech. In recent years, Mr. Almeida has also represented prominent hedge fund clients in complex commercial litigation involving claims of short-squeeze market manipulation and the marketing and sale of abusive tax shelters.

Prior to joining Grant & Eisenhofer in August 2004, Mr. Almeida was affiliated for seven years as an attorney with a major Philadelphia defense firm, where he practiced in the areas of complex commercial litigation, with a focus on consumer class actions, commercial contract disputes, and insurance coverage and bad faith defense.

Mr. Almeida is a 1994 graduate of Trinity College in Hartford, Connecticut, where he captained the varsity basketball team and achieved election to Phi Beta Kappa, and a 1997 graduate of William and Mary Law School in Williamsburg, Virginia. Mr. Almeida is admitted to practice in Delaware, Pennsylvania, and New Jersey, along with several federal district courts.

**Michael J. Barry**

Michael Barry is a director at Grant & Eisenhofer. His practice focuses on corporate governance and securities litigation. He also advises clients on SEC matters. As a foremost practitioner in these areas, Mr. Barry has been significantly involved in groundbreaking class action recoveries, corporate governance reforms and shareholders rights litigation.

Mr. Barry has been instrumental in landmark corporate governance cases, including *AFSCME v. AIG*, where the Court of Appeals for the Second Circuit recognized the right of shareholders to introduce proxy access proposals; *Bebchuk v. CA, Inc.,* which opened the door for shareholders to introduce proposals restricting the ability of boards to enact poison pills; and *CA, Inc. v.*

*AFSCME*, an historic 2008 decision of the Supreme Court of Delaware regarding the authority of shareholders to adopt corporate bylaws. Mr. Barry's case work also includes, among others, *In re Global Crossing Ltd. Securities Litigation*, which resulted in a $450 million settlement; a well-publicized derivative litigation action challenging the terms of the Caremark Rx, Inc. and CVS merger that resulted in a $3.2 billion settlement; and litigation between the Chicago Board of Trade and the Chicago Mercantile Exchange, which produced a $485 million settlement. Each of these cases resulted in substantial reforms to the terms of merger agreements to provide increased consideration and structural benefits to shareholders.

Mr. Barry has spoken widely on corporate governance and related matters. In addition to serving as a frequent guest lecturer at Harvard Law School, he speaks at numerous conferences each year. Mr. Barry has authored several published writings, including the *Shareholder Activism Handbook*, a comprehensive guide for shareholders regarding their legal rights as owners of corporations, which he co-authored.

Prior to joining Grant & Eisenhofer, Mr. Barry practiced at a large Philadelphia-based firm, where he defended the Supreme Court of Pennsylvania, the Pennsylvania Senate and Pennsylvania state court judges in a variety of trial and appellate matters. He is a 1990 graduate of Carnegie Mellon University and graduated *summa cum laude* in 1993 from the University of Pittsburgh School of Law, where he was an Executive Editor of the *University of Pittsburgh Law Review* and a member of the Order of the Coif.

**Daniel L. Berger**

Daniel Berger is a director at Grant & Eisenhofer. Prior to joining the firm, Mr. Berger was a partner at two major plaintiffs' class action firms in New York, including Bernstein Litowitz Berger & Grossmann (BLBG), where he had litigated complex securities and discrimination class actions for twenty two years.

Mr. Berger's previous experience includes trying two 10b-5 securities class actions to jury verdicts, which were among very few such cases ever tried. He also served as principal lead counsel in many of the largest securities litigation cases in history, achieving successful recoveries for classes of investors in cases including *In re Cendant Corp. Securities Litigation* ($3.3 billion); *In re Lucent Technologies, Inc. Securities Litigation* ($675 million); *In re Bristol-Myers Squibb Securities Litigation* ($300 million); *In re Daimler Chrysler A.G. Securities Litigation* ($300 million); *In re Conseco, Inc. Securities Litigation* ($120 million); *In re Symbol Technologies Securities Litigation* ($139 million); and *In re OM Group Securities Litigation* ($92 million).

Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott,* 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.,* 919 F.2d 290 (5th Cir. 1990.) In addition, Mr. Berger was lead class counsel in many important discrimination class actions, in particular *Roberts v. Texaco, Inc.*, where he represented African-American employees of Texaco and achieved the then largest settlement ($175 million) of a race discrimination class action.

Mr. Berger currently serves on the Board of Visitors of Columbia University Law School. Previously, Mr. Berger was a member of the Board of Managers of Haverford College from 2000-2003. He also now serves on the Board of GO Project, a not-for profit organization that provides academic support for New York City public school students and he is also on the Board of Grace Church School in New York. He also served on the Board of in Motion, Inc., a non-profit organization providing legal services to victims of domestic violence, for six years.

Mr. Berger is a 1976 graduate from Haverford College, and graduated in 1979 from Columbia University School of Law.

**Cynthia A. Calder**

Cynthia Calder is a director at Grant & Eisenhofer. She concentrates her practice in the areas of corporate governance and securities litigation. She has represented shareholders in such seminal cases in the Delaware Court of Chancery as *UniSuper Ltd. v. News Corp.*, vindicating the shareholders' right to vote; *Carmody v. Toll Brothers*, finding the dead-hand poison pill defensive measure was illegal under Delaware law, *Jackson National Life Insurance Co. v. Kennedy*, breaking new ground in the interpretation of fiduciary duties owed to preferred shareholders; *Haft v. Dart Group Corp.*, resolving a contest for control of a significant public corporation; and *Paramount Communications Inc. v. QVC Network*, obtaining an injunction preventing the closing of a merger to force the board of directors to appropriately consider a competing bid for the corporation. More recently, Ms. Calder prosecuted a derivative suit on behalf of American International Group, Inc. shareholders against the company's former CEO, Maurice Greenberg, and other former AIG executives. The action was concluded for a settlement of $115 million – the largest such settlement in the history of the Delaware Court of Chancery. Ms. Calder was also the Court-appointed representative on the shareholder counsel's committee in the UnitedHealth Group derivative litigation, which was settled for more than $900 million – the largest known derivative settlement in any court system. Ms. Calder also recently prosecuted a shareholder class action, *In re ACS Shareholder Litigation*, which resulted in one of the largest class recoveries in the history of the Court of Chancery.

Ms. Calder has co-authored numerous articles on corporate governance and securities litigation, including "Options Backdating from the Shareholders' Perspective" *Wall Street Lawyer*, Vol. 11, No. 3; "Securities Litigation Against Third Parties: Pre-Central Bank Aiders and Abettors Become Targeted Primary Defendants" *Securities Reform Act Litigation Reporter*, Vol. 16, No. 2; and "Pleading Scienter After Enron: Has the World Really Changed?" *Securities Regulation & Law*, Vol. 35, No. 45.

Ms. Calder graduated *cum laude* from the University of Delaware in 1987 and graduated from the Villanova University School of Law in 1991. Upon graduating from law school, Ms. Calder served as a Judicial Law Clerk in the Delaware Court of Chancery to the Honorable Maurice A. Hartnett, III. Prior to joining Grant & Eisenhofer, Ms. Calder was an associate at Blank, Rome, Comisky & McCauley.

**Charles T. Caliendo**

Charles Caliendo is a director at Grant & Eisenhofer. He represents institutional investors in class action securities, opt-out and shareholder derivative litigation. Prior to joining Grant & Eisenhofer, he served as an Assistant Attorney General in the Investment Protection Bureau of the New York State Attorney General's Office where he prosecuted cases and led investigations related to mutual fund market timing and late trading. Mr. Caliendo practiced at a Manhattan-based law firm in the areas of class action securities, mergers and acquisitions, corporate governance and other commercial litigation.

Mr. Caliendo has written and spoken on issues relating to regulatory enforcement, corporate internal investigations and securities and shareholder litigation. In November 2004 and June 2006, Mr. Caliendo was a speaker at financial services industry seminars sponsored by The Association of the Bar of the City of New York for which he authored articles entitled "The Investment Protection Bureau: An Overview of Financial Markets Regulation and Enforcement in New York" and "Thompson Memo Under A Microscope." In June 2005, Mr. Caliendo spoke before a delegation of Chinese mutual fund CEOs participating in the Penn-China Mutual Fund CEO Leadership Program, University of Pennsylvania Graduate School of Education. Mr. Caliendo co-authored "Who Says The Business Judgment Rule Does Not Apply To Directors Of New York Banks?" 118 *Banking Law Journal* 493 (June 2001) and "Board of Directors' 'Revlon Duties' Come Into Focus," *New York Law Journal*, vol. 222, no. 86, col. 1 (Nov. 1, 1999).

Mr. Caliendo received his B.S. from Cornell University and J.D. from St. John's University School of Law where he was an editor of the *St. John's Law Review* and a Saint Thomas More Scholar.

**Nathan A. Cook**

Nathan Cook is a director at Grant & Eisenhofer, focusing on corporate governance, class action and derivative litigation.

Previously, Mr. Cook worked as an associate at the law firm of Abrams & Bayliss LLP (formerly Abrams & Laster LLP) in Wilmington, Delaware. He has obtained substantial experience litigating before the Delaware Court of Chancery and the Delaware Supreme Court and providing corporate advisory services on a variety of matters relating to Delaware law. Mr. Cook also participated in a successful, highly-expedited arbitration involving complex transactional issues.

Mr. Cook co-authored *Frequently Asked Questions, Answers and More Questions about the Business Strategy Immunity*, 856 PLI/Lit 503 (2011), and *The Delaware Supreme Court Weighs in on Fiduciary Duties to Creditors*, Insights (June 2007).

Mr. Cook is a member of the Richard S. Rodney Inn of Court, the American Bar Association (Business Law Section), the Delaware State Bar Association, and the New York State Bar Association.

Mr. Cook received his J.D. from the University of Virginia in 2005, where he served on the Editorial Board for the Virginia Environmental Law Journal. Following graduation from law

school, Mr. Cook served as a law clerk to the Honorable John W. Noble of the Delaware Court of Chancery. Mr. Cook received a B.A., with distinction, from the University of Virginia in 2002, where he majored in economics and history and was a Jefferson Scholar and an Echols Scholar.

## Robert G. Eisler

Robert Eisler is a director in Grant & Eisenhofer's antitrust practice. Mr. Eisler has been involved in many significant antitrust class action cases in recent years. He is experienced in numerous industries, including pharmaceuticals, paper products, construction materials, industrial chemicals, processed foods, municipal securities, and consumer goods.

Mr. Eisler has served as lead or co-lead counsel in many of the largest antitrust cases litigated, including, *In re Buspirone Antitrust Litigation*, (which led to a $90 million settlement and in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job"), *In re Ciprofloxacin Hydrochloride Antitrust Litigation, In re Flat Glass Antitrust Litigation, In re Municipal Derivatives Antitrust Litigation*, and *In re Chocolate Confectionary Antitrust Litigation*.

Mr. Eisler has played major roles in a number of other significant antitrust cases, including *In re Linerboard Antitrust Litigation*, *In re Aftermarket Filters Antitrust Litigation*, and *In re Publication Paper Antitrust Litigation*.

Mr. Eisler also has extensive experience in securities, derivative, complex commercial and class action litigation at the trial and appellate levels. He has been involved in numerous securities and derivative litigation matters on behalf of public pension funds, municipalities, mutual fund companies and individual investors in state and federal courts.

Mr. Eisler graduated from LaSalle University in 1986, and in 1989 from Villanova University School of Law.

## Elizabeth (Beth) Graham

Elizabeth ("Beth") Graham is a director at Grant & Eisenhofer, leading the firm's complex pharmaceutical and device litigation practice. Since 1989, she has dedicated her practice to complex mass tort and class action litigation.

Ms. Graham's expertise spans the practice areas of mass tort, consumer fraud, product liability, environmental, and employment. She has served as Lead Class Counsel in multi-million dollar cases, has acted as a member of various Plaintiffs' Executive Committees in complex actions, and has prior experience as national defense coordination counsel in product liability litigation.

Notably, Ms. Graham has served as lead counsel in high profile class actions such as *Borman Automotive v. American Honda Motor Corp.* (MDL No. 1069), which resulted in a $435 million settlement; and litigation against Chrysler based on its Minivan Doorlatch failures and ABS brake defects. Ms. Graham served on the Plaintiffs' Steering Committee and represented dozens of victims in the *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation* (MDL No.

1410). She has also represented over one hundred families injured by environmental contaminants, including radon, arsenic and rocket fuel, resulting in confidential settlements in excess of $25 million.  Ms. Graham also has vast experience as a consultant to other mass tort firms that seek her advice in structuring their cases.

Currently, Ms. Graham serves on the Plaintiffs' Steering Committee in the Stryker Hip litigation, and is actively representing injured victims in cases against major pharmaceutical companies and medical device manufacturers.

Prior to her representation of injured individuals and victims of consumer fraud, Ms. Graham worked for large product liability defense firms as national defense counsel in cases such as *In re Silicone Breast Implant Litigation*.

Before joining G&E, Ms. Graham was a partner at several San Francisco area law firms, as well as the President and Co-Founder of RG2 Claims Administration, LLC and a partner at Heffler Claims Group.

**Reuben A. Guttman**

Reuben Guttman is a director at Grant & Eisenhofer, where he heads the firm's Washington, D.C. office. His practice involves complex litigation and class actions. He has represented clients in claims brought under the Federal False Claims Act, securities laws, the Price Anderson Act, Department of Energy (DOE) statutes and regulations, the Worker Adjustment and Retraining Notification Act (WARN), Racketeer Influenced and Corrupt Organizations Act (RICO) and various employment discrimination, labor and environmental statutes. He has also tried and/or litigated claims involving fraud, breach of fiduciary duty, antitrust, business interference and other common law torts.

The *International Business Times* has called Mr. Guttman "one of the world's most prominent whistleblower attorneys," and he has been recognized as a 2013 Washingtonian Top Lawyer by *Washingtonian Magazine*. He has served as counsel in some of the largest recoveries under the False Claims Act. In 2013, Mr. Guttman was lead counsel in an intervened case by the United States Department of Justice against Pfizer, Inc. involving the kidney-transplant drug Rapamune. On July 30, 2013, The U.S. Department of Justice announced that Pfizer had agreed to pay $491 million to settle criminal and civil charges stemming from the illegal marketing of Rapamune by Wyeth Pharmaceuticals, which was acquired by Pfizer in 2009. Mr. Guttman represented two whistleblowers--sales representative Marlene Sandler and pharmacist Scott Paris--who brought the initial action in the case, *United States ex rel. Sandler et al. v. Wyeth Pharmaceuticals, Inc.* Also in 2013, Mr. Guttman was lead counsel in *U.S. ex rel. Kurnik v. Amgen*, Inc. et al., resulting in the recovery of $24.9 million from Amgen. That case exposed kickbacks designed to increase sales of the drug Aranesp.

In 2012, he served as lead counsel for the lead whistleblower, Meredith McCoyd, in *U.S. ex rel. McCoyd v. Abbott Labs*, which resulted in a $1.6 billion recovery for the government. In 2012, he also represented one of the whistleblowers in a case against GlaxoSmithKline that returned over $3 billion to the government. Also in 2012, Mr. Guttman represented whistleblower Lynn Szymoniak whose *qui tam* case, involving fraudulent mortgage assignments, was resolved as part of the government's $25 billion settlement with some of the world's largest banks. He

represented one of the six main whistleblowers in litigation resulting in the government's September 2009, $2.3 billion settlement with Pfizer Pharmaceutical and he served as counsel in *U.S. ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (E.D. Tex. 1999), where over $300 million was recovered from the oil industry. On behalf of a European whistleblower, Mr. Guttman was counsel in litigation that resulted in a $13 million settlement.

Mr. Guttman served as lead counsel in a series of cases resulting in the recovery of more than $30 million under the Federal Fair Labor Standards Act. Cases brought by Mr. Guttman on behalf of nuclear weapons workers at "Manhattan Project" nuclear weapons sites resulted in congressional oversight and changes in procurement practices, and dread disease compensation legislation, affecting the nation's nuclear weapons complex and its workforce. In addition, he served as lead counsel in litigation brought on behalf of prison workers in the District of Columbia, which resulted in injunctive relief protecting workers against exposure to blood-borne pathogens. Mr. Guttman served as lead counsel in a mediation before the United States Equal Employment Opportunity Commission, resulting in work place standards and back pay for minority employees at a large Texas oil refinery.

Mr. Guttman is the author and/or editor of numerous articles, book chapters, and technical publications and his commentary has appeared in *Market Watch, American Lawyer Media, AOL Government, Accounting Today,* and the *Jerusalem Post*. His article, *Pharmaceutical Regulation in the United States: A Confluence of Influences*, was published in Chinese by the *Peking University Public Interest Law Journal*, Vol. 1, Page 187 (2010). He is co-author of *Gonzalez v. Hewitt, SEC v. HG Pharmaceutica*l, and *U.S. ex Rel. Rodriguez v. Hughes,* which are case files published by the Emory University School of Law Center for Advocacy and Dispute Resolution (2010) and used to train law students and practicing attorneys.

Among his publications, Mr. Guttman is author or co-author of Chapters 5-10 in *Internal Investigations: How to Protect Your Clients or Companies in the Global, Post Dodd-Frank World* (Practising Law Institute, 2012). He has appeared on *ABC Nightly News,* CNN, Bloomberg News, and has been quoted in major publications including *The Wall Street Journal, The New York Times, The Washington Post, The Los Angeles Times, The Atlanta Journal-Constitution, USA Today, Houston Chronicle, Dallas Morning News* and national wire services including the Associated Press, Reuters and Bloomberg. Mr. Guttman's commentary on politics and the law has appeared in the *European Lawyer* and he writes a regular blog for its affiliated website, *The Global Legal Post* – www.globallegalpost.com.

In addition to his writings, Mr. Guttman has testified before committees of the United States House of Representatives and the United States Senate on the Asbestos Hazard Emergency Response Act (AHERA). In 1992, he advised President-elect Clinton's transition team on labor policy and worker health and safety regulation.

Mr. Guttman earned his law degree at Emory University School of Law graduating in 1985, and his Bachelor's Degree from the University of Rochester in 1981. He is a Senior Fellow and Adjunct Professor at the Emory University School of Law Center for Advocacy and Dispute Resolution and has been a Team Leader for Emory Law School's Kessler-Eidson Trial Techniques Program. Mr. Guttman is currently serving a three-year term on the Dean's Advisory Board of Emory Law School. As part of a U.S. State Department program in conjunction with the Center for Advocacy and Dispute Resolution, he has been one of five visiting professors at

Universidad Panamericana in Mexico City training Mexican Judges and practitioners on oral advocacy and trial practice. He is a contributing editor of a soon to be published textbook on trial practice for Mexican practitioners. For the Fall Semester, 2012, Mr. Guttman was appointed as an Adjunct Professor at the Rutgers University Law School where he has taught in the trial program.

Mr. Guttman is a member of the Board of Directors of the American Constitution Society. He is also the Chairman of the American Association for Justice Qui Tam Litigation Group. He is a founder of and advisor to a new online journal at Emory Law School entitled Emory Corporate Governance and Accountability Review (ECGAR), and a faculty member of the National Institute of Trial Advocacy. He has been a guest lecturer at a number of universities including Jiao Tong University in Shanghai, Peking University in Beijing and Renmin University in Beijing. In 2006, he was invited by the Dutch Embassy in China to share his expertise with experts in China about changes to the nation's labor laws. He is the founder of www.whistleblowerlaws.com and www.thecorporateinsider.com, and co-founder of www.voicesforcorporateresponsibility.com.

### Geoffrey C. Jarvis

Geoffrey Jarvis, a director at Grant & Eisenhofer, focuses on securities litigation for institutional investors. He had a major role in Oxford Health Plans Securities Litigation and DaimlerChrysler Securities Litigation, both of which were among the top ten securities settlements in U.S. history at the time they were resolved. Mr. Jarvis also has been involved in a number of actions before the Delaware Chancery Court, including a Delaware appraisal case that resulted in a favorable decision for the firm's client after trial. At the present time, he has primary responsibility for a number of cases in which Grant & Eisenhofer clients have opted-out of class actions, and has also played a lead role in class actions against Tyco, Alstom and Sprint.

Mr. Jarvis received a B.A. in 1980 from Cornell University, where he was elected to Phi Beta Kappa. He graduated cum laude from Harvard Law School in 1984. Until 1986, he served as a staff attorney with the Federal Communications Commission, participating in the development of new regulatory policies for the telecommunications industry. He then became an associate in the Washington office of Rogers & Wells, principally devoted to complex commercial litigation in the fields of antitrust and trade regulations, insurance, intellectual property, contracts and defamation issues, as well as counseling corporate clients in diverse industries on general legal and regulatory compliance matters. Mr. Jarvis was previously associated with a prominent Philadelphia litigation boutique and had first-chair assignments in cases commenced under the Pennsylvania Whistleblower Act and in major antitrust, First Amendment, civil rights, and complex commercial litigation, including several successful arguments before the U.S. Court of Appeals for the Third Circuit.

Mr. Jarvis authored "State Appraisal Statutes: An Underutilized Shareholder Remedy," The Corporate Governance Advisor, May/June 2005, Vol. 13, #3, and co-authored with Jay W. Eisenhofer and James R. Banko, "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," Business Lawyer, Aug. 2004.

**John C. Kairis**

John Kairis is a director at Grant & Eisenhofer, where he represents institutional investors in class action litigation, individual "opt-out" securities litigation, and derivative and corporate governance litigation in the Delaware Chancery Court and other courts throughout the country. He has been a leader of G&E teams that have achieved some of the largest recoveries in securities class action history, and played major roles in the *Tyco*, *Parmalat*, *Marsh & McLennan*, *Hollinger International* and *Dollar General* securities class actions, and opt-out actions in *AOL Time Warner* and *Telxon Corporation*. Among his Delaware Chancery Court litigation experience is a landmark case against HealthSouth, involving a books and records trial under Section 220 of the Delaware General Corporations Law, to obtain certain documents that the corporation refused to produce, which led to a settlement implementing corporate governance improvements, such as HealthSouth's agreement to replace its conflicted directors with independent directors approved by a committee which included the institutional investor plaintiff.

Mr. Kairis has also been instrumental in prosecuting consumer class actions involving unfair competition and false marketing claims against both Johnson & Johnson and Bausch & Lomb, and is currently prosecuting off-label marketing cases brought under the federal False Claims Act and various state counterpart false claims acts. Mr. Kairis currently represents the lead plaintiffs and the class in a securities fraud suit against Merck & Co. and certain of its officers and directors relating to the defendants' alleged suppression of test results of Merck's cholesterol medication Vytorin, the lead plaintiffs in a securities class action against Apollo Group and certain of its officers and directors relating to the defendants' participation in a fraudulent accounting scheme, and the lead plaintiffs in various breach of fiduciary duty cases pending in the Delaware Chancery Court.

Mr. Kairis has authored articles including "Shareholder Proposals For Reimbursement Of Expenses Incurred In Proxy Contests: Recent Guidance From The Delaware Supreme Court," *PLI*, What All Business Lawyers Must Know About Delaware Law Developments 2009 (New York, NY May 21, 2009) (co-authored with Stuart Grant); "Challenging Misrepresentations in Mergers: You May Have More Time Than You Think," *Andrews Litigation Reporter*, Vol. 12, Issue 3, June 14, 2006; "Disgorgement Of Compensation Paid To Directors During The Time They Were Grossly Negligent: An Available But Seldom Used Remedy," *Delaware Law Review*, Vol. 13, #1, 2011; and was the principle writer of an *amicus brief* to the United States Supreme Court on behalf of various public pension funds in the *Merck* case involving the standard for finding that a plaintiff is on "inquiry notice" of potential claims such that the limitations period for pleading securities fraud has commenced.

Mr. Kairis is a 1984 graduate of the University of Notre Dame and a 1987 graduate of the Ohio State University Moritz College of Law, where he was Articles Editor of the *Ohio State Law Journal* and recipient of the American Jurisprudence and John E. Fallon Memorial Awards for scholastic excellence. He is a member of the Delaware and American Bar Associations and the Delaware Trial Lawyers Association. Mr. Kairis has served on the boards of several nonprofit organizations, including the West-End Neighborhood House, Inc., the Cornerstone West Development Corporation, and the board of the Westover Hills Civic Association. He has also served on the Delaware Corporation Law Committee, where he evaluated proposals to amend the Delaware General Corporation Law.

**Adam J. Levitt**

Adam J. Levitt is a director at Grant & Eisenhofer P.A. and leads the Firm's Consumer Practice Group. He specializes in complex commercial litigation, class action, and mass tort litigation in the areas of consumer protection, antitrust, securities, technology, and agricultural law. Mr. Levitt served as co-lead counsel in two of the largest agricultural and biotechnology class actions in recent years, recovering more than $1 billion in damages for the plaintiffs: *In re Genetically Modified Rice Litigation*, in which Mr. Levitt has obtained settlements exceeding $900 million on behalf of long-grain rice producers and others who suffered losses resulting from contamination of the U.S. rice supply with unapproved, genetically modified seeds; and *In re StarLink Corn Products Liability Litigation*, where he recovered $110 million on behalf of farmers who sustained market losses on their corn crops arising from contamination of the U.S. corn supply with genetically-modified StarLink corn.

Mr. Levitt is "AV" rated by Martindale Hubbell. He has been recognized in *Illinois Super Lawyers* for the past several years, acknowledged by Lawdragon as one of the leading lawyers in America, and has been named "Litigator of the Week" by *American Lawyer Magazine*.

With one of the country's leading consumer litigation practices, Mr. Levitt has successfully served as counsel in numerous class and complex litigation cases at both the state and federal courts, on the trial and appellate court levels. His current cases include several notable consumer actions: *In re Honey Transshipping Litigation; In re Porsche Cars North America Inc., Plastic Coolant Tubes Product Liability Litigation*; *In re Stryker Rejuvenate and ABG II Hip Implant* Litigation; Belville *v. Ford Motor Company*; *In Re: Dial Complete Marketing and Sales Litigation*; and *In re Wesson Oil Marketing and Sales Practices Litigation*.

Mr. Levitt serves as President of the Class Action Trial Lawyers, a division of the National Trial Lawyers, of which he is an Executive Committee Member. Since 2005, Mr. Levitt has served as an elected member of the American Law Institute and a member of the American Association for Justice. Mr. Levitt sits on the Board of Advisors for the Chicago chapter of the American Constitution Society for Law and Policy. In 2013, he became an Advisory Board Member of the Institute for Consumer Antitrust Studies. Mr. Levitt is also a peer reviewer of articles submitted to AAJ's *Trial* magazine.

Mr. Levitt has authored numerous articles on class action litigation and consumer protection; his most recent publications include: "Fees Obliterate Managed Futures Fund Profits," *Financial Advisor*; "Calculating Damages in Securities Class Actions," *TRIAL,* Vol. 49, No. 6.; "The Role and Function of Corporate Representatives at Trial," *The Trial Lawyer*, Vol. II, No. IV; "Multidistrict Litigation Practice: The Function and Shifting Focus of the JPML in Class Action and Other 'Bet the Company' Litigation," chapter from *Straight from the Top: Case Studies in the World of Litigation*; "Sticky Situations in Mass Tort Settlements," *TRIAL*, Vol. 48, No. 11; "CAFA and Federalized Ambiguity: The Case for Discretion in the Unpredictable Class Action," 120 *Yale Law Journal Online* 231; and "Taming the Metadata Beast," *New York Law Journal*.

In addition to his writings, Mr. Levitt is a frequent speaker on topics of consumer protection, multidistrict litigation, biotechnology, corporate governance, securities litigation, and Internet privacy. Mr. Levitt has also testified before the Illinois Supreme Court Rules Committee on class action practice and related issues. In addition to chairing Law Seminars International's

"Litigating Class Actions" annual conference in Chicago, Mr. Levitt's recent speaking engagements include:

- "Recent Developments in Class Action Settlement Jurisprudence," American Association for Justice, 2013 Annual Convention;
- "Manifestation of Defect That Causes Actual Injury in Economic Defect Related Class Actions," 2013 National Consumer Class Action Litigation & Management Conference;
- "Disaster Averted, Mass Tort Resolved – Settling Mass Tort Disaster Cases," American Bar Association, Section of Litigation Annual Conference;
- "Current Trends in Consumer Litigation," Grant & Eisenhofer Consumer Litigation Breakfast Briefing;
- "Consumer Class Actions in a Post-Concepcion World," The Shifting Landscape of Class Litigation;
- "Deposing the Corporate Machine: How to Win Against the Best-Schooled Corporate Executive," Trial Skills Retreat: Empowering Witnesses Conference by 360 Advocacy Institute;
- "Fighting the Class Action Battle: What Every Lawyer Needs to Know About Filing the Class Certification Motion," Trial Lawyers Summit;
- "The JPML's 1404/1407 Shift and the End of Reflexive Transfer," Aggregate Litigation After Class Actions Conference of Law Seminars International;
- "Trial Lawyers and Class Actions: Protecting Consumers and Elevating Your Practice," Trial Lawyers Summit;
- "Lead Plaintiff 'Pickoffs', Offers of Judgment, Moving to Dismiss Class Allegations, and Other Early Attacks on the Class Process," Litigating Class Actions Conference of Law Seminars International;
- "MERS Litigation: Justice for Illinois Counties," Illinois Association of County Clerks & Recorders – Annual Conference
- "Class Actions in Medical Device and Pharmaceutical Litigation," HarrisMartin TVM/Actos Litigation Conference

Mr. Levitt graduated *magna cum laude* from Columbia University in 1990 and received his J.D. from Northwestern University School of Law in 1993.

### Megan D. McIntyre

Megan McIntyre is a director at Grant & Eisenhofer, practicing in the areas of corporate, securities and complex commercial litigation. Among other work, she has represented institutional investors, both public and private, in corporate cases in the Delaware Court of Chancery as well as in securities class actions in federal courts throughout the country that have resulted in significant recoveries. She was a member of the trial team in *In re Safety-Kleen Corp. Bondholders Litigation*, which ended in settlements and judgments totaling approximately $280 million after six weeks of trial, and she played a lead role in *In re Refco Inc. Securities Litigation*, which culminated in recoveries exceeding $400 million. Ms. McIntyre was also a member of the litigation teams that represented the plaintiffs in two cases whose settlements rank among the largest in the history of the Delaware Court of Chancery: *In re El Paso Corp. Shareholder Litigation*, which settled for $110 million, and *American International Group, Inc. Consolidated Derivative Litigation*, which settled for $90 million.

In addition to her work on behalf of investor plaintiffs in class and derivative litigation, Ms. McIntyre has represented institutional investors who have opted out of federal securities class actions to pursue separate actions, resulting in recoveries that exceeded what they would have received as class members. Ms. McIntyre has also successfully represented clients in obtaining access to corporate proxy statements for the purpose of presenting proposed shareholder resolutions, and has brought and defended actions seeking to enforce shareholders' rights to inspect corporate books and records pursuant to the statutory authority of Section 220 of the Delaware General Corporation Law.

Ms. McIntyre has appeared as a guest on CNBC's "On the Money," and on September 13, 2012 she was featured as "Litigator of the Week" in *The AmLaw Litigation Daily* for her work in the *In re El Paso Corp. Shareholder Litigation*.

Ms. McIntyre graduated from The Pennsylvania State University in 1991 and graduated *magna cum laude* in 1994 from The Dickinson School of Law.

**Gordon Z. Novod**

Gordon Novod is a director at Grant & Eisenhofer P.A., focusing his practice on corporate restructuring and creditors' rights. He has more than twelve years of experience representing *ad hoc* and official committees, distressed investors, lenders, indenture trustees, trade creditors, and other parties in some of the most complex landmark restructurings.

Mr. Novod's industry experience spans the automotive, chemical, construction, energy, entertainment, gaming, manufacturing, media, and retail sectors. He has negotiated, drafted, and litigated all aspects of Chapter 11 plans of reorganization, valuation, and plan confirmation proceedings, contested debtor-in-possession financing and cash collateral use, the pursuit of fraudulent conveyance actions, and other matters involving bankruptcy motion and litigation practice. He also has extensive experience reviewing, advising clients on, and litigating with respect to corporate and credit documents, including indentures, credit agreements, inter-creditor agreements, security agreements, and other lending documents concerning corporate debt and complex capital structures.

Mr. Novod prides himself on providing high quality advocacy to clients, keeping their business objectives in mind, thereby enabling him to build lasting relationships. He is also able to grasp complex legal and business issues in order to craft and implement innovative, yet practical solutions to maximize value for clients.

On numerous occasions, Mr. Novod has been acknowledged for his work as a restructuring attorney. In 2011, Law360 called him one of the "Rising Stars" in restructuring and "one of the five bankruptcy attorneys under 40 to watch." He was also named a finalist in the M&A Advisor's "40 under 40." The following year, he was recognized as a "Winner of the 2012 40 Under 40 East M&A Advisor Recognition Awards" and New York Super Lawyers – Bankruptcy, "Rising Stars." In 2013 and 2014, he was selected to New York Metro Super Lawyers in Bankruptcy. In addition, he serves on the New York City Bar Association's Committee on Bankruptcy and Corporate Reorganization.

Prior to joining G&E, Mr. Novod was a partner in the bankruptcy & corporate restructuring group at Brown Rudnick in New York. He also formerly practiced in the corporate restructuring and bankruptcy group at Kramer Levin Naftalis & Frankel LLP.

Mr. Novod's prominent engagements include:

- Tribune Company (indenture trustee)
- Central European Distribution Corporation (ad hoc committee of convertible noteholders)
- Lyondell Chemical Company (creditors' committee)
- Herbst Gaming, Inc. (creditors' committee)
- Lehman Brothers (ad hoc consortium of claimholders of Lehman Brothers Special Financing, Inc.)
- Green Valley Ranch Gaming, LLC (ad hoc committee of second lien lenders)
- Palm Harbor Homes, Inc. (indenture trustee)
- Equisearch Services, Inc. (trade creditor)
- General Motors Corporation (n/k/a Motors Liquidation Company) (creditors' committee)
- Charter Communications, Inc. (ad hoc first lien lenders)
- Midway Games, Inc. (secured lender)
- Bethlehem Steel Corp. (creditors' committee)
- WCI Steel, Inc. (ad hoc noteholders' committee and indenture trustee)
- Delphi Corp. (trade creditor and member of the creditors' committee)
- Grace Industries, Inc. (creditors' committee)
- Wave Wireless Corp. (secured lender)
- Diomed, Inc. (licensor and chairman of the creditors' committee)
- TransCare Corp. (creditors' committee)
- Buffets Holdings, Inc. (ad hoc noteholders' committee)
- ASARCO LLC (majority bondholders)
- Bridgeport Holdings, Inc. (Micro Warehouse, Inc.) (debtors)
- WestPoint Stevens, Inc. (second lien agent)

Mr. Novod has lectured on indenture analysis and fraudulent conveyance litigation.


**Linda P. Nussbaum**

Linda Nussbaum is a director at Grant & Eisenhofer and leads the antitrust practice. Ms. Nussbaum is nationally recognized for her representation of class and individual plaintiffs in antitrust and pharmaceutical litigation. Her experience prior to Grant & Eisenhofer was as sole or co-lead counsel in many significant antitrust class actions which have resulted in substantial recoveries, many in the realm of hundreds of millions of dollars: *In re Microcrystalline Cellulose Antitrust Litigation; Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Co., et al. (Taxol Antitrust Litigation); North Shore Hematology-Oncology Associates, P.C. v. Bristol-Myers Squibb Co. (Platinol Antitrust Litigation); In re Children's Ibuprofen Oral Suspension Antitrust Litigation*; *In re Relafen Antitrust Litigation*; *In re Plastics Additives Antitrust Litigation*; *In re Remeron Antitrust Litigation*; *Meijer, et al. v. Warner Chilcott Holdings*

*Company, III, Ltd., et al. (Ovcon Antitrust Litigation)*; and *In re Lorazepam & Clorazepate Antitrust Litigation*.

Recently resolved direct purchaser class cases in which Ms. Nussbaum served as lead counsel include: *In re Puerto Rican Cabotage Antitrust Litigation*; *In re DDAVP Direct Purchaser Antitrust Litigation; Meijer Inc. & Meijer Distribution, Inc. v. Abbott Laboratories (Norvir); Meijer, Inc., et al. v. AstraZeneca Pharmaceuticals LP, et al. (Toprol), Rochester Drug Co-Operative, et al. v. Braintree Laboratories, Inc.,* and *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company, et al. (Doryx).*

Current cases in which Ms. Nussbaum serves as lead counsel include *Duncan Galvanizing Corporation v. The London Metal Exchange, Ltd, et al.; In re Photochromic Lens Antitrust Litigation*; *Adriana M. Castro, M.D. v. Sanofi Pasteur Inc.; In re Aluminum Warehousing Antitrust Litigation and In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation.* In addition, she serves on the steering and/or executive committees in *In re Lithium-Ion Batteries Antitrust Litigation; In re MF Global Holdings LTD Investment Litigation; In re Lidoderm Antitrust Litigation; In re Aggrenox Antitrust Litigation and In re Pool Product Distribution Market Antitrust Litigation.* Ms. Nussbaum also represents large corporate entities in individual antitrust actions including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*; *and CVS Pharmacy v. American Express Travel Related Services, et al.*

Ms. Nussbaum was selected "Litigator of the Week" by the *AmLaw Litigation Daily* on April 2, 2010 for her role in the trial of *Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals v. Pfizer.* She was named as a finalist for Public Justice Foundation's 2011 Trial Lawyer of the Year award.

Ms. Nussbaum has lectured extensively about various aspects of antitrust law. Most recently, on November 5, 2012, she participated in a panel for The American Bar Association on FDA Citizen Petitions and Noerr Immunity. Her recent publications include: "The Fifth Annual Future of Antitrust Enforcement Conference" presented at the American Antitrust Institute's Fifth Annual Symposium on December 7, 2011; "The Evolving Challenges of Class Certification" presented at the American Antitrust Institute's Third Annual Symposium on Private Antitrust Enforcement on December 8, 2009; "Daubert 15 Years Later: How Have Economists Fared?" presented at the ABA Section of Antitrust Law Spring Meeting in March 2009; and "The Hatch-Waxman Act 25 Years Later: Successes, Failures and Prescriptions for the Future," presented at a panel on "Lawyers, Drugs and Money, a Prescription for Antitrust Enforcement in the Pharmaceutical Industry" at the University of San Francisco School of Law Antitrust Symposium on September 25, 2009. Her article "Where do we go now? The Hatch-Waxman Act 25 Years Later: Successes, Failures, and Prescriptions for the Future" was recently published in the *Rutgers Law Journal*.

Ms. Nussbaum's successful prosecution of complex litigation has been recognized and commended by judges in matters in which she has served as lead counsel. Chief Judge Hogan commented about Ms. Nussbaum and her co-lead counsel in *In re Lorazepam & Clorazepate Antitrust Litigation*, No. 99-cv-00276 (D.D.C.), "Obviously, the skill of the attorneys, and I'm not going to spend the time reviewing it, I'm familiar with counsel, and they, as I said, are among the best antitrust litigators in the country." From Judge Faith S. Hochberg of the United States District Court for the District of New Jersey: "[W]e sitting here don't get to see such fine

lawyering, and it's really wonderful for me both to have tough issues and smart lawyers. On behalf of the entire federal judiciary I want to thank you for the kind of lawyering we wish everybody would do." In *In re Neurontin Marketing and Sales Practices Litigation*, No. 04-10981 (PBS) (D. Mass), District Judge Patti Saris commented that "[this was] a fabulous trial[.] [I]t's the kind of thing that you become a judge to sit on."

Ms. Nussbaum is a member of the Advisory Board of the American Antitrust Institute, and a member of the American Law Institute.

### James J. Sabella

James Sabella is a director at Grant & Eisenhofer. He has over thirty-five years of experience in complex civil litigation, including representing plaintiffs and defendants in class and derivative actions involving trial and appellate work in state and federal courts. He has substantial experience in securities litigation and litigation involving claims against accounting firms and underwriters. He has also handled antitrust litigation and cases involving the fiduciary obligations of trustees under state law.

Mr. Sabella has represented the lead plaintiffs in numerous major cases that have resulted in large recoveries, including the General Motors securities litigation, where the settlement was in excess of $300 million, and the Refco securities litigation, where the recovery was in excess of $400 million. He also represented the lead plaintiffs in the Parmalat securities litigation, which resulted in landmark opinions establishing that the international firms that coordinate the audit services that audit firms conduct in various countries can be held liable for the conduct of such local audit firms.

Prior to joining Grant & Eisenhofer, Mr. Sabella practiced for twenty-eight years at several large Manhattan law firms, most recently as a partner in Sidley, Austin, Brown & Wood LLP, where his practice focused largely on accountants' liability defense, including the defense of actions alleging securities law violations and professional malpractice as well as grand jury investigations and investigations by the American Institute of Certified Public Accountants.

Mr. Sabella is a 1976 graduate of Columbia Law School, where he was a member of the Board of Directors of the *Columbia Law Review*. He received a B.A. *summa cum laude* from Columbia College in 1972 and a B.S. in 1973 from the Columbia School of Engineering, where he was valedictorian.

### Mary S. Thomas

Mary Thomas is a director at Grant & Eisenhofer. She spent twelve years practicing business litigation with two of Los Angeles' leading law firms before joining Grant & Eisenhofer in 2006. Her experience prior to Grant & Eisenhofer includes trade secret and intellectual property matters, contract actions, employment defense, consumer class action defense, insurance disputes and environmental matters.

At Grant & Eisenhofer, Ms. Thomas has successfully represented institutional investors in class action securities and shareholder derivative litigation. Notably, Ms. Thomas represented the lead plaintiffs in the Marsh & McLennan securities litigation, which resulted in a $400 million

settlement. Representative of Ms. Thomas' experience in Delaware Chancery Court is her successful representation of investors in the ACS shareholders litigation.

Ms. Thomas served as a volunteer arbitrator for the L.A. County Bar Association and as a volunteer mediator for the L.A. Superior Court and now serves as a volunteer guardian *ad litem* through Delaware's Office of the Child Advocate. She co-authored "California Wage and Hour Laws" (published by the National Legal Center for the Public Interest, January 2005) and was one of several authors of the 10th and 11th editions of the *California Environmental Law Handbook.*

Ms. Thomas graduated *magna cum laude* from Harvard Law School in 1994 and *magna cum laude* from the University of Delaware in 1991.


**Michael E. Criden**

Michael E. Criden is of counsel at Grant & Eisenhofer. He is an experienced trial lawyer who devotes a substantial amount of his practice to antitrust securities and consumer fraud class action litigation, securities and broker misconduct litigation and complex commercial litigation.

Mr. Criden is nationally recognized in the field of securities arbitration. On behalf of approximately three thousand individual investors in various limited partnerships, Mr. Criden recovered over $100 million from major brokerage firms such as Dean Witter, Prudential, Paine Webber and Merrill Lynch. Mr. Criden also has considerable experience in securities and other class actions involving consumer fraud and antitrust matters. See, e.g., *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186 (11th Cir. 1995). In addition, Mr. Criden was co-lead counsel in *Shea v. New York Life Insurance Co.*, No. 96-0746-Civ-Nesbitt (S.D. Fla.), wherein investors in limited partnerships received a full refund of their investment, nearly $200 million.

In October 2003, Mr. Criden's firm, as Lead Counsel in *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co. and American Bioscience*, No. 1:01CV01295 (D.D.C.), an antitrust class action, recovered $15,000,000 in a settlement for a class of third-party payors. In February 2004, Mr. Criden's firm, as Lead Counsel, recovered $9,708,000 in *Johnson v. National Western Life Insurance Co.*, No. 01-032012-CP (Mich. Cir. Ct.), a consumer-fraud class action wherein it was alleged that National Western was selling inferior annuity products to the elderly. In recent years, Mr. Criden has been instrumental in recovering additional millions of dollars in several antitrust and consumer fraud cases. See, e.g., *In re Buspirone Antitrust Litig.*, (S.D.N.Y.) ($90,000,000); *Ivax v. Aztec Peroxides*, No. 02-0593 ($24,000,000); *Best v. Wilmington Trust Co.*, No. 99-889-Civ-Jordan (S.D. Fla.) ($3,225,000); and *Gregersen v. One Int'l Assocs Limited Partnership*, C.A. No. 17274 (Del. Ch.) ($2,000,000). Mr. Criden's firm also was Lead Counsel for Third-Party Payors in *In re Remeron Antitrust End-Payor Antitrust Litigation*, responsible for allocating a $36 million settlement fund with several State Attorneys General who represented consumers and state agencies.

Currently, Mr. Criden, as a member of the Plaintiffs' Steering Committee, is litigating *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663 (D.N.J.); see also *In re: DDAVP Indirect Purchaser Litig.*, No. 05-2237 (CLB) (S.D.N.Y.) (Co-Lead Counsel); *In re Puerto Rican Cabotage Antitrust Litig.* (Steering Committee).

**Richard S. Schiffrin**

Richard S. Schiffrin is of counsel at Grant & Eisenhofer. He has represented institutional investors and consumers in securities and consumer class actions worldwide. In 2008, Mr. Schiffrin retired as a founding partner of Schiffrin Barroway Topaz & Kessler, LLP.

Mr. Schiffrin has been recognized for his expertise in many prominent cases, including *In re Tyco International Ltd. Securities Litigation*, the most complex securities class action in history, which resulted in a record $3.2 billion settlement. The $2.975 billion payment by Tyco represents the single largest securities class action recovery from a single corporate defendant in history, while the $225 million settlement with PricewaterhouseCoopers (PwC) represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history; *In re AremisSoft Corp. Securities Litigation*, a complex case involving litigation in four countries, resulting in a $250 million settlement providing shareholders with a majority of the equity in the reorganized company after embezzlement by former officers; *In re Tenet Healthcare Corp.*, resulting in a $216.5 million settlement and which led to several important corporate governance improvements; *Henry v. Sears, et al.*, one of the largest consumer class actions in history which resulted in a $156 million settlement distributed without the filing of a single proof of claim form by any class member; *Wanstrath v. Doctor R. Crants, et al.*, a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets to a private entity owned by company insiders, resulting in corporate governance reform in addition to the issuance of over 46 million shares to class members; *Jordan v. State Farm Insurance Company*, resulting in a $225 million settlement and other monetary benefits for current and former State Farm policy-holders; and *In re Sotheby's Holdings, Inc. Derivative Litigation*, resulting in a multi-million dollar settlement and significant governance changes.

Mr. Schiffrin is an internationally renowned speaker and lectures frequently on corporate governance and securities litigation. His lectures include: the MultiPensions Conference in Amsterdam, Netherlands; the Public Funds Symposium in Washington, D.C.; the European Pension Symposium in Florence, Italy; and the Pennsylvania Public Employees Retirement Summit (PAPERS) in Harrisburg, Pennsylvania. Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and served as a faculty member at legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics - Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

Mr. Schiffrin is a graduate of DePaul Law School and attended graduate school at the University of Chicago. After protecting the civil rights of clients for seven years as an Assistant Public Defender with the Office of the Public Defender of Cook County, where he tried hundreds of cases, Mr. Schiffrin founded Schiffrin & Craig, Ltd., representing consumers and individual investors in actions brought against public companies. He is licensed to practice law in Pennsylvania and Illinois and has been admitted to practice before numerous United States District Courts.

**William A.K. Titelman**

William Titelman is of counsel at Grant & Eisenhofer. His practice focuses on plaintiff securities litigation, representing public pension funds, union and Taft-Hartley funds.

He has been actively involved in government, law and public policy throughout his career. Mr. Titelman is involved in *In re Fannie Mae Securities Litigation*, *In re Royal Dutch/Shell Transport Securities Litigation*, *In re Marsh & McLennan Companies, Inc. Securities Litigation*, *In re Cigna Corp. Securities Litigation*, and *In re HealthSouth Stockholder Litigation.* He organized and served as counsel for Amici Curiae states and public pension funds in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43, and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, No. 06-484, both before the United States Supreme Court, and *In re Dynex Capital Securities Litigation*, No. 06-2902-cv, before the Second Circuit. The briefs in these three cases were filed on behalf of eight states and five public pension funds concerning critical issues of investor protection and securities litigation.

Mr. Titelman began his career in the early 1970's serving in several key positions in Pennsylvania state government, including Director of Motor Vehicles and Special Assistant to the Governor for Government Management. After graduating from The Dickinson School of Law in 1980, Mr. Titelman led the Pennsylvania Trial Lawyers Association for nearly a decade in its efforts to protect and expand individual rights, including shareholder rights, and drafted key provisions of Pennsylvania's automobile insurance and consumer safety laws. Subsequently, he became a partner at a leading Pennsylvania law firm, where he served on the firm's Board of Directors and chaired both its Harrisburg office and its Administrative Law and Government Affairs Practice Group. One of his major clients was the Pennsylvania Public School Employees' Retirement System (PSERS).

In 1988, Mr. Titelman led the successful enactment of a new Pennsylvania Business Corporation Law. From 1989 to 1990, he led a national campaign organizing major public pension funds and other institutional investors, shareholder rights activists, former SEC Commissioners, leading economists and deans of business and law schools to oppose and successfully amend Pennsylvania Senate Bill 1310.

*The Wall Street Journal* described this legislation as the most onerous anti-shareholder, management-protection bill ever proposed in the United States. Mr. Titelman served as General Counsel to both the Pennsylvania Public School Building and Higher Educational Facilities Authorities. He went to serve on as Executive Vice President of Managed Care and Public Affairs at Rite Aid Corporation, where he suffered substantial losses as a victim of one of the nation's largest securities frauds. He subsequently brought and settled an individual action for securities fraud against Rite Aid.

Prior to joining Grant & Eisenhofer, Mr. Titelman spent more than six years as a partner in a New York based plaintiffs' securities litigation firm. Mr. Titelman is a graduate of the Washington & Jefferson College and The Dickinson School of Law.


**Thomas V. Ayala**

Thomas V. Ayala is senior counsel at Grant & Eisenhofer, focusing on complex pharmaceutical and medical device litigation. Mr. Ayala has handled all phases of personal injury litigation from commencement through trial and appeals. He has also assembled and worked with numerous interdisciplinary teams of medical and scientific expert witnesses to support clients' legal claims, and he has served as first-chair cross-examiner of adversarial experts and other witnesses in product liability litigation. Mr. Ayala is actively representing injured victims in

cases against major pharmaceutical companies, medical device manufacturers, and manufacturers in other industries.

Prior to his representation of injured individuals and victims of consumer fraud, Mr. Ayala worked for an international firm serving as national counsel in numerous mass tort proceedings, including pharmaceutical, medical device, environmental exposure, and other complex personal injury proceedings, including multidistrict litigation proceedings.

Immediately following law school, Mr. Ayala was a law clerk to Judge Eduardo C. Robreno of the U.S. District Court for the Eastern District of Pennsylvania, where he assisted the judge in presiding over seven jury trials and was actively involved in the administration of matters arising under federal and state law.

Mr. Ayala earned his J.D., *summa cum laude*, from Villanova University School of Law in 2004, where he served as editor-in-chief of the *Villanova Law Review* and was named to the Order of the Coif. While at Villanova, Mr. Ayala served as an intern to the late Judge Charles R. Weiner. From 2010-2014, he has been listed as a Rising Star in the *Super Lawyers* and *Philadelphia* magazines.

### Peter A. Barile III

Pete Barile is senior counsel at Grant & Eisenhofer. He has more than a decade of experience litigating federal multidistrict antitrust class actions and other complex matters from both sides of the "v.," providing him insight into how the other sides work, benefitting clients he represents, whether plaintiff classes, opt-outs, individual competitors, or defendants. In addition to his work in federal district courts, Mr. Barile has substantial experience before the Judicial Panel on Multidistrict Litigation, and with federal appeals, including cases before the United States Supreme Court. Prior to joining Grant & Eisenhofer, Mr. Barile practiced in New York and Washington, with law firms renowned for their leading antitrust practices.

Among his current matters are: *In re Aluminum Warehousing Antitrust Litigation* (J.P.M.L.); *In re Cotton Commodities Litigation* (S.D.N.Y.); *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.); *In re Domestic Drywall Antitrust Litigation* (E.D. Pa.); *In re High Tech Employees Antitrust Litigation* (N.D. Cal.); *In re LIBOR-Related Financial Instruments Antitrust Litigation* (S.D.N.Y.); *In re Menactra Antitrust Litigation* (D.N.J.); *In re Neurontin Sales & Marketing Practices Litigation* (D. Mass.); *In re Nexium Antitrust Litigation* (D. Mass.); *In re Photochromic Lenses Antitrust Litigation* (M.D. Fla.); *In re Skelaxin Antitrust Litigation* (E.D. Tenn.); *In re WTI Crude Oil Commodities Litigation* (S.D.N.Y.).

Mr. Barile's reported cases include: *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) (lead counsel for *amicus curiae* Consumer Federation of America in landmark antitrust case on resale price fixing); *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005) (represented *amicus curiae* in appeal concerning the Foreign Trade Antitrust Improvements Act (FTAIA)); *Metallgesellschaft AG v. Sumitomo Corp. of America*, 325 F.3d 836 (7th Cir. 2003) (represented opt-out plaintiffs in a leading case on the FTAIA concerning international commodities trading); *In re Online DVD Rental Antitrust Litigation*, 2010 U.S. Dist. LEXIS 138558 (2010) (obtained certification of 40 million member class of subscribers to Netflix against Netflix and Wal-Mart); *In re Rail Freight Fuel Surcharge Antitrust*

*Litigation*, 593 F. Supp. 2d 29, *aff'd*, 602 F.3d 444, *cert. denied*, 131 S. Ct. 822 (2010) (obtained dismissal, affirmance, and denial of *certiorari* in an indirect purchaser price fixing class action against major national railroads); *In re LTL Shipping Services Antitrust Litigation*, 2009 U.S. Dist. LEXIS 14276 (N.D. Ga. 2009) (obtained dismissal of price fixing class action brought against major trucking companies); *In re Southeastern Milk Antitrust Litigation*, 555 F. Supp. 2d 934 (2008) (defeated motion to dismiss price fixing and monopolization claims brought on behalf of classes of dairy farmers); *In re Medical Residents Antitrust Litigation*, 339 F. Supp. 2d 26 (D.D.C. 2004), *aff'd*, 2006 U.S. App. LEXIS 14079 (D.C. Cir. 2006), *cert. denied*, 549 U.S. 1156 (2007) (obtained dismissal of price fixing class action alleging conspiracy in the hiring and compensation of medical residents); *Omnicare, Inc. v. United Health Group, Inc.*, 524 F. Supp. 2d 1031 (N.D. Ill. 2007) (prosecuted precedent-setting private action for pre-merger gun jumping conspiracy under Section 1 of the Sherman Act).

Mr. Barile's *pro bono* work includes: *Giles v. State of California* 554 U.S. 353 (2008), in which he served as lead counsel in the U.S. Supreme Court for *amicus curiae* Battered Women's Justice Project, in a case concerning the scope of the Confrontation Clause of the United States Constitution.

Mr. Barile has published numerous articles and served as a panelist or speaker on antitrust issues. His work has been cited by the Federal Trade Commission and the Antitrust Modernization Commission, as well as leading academics and practitioners. He has authored or co-authored the following: *Milton Handler, Dean of Antitrust*, in Yale Biographical Dictionary of American Law (2010); *Pattern Exception to Sham Litigation*, Antitrust Exemptions & Immunities Update (2009); *Private Right of Action for Pre-Merger Gun Jumping Recognized*, Antitrust Litigator (2008); *Supreme Court Confirms Viability of Predatory Bidding Claims*, Business Law Today (2007); *Antitrust Damages Resulting from Meritorious Patent Litigation*, Antitrust Exemptions & Immunities Update (2007); *Antitrust's New Big Brother, Business Law Toda*y (2006); *Antitrust in Wartime*, Antitrust (2003); *Health Care Providers and a Market Participation Exception to State Action Immunity*, Antitrust Report (2000); *The Microsoft Case*, Connecticut Law Review (Symposium Editor) (1999). He has contributed to the following books and treatises: Indirect Purchaser Antitrust Litigation Handbook (forthcoming, 2014); Antitrust Law Developments (Seventh) (2012); Annual Review(s) of Antitrust Developments (2008-11); Antitrust & Trade Associations (2009); Antitrust & International Intellectual Property Licensing (2008); Antitrust Law Developments (Sixth) (2007); Annual Review(s) of Antitrust Developments (2005-06); Unfair Trade Practices (2003). His speaking engagements include: Panelist, ABA, Sham Litigation: Claiming and Defeating Antitrust Immunity (2011); Panelist, ABA, Fundamentals of Antitrust Exemptions & Immunities (2010); Moderator, ABA, Now the Feds Can Wiretap Suspected Antitrust Offenders (2006); Introduction, The Microsoft Case, Connecticut Law Review Symposium (1999).

Mr. Barile is active in the antitrust bar, having held a number of leadership posts in the ABA and other bar associations. He currently serves on the Advisory Board of the Loyola Institute for Consumer Antitrust Studies.  He is a member of the Competition Editorial Advisory Board of *Law360*, a leading legal publication. Mr. Barile graduated from the University of Connecticut in 1991 with a bachelor of arts in English, and received his J.D. from the University of Connecticut School of Law in 1999, *magna cum laude*.

**Traci L. Buschner**

Traci Buschner is senior counsel at Grant & Eisenhofer. A former state prosecutor, Ms. Buschner has spent over 15 years representing plaintiffs in complex litigation ranging from class actions to government contract fraud. She has been involved in multi-million dollar recoveries on behalf of workers asserting claims under numerous federal statutes and has handled some of the largest successful False Claims actions, bringing billions of dollars to the United States Government.

In the following, Ms. Buschner represented:

- The lead whistleblower, Meredith McCoyd, in a False Claims Act case against Abbott Laboratories, resulting in a settlement of over $1.5 billion in 2012. The case involved Abbott's illegal efforts to promote an anti-seizure medication, Depakote, through off-label marketing, misbranding and paying physicians to write prescriptions. The settlement was one of the largest recoveries by the United States government under the False Claims Act against a pharmaceutical company.

- The lead whistleblowers in a False Claims Act case against Wyeth Pharmaceuticals, a subsidiary of Pfizer, resulting in a $257.4 million settlement in 2013. The settlement agreement outlined the company's efforts – for over a decade – to unlawfully market a powerful immunosuppressant drug Rapamune, used to treat patients who have undergone kidney transplants.

- A former sales manager in a False Claims Act case against Amgen, Inc., culminating in a settlement of $24.9 in 2013. The settlement agreement charged that Amgen paid kickbacks, in the guise of rebates, to long term care pharmacies in exchange for switching nursing home patients from a competitor drug to Aranesp and encouraged pharmacists to recommend the drug for uses outside the drug's FDA label.

- A nursing professional and former Sales Manager in a False Claims Act case resulting in a $1.04 billion settlement against GlaxoSmithKline ("GSK") in 2012. Ms. Graydon was one of the
relators who alleged that GSK made false and misleading statements about Advair's safety and efficacy, thus enabling false or fraudulent claims to Medicare, Medicaid, and other reimbursement programs.

- One of the six main whistleblowers in a False Claims Act litigation against Pfizer, Inc., which in 2009 resulted in the Government's recovery of $2.3 billion.

Prior to joining Grant & Eisenhofer, she was an attorney with the Washington, DC office of one of the nation's largest personal injury and labor firms and also practiced with an Austin, Texas firm where she represented victims of asbestos exposure.

Ms. Buschner has represented some of the nation's largest labor unions and their members. On behalf of the Oil, Chemical & Atomic Workers International Union (OCAW), AFL-CIO, Ms. Buschner was actively involved in environmental litigation which led to Secretary of Energy, William Richardson, canceling a project to recycle radioactive nickel at the Oak Ridge, Tennessee K-25 Nuclear Weapons Complex. The documentation of her efforts to expose faulty

government contracting at Department of Energy Nuclear weapons sites was published in The Environmental Forum, Volume 17, No. 6, November/December 2000.

Ms. Buschner has co-authored two articles with colleague Reuben A. Guttman: "Patients suffer from Drug Industry's Chronic Greed," Wall Street Journal MarketWatch (August 7, 2013) and "Taking the Next Step in Pharma Fraud," American Constitution Society Blog (May 8, 2012).

Ms. Buschner was recognized, by *Washingtonian Magazine*, as a top Whistleblower Lawyer. Her work on the Abbott False Claims Act case at Grant & Eisenhofer was featured in *The National Law Journal,* "Plaintiff's Hot List" (2011-2012).

Ms. Buschner currently serves on American Association for Justice's (AAJ) Membership Committee. She is a member of AAJ's Qui Tam section, a member of the Trial Lawyers Association of Metropolitan Washington, D.C. (TLA-DC), the American Constitution Society (ACS), and the National Employment Lawyer's Association (NELA).

She has also served as a faculty member (2011 and 2012) for Emory University Law School's Trial Techniques Program.

Ms. Buschner graduated from Miami University in 1990, and received her J.D. from the University of Louisville in 1995.

### Deborah A. Elman

Deborah Elman is senior counsel at Grant & Eisenhofer. Ms. Elman focuses on securities fraud and derivative cases at Grant & Eisenhofer. Prior to joining Grant & Eisenhofer as an associate, Ms. Elman represented clients before the SEC and participated in numerous appearances before federal and state courts as an associate at a leading New York law firm.

Ms. Elman served as a law clerk for the Honorable William L. Standish, United States District Judge, in the United States District Court for the Western District of Pennsylvania, participating in all aspects of federal trial court practice.

Ms. Elman graduated *cum laude* in 2001 from the University of Pittsburgh School of Law, where she was Lead Executive Editor of the *Journal of Law and Commerce* and received the Horowitz Graduate Student Paper Prize, the National Association of Women Lawyers Law Student Achievement Award and the School of Law Community Service Award. She received a Masters of Public Health degree in 1997 from Columbia University, where she graduated *cum laude* with a Bachelor of Arts degree in 1995.

### David T. Fischer

David Fischer is senior counsel at Grant & Eisenhofer. He has spent over a decade representing plaintiffs and defendants in complex litigation and antitrust litigation. Mr. Fischer's complex litigation practice has involved federal and state civil, criminal and administrative fraud investigations and litigation. He has been involved in numerous cases involving multi-million dollar recoveries in False Claim Act actions.

Mr. Fischer represented the lead whistleblowers in a *qui tam* action under the False Claims Act alleging fraud by Merck-Medco, a national pharmacy benefit management company ("PBM"), related to services performed for federal health plans. The Government intervened in the case, which was litigated aggressively for several years, and which was settled for approximately $185 million just prior to summary judgment/trial.

Mr. Fischer is also an experienced antitrust litigation attorney, has been counsel in two antitrust trials and has defended companies facing Federal Trade Commission (FTC) merger investigations. In 2005, he helped obtain a multi-million jury verdict on behalf of Health Care Service Corporation (HCSC) in the first indirect-purchaser antitrust case to proceed to trial (Federal Court, District of Columbia). That lawsuit stemmed from a generic pharmaceutical company's anticompetitive conduct in the markets for lorazepam (generic equivalent of Ativan®) and clorazepate (generic equivalent of Tranxene®). After HCSC opted out of an underlying class settlement, and after several additional years of litigation, the case was tried to verdict in a month-long jury trial. Following verdict, the damages award for Plaintiffs was trebled and enhanced by the Court to nearly $80 million.

Mr. Fischer has published numerous articles and served as a panelist or speaker on False Claims Act and antitrust issues. His speaking engagements include: "Reimbursement and False Claims Act Fundamentals," ABA Health Law Section (May 19, 2011, February 7, 2013); "In-House Counsel Update," ABA Section of Antitrust Law Corporate Counseling Committee (June 2, 2011); "False Claims Act Changes and Challenges," Department of Energy Contractor Attorneys' Association's (DOECAA) Spring Conference (May 13, 2010); "The Government's Crackdown on Clinical Research Misconduct," Drug Information Association's Liability Risks in Clinical Trials Program (February 25, 2010); and "Substantive and Procedural Motions," District of Columbia Bar Association CLE Program Pre-Trial Skills Series (October 22, 2009, October 29, 2010, October 20, 2011, November 29, 2012, and November 13, 2013). He has authored or co-authored the following: *Digital evidence searches in competition investigations: Best Practices for effective fundamental rights*, 4-2009 Concurrences, November 2009; *Dr. Miles: Will The Supreme Court Find a Cure?*, The Antitrust Source, February 2007; and *Cardizem CD®, K-Dur®, Plavix® and OxyContin®: Have We Entered the Endgame of Antitrust Uncertainty Towards Pharmaceutical Patent Litigation Settlements?*, Health Lawyers Weekly, December 15, 2006.

Mr. Fischer is active in the health care and antitrust bars, having held a number of leadership posts in the ABA. He is currently the vice chair of the ABA Section of Health Law's Healthcare Litigation and Risk Management Interest Group. He was also on the Planning Committee for, and a speaker at, the ABA's False Claims Act and Qui Tam Trial Institute (June 5-7, 2013).

Mr. Fischer's *pro bono* work has included representing disabled veterans and individuals in neglect and guardianship cases.

Mr. Fischer graduated from Miami University in 1996 with a Bachelor of Arts in English Literature and Political Science, and received his J.D. from the Georgetown University Law Center in 1999. Prior to joining Grant & Eisenhofer, Mr. Fischer worked in Washington D.C. for Shook, Hardy & Bacon where he frequently litigated health care *qui tam* cases.

**Christine M. Mackintosh**

Christine Mackintosh is a senior counsel at Grant & Eisenhofer, practicing in the areas of corporate and securities litigation. She has represented institutional investors, both public and private, in corporate cases in the Delaware Court of Chancery and in securities fraud class actions in federal courts throughout the country.

Ms. Mackintosh has played significant roles in several landmark actions challenging mergers and acquisitions in the Delaware Court of Chancery, including *In re Del Monte Foods Company Shareholder Litigation*, which resulted in an $89.4 million recovery for the class, and *In re El Paso Corporation Shareholder Litigation*, which resulted in a $110 million recovery for the class. Ms. Mackintosh also played a significant role in *American International Group, Inc. Consolidated Derivative Litigation*, which resulted in a $90 million recovery, one of the largest recoveries in a shareholder derivative action in the history of the Delaware Court of Chancery.

Ms. Mackintosh has also played a significant role in a number of securities fraud class actions that have achieved substantial recoveries for classes of investors, including *In re Refco Securities Litigation* (exceeding $400 million) and *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* ($215 million), and on behalf of individual and institutional investors who have opted out of class actions to pursue individual suits, including representation of investors who opted out of *In re Bank of America Corporation Securities, Derivative & ERISA Litigation*. Outside of the United States, Ms. Mackintosh was a member of the team that secured the historic $450 million pan-European settlement in the *Royal Dutch Shell* case and is currently representing numerous institutional investors in litigation against Royal Bank of Scotland in the United Kingdom. Ms. Mackintosh currently serves as co-lead counsel in *In re JP Morgan Chase & Co. Securities Litigation*.
Prior to joining Grant & Eisenhofer, Ms. Mackintosh practiced in the Philadelphia office of an international law firm, where she practiced in the areas of commercial, securities, and insurance recovery litigation.

A *magna cum laude* graduate of St. Joseph's University, Ms. Mackintosh earned her law degree at the University of Pennsylvania Law School. She is the co-author of two articles published by the Practising Law Institute's *Corporate Law & Practice Course Handbook Series.* "Ethical Issues and Their Impact on Securities Litigation," published in September-October, 2003, was co-authored with Marc J. Sonnenfeld, Viveca D. Parker and Marisel Acosta. "Lessons From Sarbanes-Oxley: The Importance of Independence In Internal Corporate Investigations," published in July, 2003, was co-authored with Alfred J. Lechner, Jr.

**Amy Miller**

Amy Miller is senior counsel at Grant & Eisenhofer. Ms. Miller focuses on merger & acquisitions, corporate governance litigation, and derivative cases at Grant & Eisenhofer.

Ms. Miller represents shareholders seeking accountability from corporate management on issues ranging from breach of fiduciary to corporate waste. While litigating these actions, she has secured significant monetary recoveries and corporate governance reforms in cases including *In re News Corporation Shareholder Derivative Litigation, In re El Paso Corporation Shareholder Litigation,* and *In re ACS Shareholder Litigation*.

Prior to joining Grant & Eisenhofer, Ms. Miller worked at two prominent New York law firms. Ms. Miller also held an externship for the Honorable George B. Daniels, United States District Judge, in the United States District Court for the Southern District of New York, participating in all aspects of federal trial court practice.

Ms. Miller graduated *summa cum laude* in 2001 from New York Law School, where she was a Member & Articles Editor for the *New York Law School Law Review*. She graduated *magna cum laude* in 1995 with a Bachelor of Arts degree in psychology.

**Brenda F. Szydlo**

Brenda Szydlo is senior counsel at Grant & Eisenhofer. Ms. Szydlo has more than 25 years of experience in complex civil litigation in federal and state court on behalf of plaintiffs and defendants, with a particular focus on securities litigation, accountants' liability, and consumer protection litigation.

Ms. Szydlo has represented institutional and individual investors in class and private actions that have resulted in significant recoveries, such as *In re Refco Securities Litigation*, where the recovery was in excess of $400 million. She also represented a number of institutional and individual investors who opted out of *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*. Ms. Szydlo also played an important role in obtaining a preliminary injunction in *In re Del Monte Foods Co. Shareholder Litigation*, a Delaware Chancery Court action in which shareholders challenged a merger transaction.

Prior to joining Grant & Eisenhofer, Ms. Szydlo served as counsel in the litigation department of Sidley Austin LLP in New York, and its predecessor, Brown & Wood LLP, where her practice focused on securities litigation and enforcement, accountants' liability defense, and general commercial litigation.

Ms. Szydlo is a 1988 graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a B.A. in economics from Binghamton University in 1985.

**Diane T. Zilka**

Diane Zilka is senior counsel at Grant & Eisenhofer. For over a decade, Ms. Zilka has been in the forefront of the Firm's successful prosecution of securities fraud and corporate governance cases. As a member of numerous trial teams, Ms. Zilka has played a key role in achieving significant recoveries for funds managed by U.S. and international institutional investors and public pension plans. Representative cases include: *Safety Kleen Bondholder Litig.*, more than $276 million in judgments and settlements; *In Re Merck & Co. Vytorin/Zetia Sec. Litig.*, $215 million for investors—among the largest for a securities fraud case without a government finding of corporate wrongdoing; *In Re News Corp. S'holder Litig.*, $139 million recovered for the company—one of the largest cash recoveries in the history of derivative shareholder litigation—and which resulted in significant corporate governance reforms; *Parmalat Securities Litig.*—the European "Enron" resulting in $110 million recovery; *TRSL v. AIG*, $115 million recovered for

the company; *In Re Appraisal of Metromedia Int'l Group, Inc.*, a $188 million judgment in what was only the second appraisal action of preferred shares in the history of Delaware Chancery Court. In the corporate governance arena, Ms. Zilka's cases have addressed such cutting-edge issues as the propriety of "proxy puts" and of "Don't Ask, Don't Waive" standstill provisions, the use of derivative securities in "poison pills," and the conflicted role of Wall Street banks as financial advisors to target corporations and as lenders to buyers, which, in *Del Monte Corp. S'holder Litig.,* resulted in a preliminary injunction of a $5.3 billion leveraged buyout and an $89.4 settlement for the shareholders. Ms. Zilka has successfully defended clients before the SEC in "no-action" proxy proposal challenges, and has successfully prosecuted "books and records" actions.

Ms. Zilka co-authored "The Role of Foreign Investors in Federal Securities Class Actions," 1442 PLI/CORP. 91 (2004) and "The Current Role Of Foreign Investors In Federal Securities Class Actions," 1620 PLI/Corp 11 (2007), cited by the United States Supreme Court in *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010). Ms. Zilka has lectured on federal class action litigation practice as well as on Delaware corporate law.

Ms. Zilka has concentrated her career in securities, corporate and complex commercial litigation. Before joining G&E, she was a partner in a prominent New York City law firm and a member of its Investor Protection practice group. Ms. Zilka has served as General Chair of the annual Combined Campaign For Justice which provides critical funding for Delaware's three legal services agencies. She is a member of the Board of The Print Center of Philadelphia and of the Board of Panetiere Partners, two non-profit organizations.

Ms. Zilka graduated from the State University of New York at Binghamton in 1982, and received her J.D. from Fordham University School of Law in 1985.

### Edmund S. Aronowitz

Edmund Aronowitz is an associate at Grant & Eisenhofer, where his primary area of practice is consumer class action litigation. Prior to joining G&E, Mr. Aronowitz was a class action litigation associate in the Chicago office of a national law firm, and practiced complex commercial litigation as an associate in the New York office of a large global firm.

Mr. Aronowitz graduated from Cornell University (B.A. with honors, History, 2002) and Cornell Law School (J.D. with honors, 2005) where he was a Managing Editor of the Cornell Journal of Law and Public Policy and a Bench Editor on the Moot Court Board. Following law school, Mr. Aronowitz served as a law clerk to the Hon. Robert L. Hinkle of the United States District Court for the Northern District of Florida. Mr. Aronowitz has been recognized in the *Illinois Super Lawyers* Rising Stars list for 2013 and 2014.

Mr. Aronowitz is admitted to practice law in New York and Illinois and before the United States District Courts for the Southern District of New York and Northern District of Illinois.

### Justin S. Brooks

Justin Brooks is an associate at Grant & Eisenhofer focusing his practice on whistleblower claims brought under the False Claims Act and other federal and state statutes, securities litigation, and shareholder derivative litigation on behalf of institutional investor clients as well

as complex commercial litigation, class action, and mass tort litigation in the areas of consumer protection, technology, and agricultural law.

Prior to joining Grant & Eisenhofer, Mr. Brooks' practice focused primarily on complex commercial, mass torts, bankruptcy, and employment litigation. He also served as a law clerk to the Honorable Suzanne B. Conlon of the U.S. District Court for the Northern District of Illinois. During the summer of 2006, he served as an intern to Judge John. E. Sprizzo of the U.S. District Court for the Southern District of New York as well as the Honorable Arlen Specter of the U.S. Senate.

Mr. Brooks co-authored an article detailing the nuances of class and collective action settlements entitled *Navigating Developing Challenges in Approval of Class and Collective Action Settlements*. The article is published in the American Bar Association's Journal of Labor & Employment Law. He received various honors and awards for his academic achievements and served as an editor for the *Michigan Telecommunications and Technology Law Review*.

Mr. Brooks graduated in 2005 with a B.A. in psychology from Emory University, where he was a member of Phi Beta Kappa. He received his J.D., *cum laude*, from the University of Michigan Law School in 2008. Mr. Brooks is admitted to practice in New York, New Jersey, and Pennsylvania and in a number of federal district courts.

**Bradley J. Demuth**

Brad Demuth is an associate at Grant & Eisenhofer, where he focuses his practice on complex antitrust litigation matters. Prior to joining G&E, Mr. Demuth worked as an antitrust associate at two of the leading and most well regarded defense firms in the world.

Mr. Demuth's antitrust litigation casework includes contributions in the following matters: *Progressive Casualty Ins. Co. v. Visa, Inc. (re Interchange Fees), In re American Express Anti-Steering Rules Antitrust Litig., In re Crude Oil Commodity Futures Litig., In re Aluminum Warehousing Antitrust Litig., In re Androgel Antitrust Litig., In re Aggrenox Antitrust Litig., In re Lidoderm Antitrust Litig., In re Nexium (Esomeprazole) Antitrust Litig., In re MF Global Holdings Lid. Invest. Litig, In re Flonase Antitrust Litigation, Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co. (re Doryx), Skelaxin (Metaxalone) Antitrust Litigation, Castro v. Sanofi Pasteur, Inc. (re Menactra), In re Photochromic Lens Antitrust Litigation, Madison Square Garden, L.P. v. NHL, In re Tricor Antitrust Litigation, Sullivan v. De Beers, W.B. David v. De Beers*, and *Compuware v. IBM*

Mr. Demuth received his J.D. degree from American University Washington College of Law in 1999. Following law school, Mr. Demuth served as a law clerk to the United States Court of Appeals for the Second Circuit.

**Bernard C. Devieux**

Bernard Devieux is an associate at Grant & Eisenhofer, focusing on corporate governance and securities litigation on behalf of institutional investors. He is also part of a team handling residential mortgage-backed securities litigation in federal and state courts on behalf of several of the firm's clients.

Mr. Devieux received his J.D. and M.B.A. from Villanova in 2011. During law school, he worked as a summer associate for a nationally-recognized law firm in Philadelphia, PA, and interned with the Chief Mediator of the United States Court of Appeals for the Third Circuit's Appellate Mediation Program. He also interned in the general counsel's office of a Philadelphia-based software and technology company, where he assisted in handling general corporate law matters. During his third year of law school, Mr. Devieux was a member of Villanova's Civil Justice Clinic, where he represented low-income clients in child custody disputes and in administrative proceedings before the Social Security Administration. He is a 2008 graduate of the University of Delaware, with a B.S. in Finance.

Mr. Devieux volunteers as a mentor with Big Brothers Big Sisters of Delaware, and is a member of the Delaware State Bar Association.

**Kimberly A. Evans**

Kimberly Evans is an associate at Grant & Eisenhofer, focusing her practice on corporate governance and complex securities litigation on behalf of institutional investor clients.

Prior to joining Grant & Eisenhofer, Ms. Evans worked as an associate at a well-known Philadelphia-based law firm, where she gained extensive experience in the practice areas of securities, antitrust, and consumer protection class action litigation. She also previously worked as a Paralegal in the Juvenile Division of the Philadelphia District Attorney's Office.

Ms. Evans is a member of the American Bar Association and has volunteered with the Wills For Heroes Program, an organization that provides free wills and advanced directives to police officers, firefighters and other first responders. She also volunteers her time with local animal rescue groups in the greater-Philadelphia area.

Ms. Evans earned her J.D. from Temple University in 2007 and received a bachelor's degree in Chemistry and Criminal Justice from La Salle University in 2003.

**Michael J. Gallagher, Jr.**

Michael Gallagher is an associate at Grant & Eisenhofer, where he focuses his practice on complex antitrust litigation.

Prior to joining Grant & Eisenhofer, Mr. Gallagher clerked for The Hon. Helene N. White of the United States Court of Appeals for the 6th Circuit, and worked for the United States Securities and Exchange Commission, Division of Enforcement; the Congressional Oversight Panel, under now Senator Elizabeth Warren; and the Department of Justice, Antitrust Division. Prior to law school, Mr. Gallagher worked in nonprofit management and governmental and institutional finance.

Mr. Gallagher's antitrust litigation casework includes contributions in the following matters: *In re Aluminum Warehousing Antitrust Litigation, In re American Express Anti-Steering Rules Antitrust Litigation,* and *Castro v. Sanofi Pasteur.*

Mr. Gallagher graduated from Rutgers School of Law Camden and obtained his B.S in international business relations and non-profit management from Franklin and Marshall College.

Mr. Gallagher is a board member of the American Civil Liberties Union of Greater Philadelphia, Chairperson of the LGBT Working Group, and Treasurer of West 23rd Street Co-op. He volunteers his time with the ACLU and is a mediator in local courts.

### Robert D. Gerson

Robert Gerson is an associate at Grant & Eisenhofer, representing institutional investors and other plaintiffs in complex litigations including securities class actions and derivative suits.

Mr. Gerson has litigated numerous cases involving the financial crisis, including more than fifteen actions arising out of wrongdoing related to the issuance of residential mortgage-backed securities ("RMBS") and other complex financial products.

Robert was a member of the team in *Minneapolis Firefighters' Relief Association v. Medtronic, Inc.*, which achieved an $85 million recovery for investors arising out of allegations that Medtronic promoted the Infuse bone graft for dangerous "off-label" uses.

Mr. Gerson is a graduate of New York Law School, where he was a member of the Moot Court Association and the University of Maryland, where he received a B.A. in government and politics.

### David M. Haendler

David Haendler is an associate at Grant & Eisenhofer, practicing primarily in the areas of securities and derivative litigation. He has represented institutional investors in complex cases throughout the country, at both the trial court and appellate levels.

Mr. Haendler played a significant role in a number of securities fraud actions brought by one of the world's largest pension funds regarding its purchases of residential mortgage-backed securities. Mr. Haendler has also represented investors in class actions brought under the federal securities laws. He currently represents plaintiffs in cases including *In re JP Morgan Chase & Co. Securities Litigation*, *In re Pfizer Securities Litigation*, In *re New Oriental Education & Technology Group Securities Litigation*, and *In re Miller Energy Securities Litigation*.

Mr. Haendler represents corporations and their shareholders in derivative cases before the Delaware Court of Chancery and elsewhere. He represents plaintiffs in *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*, a case challenging the federal government's management of Fannie Mae and Freddie Mac in conservatorship, and *In re Kinder Morgan Energy Partners, L.P. Derivative Litigation*, a case involving the accounting practices of one of the country's leading energy master limited partnerships.

Mr. Haendler has written two novels, *The Shattergrave Knights* and *World Full of Outrage*, and was assistant legal counsel for *Resurrect Dead: The Mystery of the Toynbee Tiles*, a Sundance award-winning documentary.

**Jonathan M. Kass**

Jonathan Kass is an associate at Grant & Eisenhofer, focusing on commercial litigation and complex civil litigation issues concerning corporate governance and securities matters.

Before joining Grant & Eisenhofer, Mr. Kass worked for White & Case LLP handling securities fraud and corporate governance disputes for Fortune 100 corporations and hedge funds. He also ran internal investigations concerning FCPA violations on behalf of foreign sovereigns, including representing the Republic of Iraq in connection with the Oil-for-Food Program.

Mr. Kass is a *summa cum laude* graduate of Fordham University School of Law where he was awarded the Order of the Coif. He received his B.A. in government with a concentration in American institutions and public policy from Cornell University, achieving Distinction in all subjects.

**Michael T. Manuel**

Michael Manuel is an associate at Grant & Eisenhofer, focusing on securities and corporate governance litigation. Mr. Manuel has experience in a variety of complex commercial cases, including matters involving contract disputes, securities, commercial litigation, corporate governance, mass torts and products liability cases.

Mr. Manuel graduated *cum laude* from Harvard Law School in 2002 and received a Bachelor's degree in mathematics from Duke University in 1999.

**Kyle J. McGee**

Kyle McGee is an associate at Grant & Eisenhofer, focusing on complex securities litigation on behalf of institutional clients and complex commercial litigation on behalf of consumers and advocacy organizations.

Mr. McGee was heavily involved in *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (D.N.J.), a major securities fraud action against pharmaceutical industry titan Merck & Co., Inc. The case, which was prosecuted with a related action, *In re Schering-Plough Corp. ENHANCE Securities Litigation* (D.N.J.), resulted in a record-setting recovery for investors totaling $688 million.

Mr. McGee also represented investors in *In re XTO Energy Shareholder Class Action Litigation* (Tarrant County, TX), an action arising out of Exxon Mobile Corp.'s $41 billion acquisition of XTO Energy, Inc., which resulted in substantial additional disclosures to shareholders concerning the merits, process, and financing of the proposed transaction.

Mr. McGee currently represents investors in various actions brought pursuant to the federal securities laws, as well as consumers in various actions brought pursuant to federal communications laws and state consumer protection laws.

Mr. McGee earned a research degree from the University of Edinburgh in Scotland as well as a J.D. from Villanova University in 2009, both with honors. Mr. McGee studied the history and philosophy of law at Edinburgh and was honored as a Dean's Merit scholar at Villanova Law. In 2005, he graduated from the University of Scranton with a B.A. in philosophy as well as media information technology.

## Caitlin M. Moyna

Caitlin M. Moyna is an associate at Grant & Eisenhofer where her practice includes litigating securities fraud and shareholder derivative claims on behalf of institutional investors. Ms. Moyna is experienced in a broad range of complex commercial litigation practice areas.

Prior to joining Grant & Eisenhofer, Ms. Moyna was a litigation associate at Cravath, Swaine & Moore LLP and Ropes and Gray, LLP, and most recently, was an associate at a boutique litigation firm specializing in representing plaintiffs in securities fraud and shareholder rights' actions.

Ms. Moyna is a *cum laude* graduate of Northwestern University School of Law where she was elected to the Order of the Coif. While at Northwestern, Ms. Moyna was on the Articles Board of the *Journal of Criminal Law and Criminology*, and she served as the legal writing tutor to the class of first year law students. Ms. Moyna received her bachelor's degree from Dartmouth College.

## Rebecca A. Musarra

Rebecca Musarra is an associate at Grant & Eisenhofer, where she focuses her practice on corporate governance and complex securities litigation on behalf of institutional investors. Prior to joining G&E, Ms. Musarra worked as an appellate law clerk to the Chief Justice of the Supreme Court of the Virgin Islands in St. Thomas, Virgin Islands.

During law school, Ms. Musarra was a member of the American University Law Review and served for two years in an impact litigation clinic. She was awarded a full-tuition scholarship, was elected to the Order of the Coif, and graduated *summa cum laude*.

Ms. Musarra received her J.D. degree from American University Washington College of Law in 2009 and obtained a B.A. in international relations from the College of William and Mary in 2003. Between college and law school, Ms. Musarra served as a Peace Corps Volunteer in Chad, Central Africa.

## Catherine Ó Súilleabháin

Catherine (Kate) Ó Súilleabháin is an associate at Grant & Eisenhofer, where her primary area of practice is consumer class action litigation. Prior to joining G&E, Ms. Ó Súilleabháin was an associate in the Chicago office of a large global law firm, where she practiced international commercial litigation and advised clients on product and medical-device regulation and recall. She has spoken on such topics as attorney-client privilege in international litigation and FDA regulation of medical devices.

Ms. Ó Súilleabháin represented an Albanian family in a successful asylum hearing and was recognized by Illinois Legal Aid Online as an Attorney of the Month (May 2009) for her work on the case.

Ms. Ó Súilleabháin was the first recipient of the Davies-Jackson Scholarship to St. John's College, the University of Cambridge. She graduated from the University of Cambridge (B.A. and M.A., English, 1992 and 1998, respectively), Loyola University of Chicago (B.A., English, 1990) and Georgetown University Law Center (J.D., 2007), where she was a Law Fellow and a member of the Barrister's Council.

Ms. Ó Súilleabháin is currently on the Executive Committee of the Alliance for Women of the Chicago Bar Association.

**Raymond F. Schuenemann**

Raymond Schuenemann III is an associate at Grant & Eisenhofer, where his primary area of practice is consumer class action litigation.

Upon graduating from law school, Mr. Schuenemann was an associate at Capozzi & Associates, P.C. in Harrisburg, PA where he worked on matters related to employment, real estate, tax, and healthcare law. Prior to his legal career, Mr. Schuenemann was an investment accountant in the mutual fund industry where he provided accounting services for numerous bond and equity funds. Mr. Schuenemann was also employed as an internal auditor in both the finance and banking industries.

Mr. Schuenemann is active in his community and has spent many years as a volunteer pro-bono attorney at Mid Penn Legal Services where he defended low-income clients from debt collection actions. Additionally, Mr. Schuenemann spent four years as the Chairman of the Board of the Reading Area Water Authority and currently serves as an Executive Board Member of the Reading Redevelopment Corporation.

Mr. Schuenemann received his J.D. from Widener University School of Law in 2005 and is a 1999 graduate of West Chester University where he earned a B.S. in Finance.

**Susan R. Schwaiger**

Susan Schwaiger is an associate at Grant & Eisenhofer. She practices in the area of antitrust, with experience in a wide variety of industries, and other areas of complex civil litigation.

Prior to joining Grant & Eisenhofer, Ms. Schwaiger was of counsel to several leading New York-based antitrust firms representing plaintiffs in class and individual actions. She has authored *The Submission of Written Instructions and Statutory Language to New York Criminal Juries*.

Ms. Schwaiger has played significant roles in a number of major antitrust cases including *In re Microcrystalline Cellulose Antitrust Litigation; In re Plastics Additives Antitrust Litigation*; and

*In re Lorazepam & Clorazepate Antitrust Litigation.* In addition, she has represented large corporate entities in individual actions in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*; *In re Chocolate Confectionary Antitrust Litigation*; and *CVS Pharmacy v. American Express Travel Related Services, et al.* Ms. Schwaiger's experience also includes representation of Shannon Faulkner and Nancy Mellette in their successful litigation against The Citadel military academy in Charleston, South Carolina, where Shannon Faulkner became the first female cadet admitted to the all-male academy in August 1995.

Ms. Schwaiger graduated *cum laude* from Brooklyn Law School in 1992 with a J.D. She obtained her M.A. from the University of Kentucky and a B.S. from the University of Tennessee.


**Elizabeth H. Shofner**


Elizabeth Shofner is an associate at Grant & Eisenhofer focusing on complex civil litigation, including false claims litigation, consumer fraud, and corporate governance matters.

Prior to joining Grant & Eisenhofer, Ms. Shofner was a litigator at Patterson Belknap Webb & Tyler LLP, where she focused on complex commercial litigation, including Medicaid and consumer fraud and mortgage-backed securities litigation. She also has experience in intellectual property and appellate work. She served for several years as a law clerk to the Hon. John M. Walker, Jr., of the Second Circuit Court of Appeals, during which time she was involved in hundreds of federal appeals involving all areas of law.

Ms. Shofner co-authored the New York section of *The 2012 50-State Survey of Privacy Law* (Media Law Resource Center; 2012), co-edited the *Task Force Report on Gender, Race, and Ethnic Bias in the Second Circuit* (1998), and co-authored the article *Similarity Ratings And Confusability Of Lipread Consonants Compared With Similarity Ratings Of Auditory And Orthographic Stimuli* (American Journal of Psychology; 1991).

Ms. Shofner received her J.D. *magna cum laude* from New York University School of Law, where she was elected to the Order of the Coif and served as an articles editor for the *New York University Law Review*. She also received an M.A. in cognitive psychology from Hunter College. She holds an undergraduate degree in English literature and psychology from Washington University in St. Louis and is a member of the New York City Bar Association.

**John E. Tangren**

John Tangren is an associate at Grant & Eisenhofer, where his primary area of practice is consumer class action litigation. Prior to joining G&E, Mr. Tangren was a class action litigation associate in the Chicago office of a national law firm, and practiced complex commercial litigation as an associate in the Chicago office of a large global firm.

Mr. Tangren has spoken on issues relating to class action litigation and electronic discovery. Mr. Tangren's recent speaking engagements include "The Use of Absent Class Member Discovery on Issues of Class Certification," at the 2013 National Consumer Class Action Litigation & Management Conference; "ESI for Beginners," at the 2013 Seventh Circuit Conference of the National Employment Lawyers Association; and "Lessons on Motions to Dismiss from Other

Car Defect Cases," at the HarrisMartin MDL Conference: General Motors Ignition Switch Recall Litigation.

Mr. Tangren graduated from the University of Chicago (A.B., philosophy and music, 2000) and the University of Chicago Law School with honors (J.D., 2003) where he was Executive Editor of the University of Chicago Legal Forum. He was selected to The National Trial Lawyers Top 40 Under 40 in 2012 and by Super Lawyers as an Illinois "Rising Star" for 2011, 2013 and 2014.

**Justin K. Victor**

Justin Victor is an associate at Grant & Eisenhofer, who focuses on the False Claims Act, Dodd-Frank Wall Street Reform and Consumer Protection Act, securities litigation, and shareholder derivative litigation on behalf of institutional investor clients.

Mr. Victor co-authored an overview on the False Claims Act for a National Employment Lawyers Association's webinar entitled *Using New Developments in Whistleblower Laws to Your Client's Advantage*. The overview was also used at the Tennessee Bar Associations' seminar*: Perspectives on Recent Trends in Healthcare Fraud and Abuse Litigation*.

Mr. Victor authored *Invalidating Inequitable Arbitration Clauses: Concepcion Eight Months Later, Where Are We Now?*, published in the American Association of Justice's Business Tort Newsletter Vol. 19, No. 2, Winter 2012, and is co-author of *SEC v. HG Pharmaceuticals*, a case file used to train students and attorneys, published by Emory University School of Law's Center for Advocacy and Dispute Resolution (Spring 2011).

On July 10, 2012, the Practising Law Institute published two articles co-authored by Mr. Victor in its *Internal Investigations Guide: How to Protect Your Client or Companies in the Global Post Dodd-Frank World* including *Blowing the Whistle from Abroad: A Guide to the U.S. False Claims Act and Guide to the U.S. Dodd-Frank Wall Street Reform and Consumer Protection Act*.

Mr. Victor was appointed as an Adjunct Professor of Law for the Fall 2012 semester at Rutgers School of Law-Camden. Mr. Victor teaches trial advocacy through a course that emphasizes both trial technique and professional responsibility.

Mr. Victor received his J.D. from Emory University School of Law in 2010, where he was awarded the inaugural William C. O'Kelley Scholarship, where he graduated Order of the Barristers. He graduated from the University of Michigan with a B.A. in Political Science in 2007.

**Jennifer A. Williams**

Jennifer Williams, an associate at Grant & Eisenhofer, focuses on False Claims Act, antitrust, and corporate governance litigation.

Ms. Williams is the co-author of "Controlling Government Contractors: Can the False Claims Act be More Effective?," 14 Sedona Conf. J. 1 (2013). She also co-authored "Collecting Evidence in Financial Fraud Cases: Insider Trading," materials used, and translated into Mandarin, as a part of a training program sponsored by Emory University School of Law for prosecutors in the Shanghai, China prosecutors office.

Ms. Williams received her J.D., with honors, and Master's in Theological Studies from Emory University School of Law and Emory University Candler School of Theology, respectively, where she was awarded the Herman Dooyeweerd Prize in Law and Religion and selected for the Order of Emory Advocates.

During law school, Ms. Williams interned with the Georgia Resource Center, the Georgia Innocence Project, the DeKalb County Public Defenders Office, and the Equal Employment Opportunity Commission – Atlanta Regional Office.

In 2006, she received a B.A. *magna cum laude* from Centre College in Danville, Kentucky, graduating Phi Beta Kappa. Ms. Williams was a Fulbright Grantee/ETA to South Korea in 2006.

**Marc D. Weinberg**

Marc Weinberg is a Business Development Manager at Grant & Eisenhofer where he works with the firm's institutional investor clients regarding litigation-related matters. Prior to joining Grant & Eisenhofer in 2005, Mr. Weinberg spent nearly seven years as an Assistant District Attorney in Philadelphia prosecuting violent juvenile offenders, sexual predators and drug dealers. He then spent several years trying insurance defense cases before moving to the area of securities class actions and shareholder litigation.

Mr. Weinberg frequently speaks at institutional investor conferences regarding shareholder fraud, fiduciary duty and corporate governance issues. He is also active in a variety of organizations dedicated to serving the institutional investor community.

Mr. Weinberg is a 1989 graduate of the Pennsylvania State University and earned his J.D. from the Widener University School of Law, where he was a member of the Moot Court Honor Society.

**G&E also employs the following staff attorneys:**

Joshua E. Alpert
Simona L. Bonifacic
Leanne P. Brown-Pasquarello
Tracy L. Campbell
James P.A. Cavanaugh
Alice Cho Lee
Kerry A. Dustin
Cheron D. Everett
R. Alexander Gartman
Lisa K. Grumbine
Lawrence P. Kempner
Edward M. Lilly
Michael A. Morris
Kevin M. Nadolny
Joseph P. Nearey
Kimberly B. Schwarz
Katie L. Sierakowski
Shannon T. Somma

## Selected Institutional Client Representations

G&E has represented or is currently representing a number of institutional investors in major securities fraud actions, shareholder derivative suits, other breach-of-fiduciary-duty cases and related ancillary proceedings around the country.  Some of the Firm's cases include:

**(A)    In Securities Fraud Litigation:**

   **(1)    CellStar**

   In one of the earliest cases filed after the enactment of PSLRA, the State of Wisconsin Investment Board ("SWIB") was designated lead plaintiff and G&E was appointed lead counsel in *Gluck v. CellStar Corp.,* 976 F.Supp. 542 (N.D.Tex. 1997).  The cited opinion is widely considered the landmark on standards applicable to the lead plaintiff/lead counsel practice under PSLRA. (See, especially, *In re Cendant Corp. Litig.*, 2001 WL 980469, at *40, *43 (3d Cir. Aug. 28, 2001), citing the CellStar case.)  After the CellStar defendants' motion to dismiss failed and a round of discovery was completed, the parties negotiated a $14.6 million settlement, coupled with undertakings on CellStar's part for significant corporate governance changes as well.  With SWIB's active lead in the case, the class recovery, gross before fees and expenses, was approximated to be 56% of the class' actual loss claims, about 4 times the historical 14% average gross recovery in securities fraud litigation.  Because of the competitive process that SWIB had undertaken in the selection of counsel, resulting in a contingent fee percentage significantly less than the average 31% seen historically, the net recovery to the class after all claims were submitted came to almost 50% of actual losses, or almost 5 times the average net recovery.

   **(2)    DaimlerChrysler**

   Florida State Board of Administration was appointed lead plaintiff and G&E co-lead counsel in the PSLRA class action on behalf of shareholders of the former Chrysler Corporation who exchanged their shares for stock in DaimlerChrysler in Chrysler's 1998 business combination with Daimler-Benz AG which was represented at the time as a "merger of equals."  Shortly before trial, the defendants agree to a $300 million cash settlement, among the largest securities class action settlements since the enactment of the PSLRA.  *In re DaimlerChrysler Securities Litigation,* D. Del., C.A. No. 00-0993.

   **(3)    Oxford Health Plans**

   Public Employees' Retirement Association of Colorado ("ColPERA") engaged G&E to represent it to seek the lead plaintiff designation in the numerous securities fraud actions that were consolidated into *In re Oxford Health Plans, Inc., Securities Litig.*, S.D.N.Y., MDL Docket No. 1222 (CLB).  The court ordered the appointment of ColPERA as a co-lead plaintiff and G&E as a co-lead counsel.  G&E and its co-leads filed the Consolidated Amended Complaint. Memorandum opinions and orders were entered denying defendants' motions to

dismiss (see 51 F.Supp. 2d 290 (May 28, 1999) (denying KPMG motion) and 187 F.R.D. 133 (June 8, 1999) (denying motion of Oxford and individual director defendants)). The case settled for $300 million, another settlement negotiated by G&E that is among the largest settlements since the enactment of the PSLRA.

(4) **Dollar General**

The U.S. District Court for the Middle District of Tennessee ordered the appointment of Florida State Board of Administration and the Teachers' Retirement System of Louisiana as lead plaintiffs and G&E as co-lead counsel in a PSLRA and Rule 10b-5 case against the defendant company, its accountants, and individual insiders who allegedly issued false and misleading statements over an alleged 3-year Class Period and failed to disclose adverse facts about the company's financial results. Settlements were approved involving a cash payment of $162 million from the company and the individual defendants, an additional $10.5 million from Deloitte & Touche, LLP (Dollar General's accountants), and beneficial governance reforms for Dollar General. *In re Dollar General Securities Litigation*, M.D. Tenn., No. 3:01-0388, orders dated July 19, 2001 and September 29, 2003.

(5) **Just For Feet**

G&E represented the State of Wisconsin Investment Board ("SWIB") in a federal securities class action against certain officers and directors of Just For Feet, Inc., and against Just For Feet's auditors, in the Northern District of Alabama. That action arose out of the defendants' manipulation of the company's accounting practices to materially misstate the company's financial results. Having been appointed co-lead plaintiff, SWIB, with G&E as its counsel, took primary responsibility for the case. (*SWIB v. Ruttenberg, et al.*, N.D. Ala., CV 99-BU-3097-S and 99-BU-3129-S, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)). SWIB obtained a policy limits settlement with the individual defendants' D&O carrier and an additional $7.4 million from Just For Feet's auditor, for a recovery totaling approximately $32 million.

(6) **Waste Management**

G&E filed a non-class federal securities action against Waste Management, Inc., its former and current directors, and the company's accountants in the Northern District of Florida, on behalf of Lens Investment Management, LLC and Ram Trust Services, Inc. The complaint alleged that Waste Management had, over a five-year period, issued financial statements and other public statements that were materially false and misleading due to the defendants' fraudulent and improper accounting manipulations. G&E also filed non-class actions in Illinois state court, asserting similar claims on behalf of the Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana. After G&E successfully defeated the defendants' motions to dismiss FSBA's complaint in state court, FSBA's cause of action was transferred to the Northern District of Florida. At the point where there were competing motions for summary judgment

pending, G&E successfully negotiated a settlement pursuant to which each plaintiff received several times what it would have received in the class action. *Florida State Board of Administration, Ram Trust Services, Inc. and Lens Investment Management, LLC v. Waste Management, Inc., et al.*, N.D.Fla., No. 4:99CV66-WS, amended complaint filed June 21, 1999; and *Teachers' Retirement System of Louisiana v. Waste Management, Inc., et al.*, Circuit Ct., Cook Co. [Ill.], No. 98 L 06034, complaint filed May 18, 1999.

**(7)   Total Renal Care**

In June 1999, the Louisiana State Employees' Retirement System and Teachers' Retirement System of Louisiana were appointed as Lead Plaintiffs in a federal securities class action against Total Renal Care ("TRC") and certain of its officers and directors, in the U.S. District Court for the Central District of California. G&E served as Plaintiffs' Lead Counsel.   Plaintiffs filed their Corrected Consolidated Amended Complaint against the defendants, alleging, *inter alia*, that the defendants manipulated TRC's financial statements so as to materially overstate TRC's revenues, income and assets and to artificially inflate TRC's stock price.   G&E negotiated a settlement requiring TRC's payment of $25 million into a settlement fund for the class and the company's adoption of certain internal corporate governance policies and procedures designed to promote the future accountability of TRC's management to its stockholders.  At the time of the settlement, this amount represented 33% of the value of the Company's shares.  *In re Total Renal Care Securities Litigation*, C.D. Cal., Master File No. CV-99-01745 CBM.

**(8)   Safety-Kleen**

G&E was sole lead counsel for the plaintiffs in a federal securities class action and a series of related individual actions against former officers, directors, auditors and underwriters of Safety-Kleen Corporation, who are alleged to have made false and misleading statements in connection with the sale and issuance of Safety-Kleen bonds.  *In re Safety-Kleen Corp. Bondholders Litig.*, D.S.C., No. 3:00-CV-1145-17, consolidated complaint filed January 23, 2001.  In March of 2005, after a jury had been selected for trial, the auditor defendant settled with the class and individual claimants for $48 million.  The trial then proceeded against the director and officer defendants.   After seven weeks of trial, the director defendants settled for $36 million, and the court entered judgment as a matter of law in favor of the class and against the company's CEO and CFO, awarding damages of $192 million.

**(9)   Styling Technology Corporation**

G&E represented funds managed by Conseco Capital Management, Inc., Credit Suisse Asset Management, Pilgrim American Funds and Oppenheimer Funds, Inc. in a securities action brought in May 2001, asserting both federal (1933 Act) and state claims brought in the Superior Court of California. The suit alleged that

certain former officers, as well as the independent auditors, of Styling Technology Corporation made false and misleading statements in connection with the sale and issuance of Styling Technology bonds. Styling Technology filed for bankruptcy protection under Chapter 11 in August 1999. In October 2000, discovery of accounting irregularities and improperly recognized revenue forced the Company to restate its financial statements for the years 1997 and 1998. Plaintiffs, owning $66.5 million of the total $100 million in bonds sold in the offering, settled the case for a recovery representing approximately 46% of the losses suffered by the client funds that they manage. *Franklin High Income Trust, et al. v. Richard R. Ross, et al.*, Cal. Super., San Mateo Co. [Calif.], Case No: 415057, complaint filed November 28, 2000.

**(10)    Tyco**

G&E served as co-lead counsel representing co-lead plaintiffs Teachers' Retirement System of Louisiana and Louisiana State Employees' Retirement System in a securities class action against Tyco International Ltd. and PricewaterhouseCoopers LLP. The complaint alleged that the defendants, including Tyco International, Dennis Kozlowski, and other former executives and directors of Tyco and PricewaterhouseCoopers, made false and misleading public statements and omitted material information about Tyco's finances in violation of Sections 10(b), 14, 20A and 20(a) of the Securities Exchange Act of 1934. Tyco agreed to fund $2.975 billion in cash to settle these claims, representing the single largest payment from any corporate defendant in the history of securities class action litigation. PricewaterhouseCoopers also agreed to pay $225 million to settle these claims, resulting in a total settlement fund in excess of $3.2 billion.

**(11)    Global Crossing**

Ohio Public Employees' Retirement System and the Ohio Teachers' Retirement System were appointed lead plaintiff and G&E was appointed sole lead counsel in a securities class action against Global Crossing, Ltd. and Asia Global Crossing, Ltd. *In re Global Crossing, Ltd. Securities & "ERISA" Litig.*, MDL Docket No. 1472. In November 2004, the Court approved a partial settlement with the Company's former officers and directors, and former outside counsel, valued at approximately $245 million. In July 2005, the Court approved a $75 million settlement with the Citigroup-related defendants (Salomon Smith Barney and Jack Grubman). In October 2005, the Court approved a settlement with Arthur Andersen LLP and all Andersen-related defendants for $25 million. In October 2006, the Court approved a $99 million settlement with various financial institutions. In total, G&E recovered $448 million for investors in Global Crossing.

**(12)    Telxon Corporation**

G&E filed a federal securities and common law action against Telxon Corporation, its former officers and directors and its accountants in the Northern District of Ohio on behalf of Wyser-Pratte Management Co., Inc., an investment

management firm. Following mediation, G&E negotiated a settlement of all claims. *Wyser-Pratte Management Co., Inc. v. Telxon Corp., et al.,* N.D. Ohio, Case No. 5:02CV1105.

**(13)** **Hayes Lemmerz**

G&E served as lead counsel to plaintiffs and class members who purchased or acquired over $1 billion in bonds issued by Hayes Lemmerz International, Inc. G&E negotiated a settlement worth $51 million. *Pacholder High Yield Fund, Inc. et al. v. Ranko Cucoz et al.*, E.D. Mich., C.A. No. 02-71778.

**(14)** **Asia Pulp and Paper**

On behalf of bondholders of various subsidiaries of Indonesian paper-making giant Asia Pulp and Paper ("APP"), G&E filed an action alleging that the bondholders were defrauded by APP's financial statements which were inflated by nearly $1 billion in fictitious sales. Defendants' motions to dismiss were denied. *Franklin High Income Trust, et al. v. APP Global Ltd., et al.,* N.Y. Sup. Ct., Trial Div., Index No. 02-602567. The matter was resolved through a confidential settlement.

**(15)** **Alstom**

Louisiana State Employees' Retirement System was appointed as co-lead plaintiff and G&E was appointed co-lead counsel in a class action against Alstom SA, a French corporation engaged in power generation, transmission and distribution in France. The suit alleges that Alstom and other defendants made false and misleading statements concerning the growth and financial performance of its transportation subsidiary. G&E achieved a settlement in the amount of $6.95 million. *In re Alstom SA Sec. Litig.,* S.D.N.Y. 03-cv-6595.

**(16)** **Parmalat**

G&E was co-lead counsel in this securities class action arising out of a multi-billion dollar fraud at Parmalat, which the SEC described as "one of the largest and most brazen corporate financial frauds in history." Settlements exceeding $110 million were reached. *In re Parmalat Sec. Litig.,* S.D.N.Y. 04-MDL-1653.

**(17)** **Marsh & McLennan**

G&E was co-lead counsel for the class of former Marsh & McLennan shareholders in this federal securities class action alleging that the company, its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving, among other things, bid-rigging and secret agreements to steer business to certain insurance companies in exchange for "kick-back" commissions. After five years of litigation, G&E achieved a $400 million settlement on behalf of the class. *In re Marsh & McLennan Companies, Inc. Sec. Litig.,* S.D.N.Y. 04-cv-8144.

**(18)** **Hollinger International**

G&E was co-lead counsel in this securities class action arising out of a company scandal at Hollinger International, Inc. which involves payment of millions of dollars to certain executives, including the company's former CEO, Lord Conrad Black, relating to sales of company assets. G&E negotiated a settlement with Hollinger in the amount of $37.5 million. *In re Hollinger International Inc. Securities Litigation*, N.D. Ill. 04-C-0834**.**

**(19)** **General Motors**

G&E served as co-lead counsel in a securities class action against GM, arising from alleged false statements in GM's financial reports. After about two and a half years of litigation, a settlement was reached with GM for $277 million, with GM's auditor, Deloitte & Touche contributing an additional $26 million. The combined $303 million settlement ranked among the largest shareholder recoveries of 2008. *In re General Motors Corp. Sec. Litig.*, E.D. Mich., MDL No. 1749.

**(20)** **Delphi**

Delphi is an automotive company that was spun off of General Motors. The company failed as a stand-alone entity, but concealed its failure from investors. G&E's client, one of the largest pension funds in the world, served as a lead plaintiff, and G&E served as co-lead counsel in this securities class action, which produced settlements totaling $325 million from Delphi, its auditor and its director and officers liability insurer. *In re Delphi Corporation Securities Derivative & ERISA Litigation*, E.D. Mich., MDL No. 1725.

**(21)** **Refco**

A mere two months after going public, Refco admitted that its financials were unreliable because the company had concealed that hundreds of millions of dollars of uncollectible receivables were owed to the company by an off-balance sheet entity owned by the company's CEO. G&E served as a co-lead counsel and G&E's client, PIMCO, was a co-lead plaintiff. The case resulted in recoveries totaling $422 million for investors in Refco's stock and bonds (including $140 million from the company's private equity sponsor, over $50 million from the underwriters, and $25 million from the auditor). *In re Refco, Inc. Securities Litigation*, S.D.N.Y., No. 05 Civ. 8626.

**(22)** **Sprint**

G&E represented lead plaintiff institutional investor Carlson Capital, L.P. in this class action suit against Sprint Corporation and its former CEO and directors for breach of fiduciary duty in the consolidation of two separate tracking stocks. In

December 2007, a $57.5 million settlement was approved. *In re Sprint Corporation Shareholder Litigation*, D. Kan., No. 04 CV 01714.

**(B)    In Derivative and Other Corporate Litigation:**

**(1)    <u>Digex</u>**

This case resulted in a settlement of over $400 million, the largest reported settlement in the history of Delaware corporate litigation. G&E represented the lead plaintiff, TCW Technology Limited Partnership, in alleging that Digex, Inc.'s directors and majority stockholder (Intermedia, Inc.) breached their fiduciary duties in connection with WorldCom's proposed $6 billion acquisition of Intermedia. Among other issues, WorldCom was charged with attempting to usurp a corporate opportunity that belonged to Digex and improperly waiving on Digex's behalf the protections of Delaware's business combination statute. Following G&E's argument on a motion to preliminarily enjoin the merger, the Court issued an opinion declining to enjoin the transaction but acknowledging plaintiffs' likelihood of success on the merits. *In re Digex, Inc. Shareholders Litigation*, C.A. No. 18336, 2000 WL 1847679 (Del. Ch. Dec. 13, 2000). The case settled soon thereafter.

**(2)    <u>UnitedHealth Group</u>**

G&E represented the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative and class action suit in which G&E successfully challenged $1.2 billion in back-dated options granted to William McGuire, then-CEO of health care provider UnitedHealth Group. This was among the first – and most egregious – examples of options backdating. G&E's case produced a settlement of $922 million, the largest settlement in the history of derivative litigation in any jurisdiction. *In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, C.A. No. 06-cv-1216 (D. Minn.)

**(3)    <u>AIG</u>**

In what was, at the time, the largest settlement of derivative shareholder litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a suit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets. *Teachers' Retirement System of Louisiana v. Greenberg, et al.*, C. A. No. 20106-VCS (Del. Ch.).

**(4)** <u>**Genentech**</u>

When Swiss healthcare company Roche offered to buy out biotech leader Genentech Inc. for $43.7 billion, or $89 per share, G&E filed a derivative claim on behalf of institutional investors opposed to the buyout. With the pressure of the pending litigation, G&E was able to reach a settlement that provided for Roche to pay $95 per share, representing an increase of approximately $3 billion for minority shareholders. *In re Genentech, Inc. Shareholders Litig.*, C.A. No. 3911-VCS (Del. Ch.).

**(5)** <u>**Willamette**</u>

In January 2002, at the request of Wyser-Pratte Management Co., Inc. and others, G&E filed a shareholder derivative action in Oregon state court claiming that the board of Willamette Industries, Inc. breached its fiduciary duties by attempting to cause Willamette to acquire the asbestos-ridden building products division of Georgia-Pacific Company as part of a scorched-earth effort to defeat a hostile takeover of Willamette by its chief competitor, Weyerhaeuser Company. G&E obtained an expedited hearing on its motion for a preliminary injunction and obtained an agreement from Willamette at the hearing not to consummate any deal with Georgia-Pacific without providing prior notice to G&E. Almost immediately thereafter, and after years of fighting against Weyerhaeuser's take-over attempts, the Willamette board relented and agreed to sell the company to Weyerhaeuser. *Wyser-Pratte Management Co., Inc. & Franklin Mutual Advisors v. Swindells, et al.*, No. 0201-0085 (Ore. Cir. Ct.).

**(6)** <u>**Medco Research**</u>

In January 2000, G&E filed a shareholder derivative action on behalf of State of Wisconsin Investment Board against the directors of Medco Research, Inc. in Delaware Chancery Court. The suit alleged breach of fiduciary duty in connection with the directors' approval of a proposed merger between Medco and King Pharmaceuticals, Inc. G&E was successful in obtaining a preliminary injunction requiring Medco to make supplemental and corrective disclosures. Because of G&E's efforts, the consideration to Medco's stockholders increased by $4.08 per share, or $48,061,755 on a class-wide basis. *State of Wisconsin Investment Board v. Bartlett, et al.,* C.A. No. 17727, 2000 WL 193115 (Del. Ch. Feb. 9, 2000).

**(7)** <u>**Occidental Petroleum**</u>

G&E represented Teachers' Retirement System of Louisiana and served as co-counsel in a shareholders' derivative suit against the directors of Occidental Petroleum Corporation, challenging as corporate waste the company's excessive compensation arrangements with its top executives. Filed in California state court, the case settled when the company agreed to adopt California Public Employees' Retirement System's model principles of corporate governance and undertook to reconstitute its key

committees so as to meet the tests of independence under those principles. *Teachers' Retirement System of Louisiana v. Irani et al.*, No. BC1850009 (Cal. Super.).

**(8)** **Staples, Inc.**

On behalf of Teachers' Retirement System of Louisiana, G&E challenged Staples, Inc.'s proposed "recapitalization" plan to unwind a tracking stock, Staples.com, which it created in 1998. G&E obtained a preliminary injunction against the deal and the deal terms were ultimately altered resulting in a $15-$20 million gain for shareholders. Additional disclosures were also required so that shareholders voted on the challenged transaction based on a new proxy statement with substantial additional disclosures. *In re Staples, Inc. Shareholders Litigation*, C.A. No. 18784, 2001 WL 640377 (Del. Ch. June 5, 2001).

**(9)** **SFX/Clear Channel Merger**

G&E filed a class action on behalf of stockholders of SFX, challenging the merger between SFX and Clear Channel. While the SFX charter required that in any acquisition of SFX all classes of common stockholders be treated equally, the merger, as planned, provided for approximately $68 million more in consideration to the two Class B stockholders (who happened to be the senior executives of SFX) than to the public stockholders. The merger was structured so that stockholders who voted for the merger also had to vote to amend the Charter to remove the non-discrimination provisions as a condition to the merger. G&E negotiated a settlement whereby $34.5 million more was paid to the public stockholders upon closing of the merger. This was more than half the damages alleged in the Complaint. *Franklin Advisers, Inc., et al. v. Sillerman, et al.*, C.A. No. 17878 (Del. Ch.).

**(10)** **Lone Star Steakhouse & Saloon**

G&E filed a derivative lawsuit on behalf of California Public Employees' Retirement System ("CALPERS") against Lone Star's former CEO, Jamie Coulter, and six other Lone Star directors. The suit alleged that the defendants violated their fiduciary duties in connection with their approval of the company's acquisition of CEI, one of Lone Star's service providers, from Coulter, as well as their approvals of certain employment and compensation arrangements and option repricing programs. Before filing the suit, G&E had assisted in CALPERS in filing a demand for books and records pursuant to Section 220 of the Delaware General Corporation Law. The company's response to that demand revealed the absence of any documentation that the board ever scrutinized transactions between Lone Star and CEI, that the board negotiated the purchase price for CEI, or that the board analyzed or discussed the repricing programs. In August 2005, the Court approved a settlement negotiated by G&E whereby Lone Star agreed to a repricing of options granted to certain of its officers and directors, payments from certain of the officers and directors related to option grants, and a $3 million payment from Lone Star's director and officer insurance policy. Lone Star further

acknowledged that the lawsuit was one of the significant factors considered in its adoption of certain corporate governance reforms. *California Public Employees' Retirement System v. Coulter, et al.*, C.A. No. 19191 (Del. Ch.).

**(11)** **Siebel**

The issue of excessive executive compensation has been of significant concern for investors, yet their concerns have remained largely unaddressed due to the wide discretion afforded corporate boards in establishing management's compensation. G&E effected a sea change in the compensation policies of Siebel Systems, a leading Silicon Valley-based software developer long considered to be an egregious example of executive compensation run amok, and caused Thomas Siebel, the company's founder and CEO, to cancel 26 million options with a potential value of $54 million. Since the company's founding in 1996, Siebel Systems had paid Mr. Siebel nearly $1 billion in compensation, largely in the form of lavish stock options that violated the shareholder-approved stock option plan. In addition, the company had paid its directors millions of dollars for their service on the board, also in the form of stock options, at levels exponentially higher than that paid to directors on the boards of similar companies. G&E, on behalf of Teachers' Retirement System of Louisiana, commenced a derivative action challenging the company's compensation practices in September of 2002 even though a prior, similar lawsuit had been dismissed. Following a hard-fought and acrimonious litigation, G&E successfully negotiated a settlement that, in addition to the options cancellation, included numerous corporate governance reforms. The company agreed to, *inter alia*, restructure its compensation committee, disclose more information regarding its compensation policies and decisions, cause its outside auditor to audit its option plans as part of the company's annual audit, and limit the compensation that can be paid to directors. The Siebel Systems settlement generated considerable favorable press in the industry, as investors and compensation experts anticipated that the reforms adopted by Siebel Systems could affect how other companies deal with compensation issues. *Teachers' Retirement System of Louisiana v. Thomas M. Siebel, et al.*, C. A. No. 425796 (Cal. Super.).

**(12)** **HealthSouth Corporation**

G&E filed a derivative and class action lawsuit on behalf of Teachers' Retirement System of Louisiana against HealthSouth Corporation, its auditors, certain individual defendants, and certain third parties seeking, *inter alia*, an order forcing the HealthSouth board of directors to hold an annual shareholder meeting for the purpose of electing directors, as no such meeting had been held for over thirteen months. Following a trial, G&E negotiated a settlement of part of its claims, pursuant to which five of the defendant directors who were alleged to have engaged in improper self-dealing with the company agreed to resign and be replaced by directors selected by a committee comprised in part by institutional investors of HealthSouth. *Teachers' Retirement System of Louisiana v. Scrushy*, Del. Ch., C.A. No. 20529 (March 2, 2004).

**(13)** **NYSE/Archipelago**

G&E served as co-lead counsel in a class action in New York state court, brought on behalf of a class of seat holders of the New York Stock Exchange ("NYSE") challenging the proposed merger between the NYSE and Archipelago Holdings, LLC. The complaint alleged that the terms of the proposed merger were unfair to the NYSE seat holders, and that by approving the proposed merger, the NYSE board of directors had violated their fiduciary duties of care, loyalty and candor, because the transaction was the result of a process that was tainted by conflicts of interest and the directors failed adequately to inform themselves of the relevant facts. The court denied the defendants' motion to dismiss, and after expedited discovery, including over 30 depositions in a five week period, a preliminary injunction evidentiary hearing was held, in which plaintiffs sought to postpone the vote on the merger until a new, current fairness opinion was obtained from an independent financial advisor. On the second day of the hearing, the defendants agreed to the relief being sought, namely that they would obtain a new, current fairness opinion from an independent financial advisor. *In re New York Stock Exchange/Archipelago Merger Litig.*, No. 601646/05 (Sup. Ct. N.Y. Co.)

**(14)** **Caremark / CVS**

G&E represented institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as that board's decision to reject a competing proposal from a different suitor. Ultimately, through the litigation, G&E was able to force Caremark's board not only to provide substantial additional disclosures to the public shareholders, but also to renegotiate the terms of the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and to ensure Caremark's shareholders had statutory appraisal rights in the deal. *Louisiana Municipal Police Employees' Retirement System, et al. v. Crawford, et al.*, C.A. No. 2635-N (Del. Ch.).

**(15)** **AIG**

G&E achieved a settlement of derivative claims against former American International Group, Inc. ("AIG") CEO Hank Greenberg and other officers of the insurer in connection with a well-documented bid-rigging scheme used to inflate the company's income. The scheme ─ which included an array of wrongful activities, such as sham insurance transactions intended to deceive shareholders and illegal contingent commissions which amounted to kickbacks to obtain business ─ caused billions of dollars' worth of damage to AIG, and ultimately led to the restatement of years of financial statements.

In approving a settlement that returned $90 million to AIG, the Court said the settlement was "an incentive for real litigation" with "a lot of high-quality lawyering." *In re American International Group, Inc., Consolidated Derivative Litigation.* Delaware Chancery Court, 769-VCS

**(16)** **Del Monte Foods**

G&E served as lead counsel in shareholder litigation in which the Firm obtained an $89.4 million settlement against Del Monte Foods Co. and Barclays Capital. On February 14, 2011, the Delaware Chancery Court issued a ground-breaking order enjoining not only the shareholder vote on the merger, but the merger agreement's termination fee and other mechanisms designed to deter competing bids. As a result of plaintiff's efforts, the Board was forced to conduct a further shopping process for the company. Moreover, the opinion issued in connection with the injunction has resulted in a complete change on Wall Street regarding investment banker conflicts of interests and company retention of investment bankers in such circumstances. *In re Del Monte Shareholder Litigation*, C.A. No. 6027-VCL (Del. Ch).

**(C)** **In Securities Class Action Opt-Out Litigation**

**(1)** **AOL Time Warner, Inc.**

G&E filed an opt-out action against AOL Time Warner, its officers and directors, auditors, investment bankers and business partners. The case challenged certain transactions entered by the company to improperly boost AOL Time Warner's financials. G&E was able to recover for its clients more than 6 times the amount that they would have received in the class case.

**(2)** **BankAmerica Corp.**

G&E filed an individual action seeking to recover damages caused by the defendants' failure to disclose material information in connection with the September 30, 1998 merger of NationsBank Corporation and BankAmerica Corporation. G&E was preparing the case for trial when it achieved a settlement whereby the firm's client received more than 5 times what it would have received in the related class action. Those proceeds were also received approximately one year earlier than the proceeds from the class action settlement.

**(3)** **Bristol-Myers Squibb**

G&E filed an opt-out action against Bristol-Myers Squibb, certain of its officers and directors, its auditor, and Imclone, Inc., alleging that Bristol-Myers had falsified billions of dollars of revenue as part of a scheme of earnings management. While the federal class action was dismissed and eventually settled for only 3 cents on the dollar, G&E's action resulted in a total settlement representing approximately 10 times what the firm's clients likely would have received from the class action.

**(4)** **Qwest Communications**

G&E filed an individual action against Qwest, its accountant (Arthur Andersen LLP), Solomon Smith Barney, and current and former officers and directors of those companies. The case alleged that Qwest used "swap deals" to book fake revenue and defraud investors. G&E was able to recover for its clients more than 10 times what they would have recovered had they remained members of the class.

**(5)** **WorldCom**

G&E filed an opt-out action against former senior officers and directors of WorldCom, including former CEO Bernard Ebbers, and Arthur Andersen LLP (WorldCom's former auditor), among others. The case stemmed from the widely-publicized WorldCom securities fraud scandal that involved false and misleading statements made by the defendants concerning WorldCom's financials, prospects and business operations. G&E recovered for its clients more than 6 times what they would have received from the class action.