# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PERRY CIRAULU, Individually and on
Behalf of All Others Similarly Situated,

                                  Plaintiff,

        v.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., NICHOLAS S.
SCHORSCH, DAVID S. KAY, BRIAN
BLOCK, and LISA MCALISTER,

                              Defendants.

**No.:** 1:14-cv-08659-AKH

Hon. Alvin K. Hellerstein

ECF Case

*(Additional captions on following pages)*


**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY THE CITY OF TAMPA GENERAL EMPLOYEES RETIREMENT FUND FOR CONSOLIDATION, <u>APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL</u>**

| | |
|---|---|
| BERNARD PRIEVER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| | ) |
| Plaintiff, | ) **No.:** 1:14-cv-08668-AKH |
| | ) |
| v. | ) ) |
| | ) |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., LISA MCALISTER, and BRIAN BLOCK, | ) ) ) ) |
| Defendants. | ) ) |
| STUART RUBINSTEIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| | ) |
| Plaintiff, | ) **No.:** 1:14-cv-08669-AKH |
| | ) |
| v. | ) ) |
| | ) |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., BRIAN BLOCK; LISA MCALISTER and NICHOLAS S. SCHORSCH; | ) ) ) ) |
| Defendants. | ) ) |
| KEVIN PATTON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| | ) |
| Plaintiff, | ) **No.:** 1:14-cv-08671-AKH |
| v. | ) ) |
| | ) |
| AMERICAN REALTY CAPITAL PROPERTIES, INC.; DAVID S. KAY; NICHOLAS S. SCHORSCH; BRIAN BLOCK; and LISA MCALISTER, | ) ) ) ) ) |
| Defendant [sic] | ) ) |

| | |
|---|---|
| JAMES W. EDWARDS, JR., Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) **No.:** 1:14-cv-08721-AKH ) |
| v. | ) ) |
| AMERICAN REALTY CAPITAL PROPERTIES, INC.; NICHOLAS S. SCHORSCH, DAVID S. KAY, BRIAN BLOCK and LISA PAVELKA MCALISTER, | ) ) ) ) ) ) |
| Defendants. | ) ) |
| BERNEY HARRIS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) **No.:** 1:14-cv-08740-AKH ) ) |
| v. | ) ) |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, BRIAN BLOCK, DAVID S. KAY and LISA MCALISTER, | ) ) ) ) ) |
| Defendants. | ) ) ) |
| SIMON ABADI, On Behalf of Himself and All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) **No.:** 1:14-cv-09006-AKH ) |
| v. | ) ) |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, DAVID S. KAY, PETER BUDKO, BRIAN S. BLOCK, LISA E. BEESON, WILLIAM M. KAHANE, EDWARD M. WEIL, JR., LESLIE D. MICHELSON, EDWARD G. RENDELL, and SCOTT J. BOWMAN, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

THE CITY OF TAMPA GENERAL
EMPLOYEES RETIREMENT FUND,
Individually and on Behalf of All Others
Similarly Situated,

                    Plaintiff,

v.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., NICHOLAS S.
SCHORSCH, DAVID S. KAY, BRIAN
BLOCK, PETER M. BUDKO, EDWARD M.
WEIL, JR., BRIAN D. JONES, WILLIAM M.
KAHANE, EDWARD G. RENDELL,
WALTER P. LOMAX, JR., LESLIE D.
MICHELSON, SCOTT J. BOWMAN,
MERRILL LYNCH, PIERCE, FENNER &
SMITH INC., CITIGROUP GLOBAL
MARKETS INC., BARCLAYS CAPITAL
INC., J.P. MORGAN SECURITIES LLC,
CAPITAL ONE SECURITIES INC., CREDIT
SUISSE SECURITIES (USA) LLC,
DEUTSCHE BANK SECURITIES INC.,
WELLS FARGO SECURITIES, LLC,
ROBERT W. BAIRD & CO. INC.,
LADENBURG THALMANN & CO. INC.,
BMO CAPITAL MARKETS CORP., JMP
SECURITIES LLC, JANNEY
MONTGOMERY SCOTT LLC, MIZUHO
SECURITIES USA INC., PNC CAPITAL
MARKETS LLC, PIPER JAFFRAY & CO.,
AND RBS SECURITIES INC.,

                    Defendants.

**No.:** 1:14-cv-10134-UA

# TABLE OF CONTENTS

**I.** PRELIMINARY STATEMENT ........................................................................................1

**II.** STATEMENT OF FACTS .........................................................................................4

**III.** ARGUMENT .........................................................................................................5

    A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED ............................5

    B. TAMPA SHOULD BE APPOINTED LEAD PLAINTIFF ...................................6

        1. Tampa is Willing to Serve as Lead Plaintiff..................................................7

        2. Tampa Has the "Largest Financial Interest" .................................................8

        3. Tampa Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure ...............................................................10

        4. Tampa Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Any Unique Defenses ...................................12

        5. The Appointment of a Sub-Class Lead Plaintiff to Represent Purchasers on the Secondary Offering is Appropriate Under These Circumstances ..............................................................................................12

    C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED .......................................................................................................15

**IV.** CONCLUSION......................................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                           **Pages**

*Albert Fadem Trust v. Citigroup Inc.,*
    239 F. Supp. 2d 344 (S.D.N.Y. 2002) ................................................................... 9

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................................. 11

*Basic Inc. v. Levinson,*
    485 U.S. 224 (U.S. 1988) ..................................................................................... 13

*Beck v. Maximus,*
    457 F.3d at 296 .................................................................................................... 11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,*
    252 F.R.D. 188 (S.D.N.Y. 2008) ............................................................................ 6

*Bowe v. PolyMedica Corp,*
    432 F.3d 1 (1st Cir. 2005) ..................................................................................... 13

*Canson v. WebMD Health Corp.,* No. 11-cv-5382-JFK,
    2011 WL 5331712 (S.D.N.Y. Nov. 7, 2011) ........................................................ 10

*Chilton v. Chiumento Group,*
    365 Fed. App'x 298 (2d Cir. 2010) ......................................................................... 9

*Foley v. Transocean Ltd.,*
    272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................ 8

*Ghodooshim v. Qiao Xing Mobile Commc'n Co., Ltd.,* No. 12-cv-9264-JSR,
    2013 WL 2314267 (S.D.N.Y. May 21, 2013) ...................................................... 11

*Gluck v. Cellstar Corp.,*
    976 F. Supp. 542 (N.D. Tex. 1997) ...................................................................... 11

*Herman & Maclean v. Huddleston,*
    459 U.S. 375 (U.S. 1983) ................................................................................ 12, 14

*In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.,*
    258 F.R.D. 260 (S.D.N.Y. 2009) ............................................................................ 9

*In re Comverse Tech., Inc., Sec. Litig.,*
    2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) .......................................... 8

*In re Donkenny, Inc. Sec. Litig.*,
171 F.R.D. 156 (S.D.N.Y. 1997) ........................................................ 8

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992).............................................................. 10

*In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (WK) (FM),
2002 U.S. Dist. LEXIS 23162 (S.D.N.Y. Dec. 3, 2002) ........................9

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240-CM,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................... 10

*In re Olsten Corp.*,
3 F. Supp. 2d at 296 ....................................................................8, 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................ 10

*Lax v. First Merchants Acceptance Corp.*,
1997 WL 461036 (N.D. Ill. 1997) ...................................................... 8

*Lintz v. Agria Corp.*,
2008 U.S. Dist. LEXIS 99846 (S.D.N.Y. Dec. 3, 2008) ........................6

*Makar Issues & Rights, Ltd. v. Tellabs, Inc*,
437 F.3d 588 (7th Cir. 2006) ...........................................................13

*McNamara v. Pre-Paid Legal Servs.*,
189 Fed. Appx. 702 (10th Cir. 2006)................................................13

*Richman v. Goldman Sachs Group, Inc.*, No. 10 Civ. 03461(PAC),
2011 WL 2360291 (S.D.N.Y. March 25, 2011) .................................. 8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)............................................ 8, 15

*Xianglin Shi v. Sina Corp.*, No. 05-cv-2154-NRB,
2005 WL 1561438 (S.D.N.Y. July 1, 2005) ...................................... 11

## Statutes

15 U.S.C. § 78u 4(a)(3)................................................................................................... *passim*

15 U.S.C. § 77z-1(a)(3) ................................................................................................ *passim*

## Rules

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

Fed. R. Civ. P. 42 .............................................................................................................. 1, 5

## Other Authorities

Manual for Complex Litigation (Third), § 20.123 (1995) ............................................... 5

The City Of Tampa General Employees Retirement Fund ("Tampa" or "Movant") respectfully submits this Memorandum of Law in support of its motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3) and Section 27(a)(3) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order: (1) consolidating the above-captioned actions (the "Related Actions"); (2) appointing Tampa as Lead Plaintiff on behalf of all persons who purchased or otherwise acquired the securities of American Realty Capital Properties, Inc. ("American Realty" or the "Company" or "ARCP") from May 6, 2013 through October 29, 2014, inclusive (the "Class Period"), (the "Class"); or in the alternative, appointing Tampa as Lead Plaintiff on behalf of all persons who purchased or otherwise acquired common stock of American Realty pursuant or traceable to the prospectus and registration statement (collectively, the "Registration Statement") issued in connection with the Company's May 21, 2014 Secondary Offering of 138 million shares of its common stock (the "Secondary Offering"), (the proposed "Sub-Class"); (3) approving Lead Plaintiff's selection of Morgan & Morgan, P.C. ("Morgan & Morgan") as Lead Counsel for the Class and/or Sub-Class; and, (4) granting such other and further relief as the Court may deem just and proper.

## I.    PRELIMINARY STATEMENT

At least eight federal securities class actions[1] have been filed in the District of New York. Each raise substantially similar allegations: defendants violated Sections 10(b) and 20(a) of the

---

[1] The eight actions are entitled: *Ciraulu v. American Realty Capital Properties, Inc. et. al.*, 1:14-cv-08659-AKH; *Priever v. American Realty Capital Properties, Inc. et. al.*, 1:14-cv-08668-AKH; *Rubinstein v. American Realty Capital Properties, Inc. et. al.*, 1:14-cv-08669-AKH; *Patton v. American Realty Capital Properties, Inc.  et. al.*, 1:14-cv-08671-AKH, *Edwards v. American Realty Capital Properties, Inc. et. al.*, 1:14-cv-08721-AKH, *Harris v. American Realty Capital Properties, Inc. et. al.*, 1:14-cv-08740-AKH, *Abadi v. American Realty Capital Properties, Inc. et. al.*, 1:14-cv-09006-AKH,  and *The City Of Tampa General Employees Retirement Fund v. American Realty Capital Properties, Inc. et al*, 1:14-cv-10134-UA.  In addition, at least one federal securities class action has been

Exchange Act and/or Sections 11 and 15 of the Securities Act by issuing false and misleading financial statements. A summary of these eight federal securities class actions is provided in the chart below:

| Case No. | Plaintiff | Class Period | Claims | Class Definition |
|---|---|---|---|---|
| 1:14-cv-08659 | Ciraulu | 2/27/14-10/28/14 | §§10(b)/20(a) Exchange Act | ARCP securities purchasers during class period |
| 1:14-cv-08668 | Priever | 5/8/14-10/27/14 | §§10(b)/20(a) Exchange Act | ARCP securities purchasers during class period + purchasers on 5/21/14 offering |
| 1:14-cv-08669 | Rubinstein | 5/6/13-10/27/14 | §§10(b)/20(a) Exchange Act | ARCP common stock purchasers during class period |
| 1:14-cv-08671 | Patton | 2/27/14-10/29/14 | §§10(b)/20(a) Exchange Act | ARCP securities purchasers during class period |
| 1:14-cv-08721 | Edwards | 2/27/14-10/28/14 | §§10(b)/20(a) Exchange Act | ARCP securities purchasers during class period |
| 1:14-cv-08740 | Harris | 2/27/14-10/28/14 | §§10(b)/20(a) Exchange Act | ARCP common stock &/or call options purchasers during class period |
| 1:14-cv-09006 | Abadi | N/A | §§11/12(a)/15 Securities Act | persons who exchanged shares of CREI for ARCP shares in connection with ARCP's acquisition of CREI |
| 1:14-cv-10134 | Tampa | N/A | §§11/15 Securities Act | purchasers of ARCP common stock pursuant or traceable to the Registration Statement issued in connection with the 5/21/14 offering |

filed in the District of Maryland: *Wunsch v. American Realty Capital Properties, Inc. et al.* 1:14-cv-04007-ELH. Like the *Abadi* action, the Maryland *Wunsch* action is on behalf of persons who exchanged shares of Cole Real Estate Investments, Inc. ("CREI") for American Realty shares in connection with American Realty's acquisition of CREI. On December 23, 2014, American Realty moved the Maryland court to transfer the *Wunsch* action to the Southern District of New York. Responses are due on January 9, 2015.

The *Ciraulu, Patton, Edwards,* and *Harris* complaints all alleged a class period beginning February 27, 2014 while the *Priever* complaint alleged a class period beginning May 8, 2014 and the *Rubinstein* complaint alleged a Class Period beginning May 6, 2013. All of the actions which allege a Class Period end the Class Period on either October 27, 28, or 29, 2014. Tampa's losses pursuant to the Exchange Act are calculated using the largest class period alleged in the pending cases, May 6, 2013 to October 29, 2014.

Tampa's complaint (*The City Of Tampa General Employees Retirement Fund v. American Realty Capital Properties, Inc*. et al, 1:14-cv-10134-UA), filed on behalf of all persons or entities that purchased or otherwise acquired American Realty common stock pursuant or traceable to the Registration Statement issued in connection with the Company's Secondary Offering, effective on May 21, 2014, is brought under Sections 11 and 15 of the Securities Act - and does not allege and does not sound in fraud. Moreover, Tampa filed the only action out of the eight that has named as defendants the underwriters of the Secondary Offering.[2]

Pursuant to the PSLRA, the court appoints as lead plaintiff the movant or movants who possess the largest financial interest in the outcome of the action and who otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Tampa, with a loss of approximately $141,457 on both a First-In-First-Out ("FIFO") and Last-In-First-Out ("LIFO") basis in connection with **all** its purchases of American Realty securities during the Class Period and a loss of $48,224 on both a FIFO and LIFO basis in connection with its purchases of American Realty common stock pursuant or traceable to the prospectus and registration statement issued in connection with the Company's May 21, 2014 Secondary Offering, believes it is the movant with the largest financial interest in the relief sought in this action. Tampa further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, as it is an adequate representative with claims typical of the other Class members. Accordingly, Tampa respectfully submits that it should be appointed Lead Plaintiff.

---

[2] As alleged in the *Tampa* action, defendants Merrill Lynch, Pierce, Fenner & Smith Inc., Citigroup Global Markets Inc., Barclays Capital Inc., J.P. Morgan Securities LLC, Capital One Securities, Inc., Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., Wells Fargo Securities, LLC, Robert W. Baird & Co. Inc., Ladenburg Thalman & Co. Inc., BMO Capital Markets Corp., JMP Securities LLC, Mizuho Securities USA Inc., PNC Capital Markets LLC, Piper Jaffray & Co., and RBS Securities Inc. (collectively the "Underwriter Defendants") are financial services firms that acted as underwriters of the Company's Secondary Offering and helped draft or disseminate the offering documents.

## II.     STATEMENT OF FACTS

American Realty is a real estate investment trust ("REIT").  The Company owns and acquires single-tenant, freestanding commercial real estate primarily subject to medium-term net leases with credit quality tenants.  The Company principally invests in retail and office properties.

Throughout the Class Period, Defendants made false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, and prospects.  The Company's Registration Statement, and other Company documents filed with the United States Securities and Exchange Commission ("SEC"), contained untrue statements of material facts or omitted to state other material facts necessary to make the statements made not misleading.  For instance, the Company overstated its non-controlling interests in the calculation of adjusted funds from operations ("AFFO") by $12 million for the fiscal period ended March 31, 2014 ("1Q2014") and by approximately $10.9 million for the fiscal period ended June 30, 2014 ("2Q2014").  The Company also failed to disclose its inadequate internal controls and procedures over financial reporting and disclosure.

Five months after the Secondary Offering, on October 29, 2014, before the stock market opened, the Company filed a Form 8-K with the SEC and issued a subsequent press release announcing that the Company's Form 10-K for its fiscal year ended December 31, 2013 and its Forms 10-Q for 1Q2014 and 2Q2014 should no longer be relied upon, and that the Company would be restating its audited consolidated financial results.   Specifically, the Company admitted, among other things that:  (a) contrary to its prior representations, it lacked proper and effective financial reporting controls and procedures; and (b) certain of its previously issued financial statements "should no longer be relied upon" as they were materially false and misleading in that they overstated the Company's AFFO.  In so doing, the Company admitted

that the Registration Statement and its disclosures and filings incorporated by reference therein, were materially false and misleading.

The Company also revealed that its Audit Committee determined that the financial statement misrepresentations were "intentionally made" and "intentionally not corrected" and that the Company's Chief Financial Officer and Chief Accounting Officer who "had key roles in the preparation of those financial statements" had resigned and were no longer with the Company.

As a result of this news, shares of American Realty fell as much as $4.53 or over 36% in intraday trading, on extremely heavy volume, to as low as $7.85 on October 29, 2014.

As a result of Defendants' wrongful acts and omissions, American Realty common stock traded at artificially inflated prices during the Class Period, and Tampa and other Class members suffered significant losses and damages.

## III. ARGUMENT

### A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Moreover, the PSLRA also calls for consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been

filed….” *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc*., 252 F.R.D. 188 (S.D.N.Y. 2008). Here, the Related Actions allege claims against many of the same defendants, stemming from the same set of misconduct.

In addition to the inclusion of American Realty and Defendant Brian Block in all eight of the Related Actions, seven of the Related Actions name Nicholas Schorsch as a defendant and six of the Related Actions name David Kay and Lisa McAlister as defendants. Moreover, both the Section 11 actions (*Tampa* on behalf of recipients in the Secondary Offering and *Abadi* on behalf of recipients in the CREI merger) name substantially the same additional directors as defendants.[3] Of note however, the *Tampa* action is the only complaint which names the Underwriter Defendants, as in fact, Tampa, among all movants, uniquely has standing to pursue claims against the Underwriter Defendants in connection with the material false statements and omissions related to the Secondary Offering.

All of the actions allege damages stemming from the Company's false and misleading statements and American Realty's overstatement of its non-controlling interests in the calculation of AFFO which was revealed on October 29, 2014. Accordingly, consolidation of the Related Actions is appropriate. *Lintz v. Agria Corp*., 2008 U.S. Dist. LEXIS 99846 (S.D.N.Y. Dec. 3, 2008) (consolidating actions that all alleged federal securities law violations arising out of defendants' alleged issuance of false and misleading financial statements).

**B.      TAMPA SHOULD BE APPOINTED LEAD PLAINTIFF**

Sections 21D(a)(3)(B) and 27(a)(3)(B) of the PSLRA sets forth procedures for the selection of a lead plaintiff in class actions brought under both the Exchange Act and Securties Act, respectively. The PSLRA directs courts to consider any motion to serve as lead plaintiff

---

[3] Peter Budko, Edward Weil, Jr., William Kahane, Edward Rendell, Leslie Michelson, and Scott Bowman are named as defendants in both Section 11 complaints. Brian Jones and Walter Lomax, Jr. are only named in the *Tampa* action. Lisa Beeson is only named in the *Abadi* action.

filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii), 15 U.S.C. § 77z-1(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

As set forth below, Tampa satisfies all three of these criteria and is thus entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

In the alternative, Tampa seeks to be appointed Lead Plaintiff of a Sub-Class of all persons or entities who purchased or otherwise acquired American Realty common stock pursuant or traceable to the Registration Statement issued in connection with the Company's Secondary Offering, effective on May 21, 2014.

**1. Tampa is Willing to Serve as Lead Plaintiff**

On October 30, 2014, counsel in the first filed action caused a notice (the "Notice") to be published over *Globe Newswire* pursuant to Sections 21D(a)(3)(A)(i) and 27(a)(3)(A)(i) of the

PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors of American Realty securities that they had until December 29, 2014, to file a motion to be appointed as Lead Plaintiff.  *See* Ex. A.

Tampa has filed the instant motion pursuant to the Notice, and has attached a certification attesting that it is willing to serve as representative for the Class, Lead Plaintiff for the Class, and provide testimony at deposition and trial, if necessary.  *See* Ex. B.  Tampa's Certification was executed by Alan Weiner, Vice Chairman of the City of Tampa General Employees Retirement Fund.  Mr. Weiner has the authority to bind Tampa to this litigation and execute the Certification on its behalf.  Accordingly, Tampa satisfies the first requirement to serve as Lead Plaintiff for the Class.

### 2.  Tampa Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii), 15 U.S.C. § 77z-1(a)(3)(B)(iii). *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394-395 (S.D.N.Y. 2008); *In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

As of the time of the filing of this motion, Tampa believes that it has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds

expended during the class period; and (4) the approximate losses suffered).[4]  Most courts agree that the approximate loss suffered is the most significant of the four elements.  *See*, *e.g.*, *Richman v. Goldman Sachs Group, Inc.,* No. 10 Civ. 03461(PAC), 2011 WL 2360291, at \*6 (S.D.N.Y. March 25, 2011) ("Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest"); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[W]e, as have other courts, shall place the most emphasis on the last of the four factors, the approximate loss suffered by the movant").

During the Class Period, (1) Tampa purchased 35,200 shares of American Realty common stock; (2) expended $444,837 on its purchases of American Realty common stock; (3) retained 35,200 shares of their American Realty common stock as of the end of the Class Period; and, (4) as a result of the revelations of the fraud, Tampa suffered a loss of $141,235 on a FIFO and LIFO basis pursuant to the Exchange Act.  Moreover, at least 13,700 of the shares purchased during the Class Period were purchased pursuant or traceable to the Secondary Offering and Tampa has suffered a loss of $48,224 on these shares pursuant to the Securities Act.  *See* Ex. C. Because Tampa possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).  *See also Chilton v. Chiumento Group*, 365 Fed. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption); *In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009).

---

[4] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).  *Accord In re Converse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at \*22-\*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "*Lax-Olsten*" factors.).

### 3. Tampa Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Sections 21D(a)(3)(B)(iii)(I)(cc) and 27(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc); *see also In re Elan Corp. Sec. Litig.,* No. 02 Civ. 865 (WK) (FM), 2002 U.S. Dist. LEXIS 23162, at *7 (S.D.N.Y. Dec. 3, 2002); *Albert Fadem Trust v. Citigroup Inc*., 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Canson v. WebMD Health Corp.*, No. 11-cv-5382-JFK, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Olsten.*, 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims are typical of the class' claims. *In re EVCI Career Colleges Holding*

*Corp. Sec. Litig.,* No. 05-cv-10240-CM, 2007 WL 2230177, at *13 (S.D.N.Y. July 27, 2007) (nothing that "[t]ypicality does not require that the factual background of each named plaintiffs claim be identical to that of all class members.").

The claims of Tampa are typical of those of the Class. Tampa alleges, as do all Class members, that defendants violated the Exchange Act and/or the Securities Act by making what they knew or should have known were false or misleading statements of material facts concerning American Realty, or omitted to state material facts necessary to make the statements they did make not misleading. Tampa, as did all members of the Class, purchased American Realty common stock during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions. These common claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have sufficient interest in the outcome of the case to ensure vigorous advocacy. *See Xianglin Shi v. Sina Corp.*, No. 05-cv-2154-NRB, 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005); *Ghodooshim v. Qiao Xing Mobile Commc'n Co., Ltd.*, No. 12-cv-9264-JSR, 2013 WL 2314267 (S.D.N.Y. May 21, 2013); *Beck v. Maximus*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Tampa adequately represents the Class. There is no antagonism between Tampa's interests and those of the Class, and its loss demonstrates that it has a sufficient interest in the outcome of this litigation. Moreover, Tampa has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), 15 U.S.C. § 77z-1(a)(3)(B)(v).

### 4. Tampa Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Any Unique Defenses

The presumption in favor of appointing Tampa as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or

> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

Tampa's ability and desire to fairly and adequately represent the Class has been discussed above. Tampa is not aware of any unique defenses defendants could raise that would render it inadequate to represent the Class. Accordingly, Tampa should be appointed Lead Plaintiff for the Class, or in the alternative, the Sub-Class.

### 5. The Appointment of a Sub-Class Lead Plaintiff to Represent Purchasers on the Secondary Offering is Appropriate Under These Circumstances

The interests of a Sub-Class of puchasers on the American Realty Secondary Offering should be protected by a separate Lead Plaintiff because the standards of pleading and proof in Section 11 cases under the Securities Act are different from the fraud based standards of claims under the Exchange Act. These differences are prejudicial to plaintiffs, such as Tampa, who are

seeking to assert claims which do not allege or sound in fraud. Moreover, the Tampa complaint is the only Related Action which names the Underwriter Defendants and Tampa uniquely possess claims against these defendants – claims which are important to a Sub-Class of purchasers on the Secondary Offering.

Section 11 of the Securities Act "impos[es] a stringent standard of liability on the parties who play a direct role in a registered offering. If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case." *Herman & Maclean v. Huddleston,* 459 U.S. 375, 381-382 (U.S. 1983) (footnotes omitted). Here, American Realty has already admitted the restatement of the Company's financial results for its fiscal year ended December 31, 2013 and in its Forms 10-Q for 1Q2014 and 2Q2014--including the period covered by the Secondary Offering documents. *Tampa* Complaint ¶6. This in itself is an admission that those financial statements contained material misstatements or omissions. Thus, Tampa, who has additionally certified to the timely purchase of the securities pursuant to the Secondary Offering, has already established a prima facie case under Section 11.

In stark contrast to Section 11 of the Securities Act, plaintiffs asserting claims arising under Section 10(b) of the Exchange Act must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). This pleading requirement has been characterized as a "heavy burden." *McNamara v. Pre-Paid Legal Servs.,* 189 Fed. Appx. 702, 711 (10th Cir. 2006). Indeed, this heightened fraud based pleading standard has been interpreted as requiring that plaintiffs "marshal sufficient facts to convince a court at the outset that the defendants likely intended to deceive, manipulate, or

defraud." *Makar Issues & Rights, Ltd. v. Tellabs, Inc.,* 437 F.3d 588, 594-595 (7th Cir. 2006) *cert. granted* 127 S. Ct. 853 (2007).

In addition to alleging and ultimately proving scienter on the part of the defendants, plaintiffs under Section 10(b), but not under Section 11, must also show their own reliance on the misstatements at issue. This is generally pled by alleging the "fraud on the market" doctrine. *See, e.g., Basic Inc. v. Levinson,* 485 U.S. 224, 241-242 (U.S. 1988). This doctrine implicates questions regarding the efficiency of the market in which the security was traded, which in turn merits the enlistment of particular expert witnesses and complicated economic and statistical analysis. Indeed, there are "various factors relevant to an efficiency determination, and ... abundant evidence that can be developed with respect to each factor." *Bowe v. PolyMedica Corp. (In re PolyMedica Corp. Sec. Litig.),* 432 F.3d 1, 5 (1st Cir. 2005).

The disparity in standards as between alleging fraud based claims compared with the standards underlying Movant's strict liability claims will inevitably prejudice purchasers on the Secondary Offering. For example, a motion to dismiss the Section 10(b) claims will require significantly more briefing than will a motion to dismiss the Section 11 claims, because defenses to the Section 10(b) claims will almost certainly focus on whether the facts pled give rise to a "strong inference" of scienter. This question, which is entirely unrelated to the Section 11 claims, is fact-intensive. Forcing a Movant who respresents only Securities Act violations to wait while the fraud based issues are resolved will only hinder such a Movant's ability to seek redress, and will not benefit either them or the Section 10(b) plaintiffs.

Additionally, assuming that the Section 10(b) claims survive a motion to dismiss, the discovery requests relating to each claim will be different, again because of the scienter standard. Plaintiffs bringing a Section 11 claim often do not need to engage in lengthy or complicated

discovery regarding, for example, which individual knew of which accounting practice at a certain date, how often certain managers may have reported to their superiors, or what information was relayed when they did report. Indeed, under Section 11 "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & Maclean v. Huddleston,* 459 U.S. 375, 382 (U.S. 1983). Thus, there is no need to make plaintiffs asserting Section 11 claims wait while those asserting Section 10(b) claims first engage in battle over discovery. To do so unduly prejudices Section 11 claimants because of the extended period of time involved.

Moreover, the issue of reliance, as discussed above, will almost certainly raise the question of market efficiency. This, in turn, may well entail the use of economic experts, and will certainly implicate the need for further discovery, and, ultimately, extensive briefing which will consume still more time to resolve a question that has nothing to do with Section 11 claims.

In sum, because Section 11 claims require significantly less from plaintiffs in the way of both pleading and proof (and, therefore, discovery), and because Tampa uniquely possesses claims against the Underwriter Defendants based on its complaint, the interests of a proposed Sub-Class of puchasers on the American Realty Secondary Offering under the circumstances present in this matter, would be best protected by a separate Lead Plaintiff that Tampa is uniquely qualified to serve as. Tampa therefore moves in the alternative to be appointed Lead Plaintiff of the proposed Sub-Class.

### C.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v), 15 U.S.C. § 77z-1(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the

interests of the class." 15 U.S.C.§ 78u-4(a)(3)(B)(iii)(II)(aa). *See also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) (emphasizing that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.").

Here, Tampa has selected the law firm of Morgan & Morgan as Lead Counsel. Morgan & Morgan is the country's largest plaintiffs firm and is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume. *See* Ex. D. Members of the firm's securities practice include Peter Safirstein, a former prosecutor with the enforcement division of the SEC as well a former attorney for the United States Attorneys' Office for the Southern District of New York and in the Southern District of Florida; and Chris Polaszek, who has taken a prominent role in securities cases such as *In re Beazer Homes USA, Inc. Sec. Litig.*; *In re Liquidmetal Techs., Inc.*; *In re Omnivision Techs., Inc. Sec. Litig.*; and *In re AFC Enters. Sec. Litig.* Morgan & Morgan's significant experience in securities litigation also includes being named as co-lead counsel in *In re General Motors Derivative Litig.,* Consol. C.A. 9627-VCG (Del. Ch.), *In re Beam Inc. Stockholders Litig.*, C.A. No. 9301-VCN (Del. Ch.), *In re SWS Group Inc. Stockholder Litig.*, C.A. 9516-VCG (Del. Ch.), and *In re Emeritus Corp., S'holder Litig.*, 14-2-06385-7-SEA (King County, Wash. 2014).

Morgan & Morgan has the resources required to lead this complex litigation to conclusion. Morgan & Morgan has more than 250 lawyers, and a support staff of over 1,000 people, with offices in New York, Florida, Georgia, Mississippi, Kentucky, New Jersey and Tennessee, and has obtained multi-million dollar verdicts in courts throughout the country. The *National Law Journal* recently named Morgan & Morgan to its inaugural list of Elite Trial

Lawyers, as among the top 50 firms that have "pulled in victories in complex cases that have a wide impact on the law and legal business."[5]

As a result of the firm's extensive experience in litigation involving issues similar to those raised in this action, Tampa's counsel has the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Tampa's selection of Counsel, the members of the Class will receive the best legal representation available.

## IV.    CONCLUSION

For the foregoing reasons, Tampa respectfully requests the Court to issue an Order: (1) consolidating the related actions; (2) appointing Tampa as Lead Plaintiff of the Class, or in the alternative, Lead Plaintiff of the proposed Sub-Class; (3) approving Morgan & Morgan as Lead Counsel; and, (4) granting such other relief as the Court may deem to be just and proper.


Dated: December 29, 2014                          Respectfully submitted,
       New York, New York                          **MORGAN & MORGAN, P.C.**

                                                   _/s/_ Peter Safirstein
                                                   Peter Safirstein
                                                   Elizabeth S. Metcalf
                                                   28 W. 44th St., Suite 2001
                                                   New York, NY  10036
                                                   Telephone: (212) 564-1637
                                                   Facsimile: (212) 564-1807
                                                   Email: psafirstein@MorganSecuritiesLaw.com
                                                          emetcalf@MorganSecuritiesLaw.com

---

[5] http://www.nationallawjournal.com/id=1202669330788/Introducing-Americas-Elite-Trial-Lawyers.

Christopher S. Polaszek
**Morgan & Morgan, P.A.**
One Tampa City Center
201 N. Franklin St., 7th Fl.
Tampa, FL 33602
Telephone: (813) 314-6484
Facsimile: (813) 222-2406
Email: cpolaszek@MorganSecuritiesLaw.com

*Counsel for Movant and Proposed Lead*
*Counsel for the Class and/or Sub-Class*