## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PERRY CIRAULU, Individually and on Behalf of All Others Similarly Situated, | Electronically Filed |
| Plaintiff, | Civil Action No. 1:14-cv-08659-AKH |
| vs. | Judge Alvin K. Hellerstein |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, DAVID S. KAY, BRIAN BLOCK, AND LISA MCALISTER, | |
| Defendants. | |
| BERNARD PRIEVER, Individually and on Behalf of All Others Similarly Situated, | Electronically Filed |
| Plaintiff, | Civil Action No. 1:14-cv-08668-AKH |
| vs. | Judge Alvin K. Hellerstein |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., BRIAN BLOCK, AND LISA MCALISTER, | |
| Defendants. | |
| STUART RUBINSTEIN, Individually and on Behalf of All Others Similarly Situated, | Electronically Filed |
| Plaintiff, | Civil Action No. 1:14-cv-08669-AKH |
| vs. | Judge Alvin K. Hellerstein |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, BRIAN BLOCK, AND LISA MCALISTER, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE STATE TEACHERS RETIREMENT SYSTEM OF OHIO AND THE OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL**

| | |
|---|---|
| KEVIN PATTON, Individually and on Behalf of All Others Similarly Situated, | Electronically Filed |
| Plaintiff, | Civil Action 1:14-cv-08671-AKH |
| vs. | Judge Alvin K. Hellerstein |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, BRIAN BLOCK, AND LISA MCALISTER, | |
| Defendants. | |
| BERNEY HARRIS, Individually and on Behalf of All Others Similarly Situated, | Electronically Filed |
| Plaintiff, | Civil Action No. 1:14-cv-08740-AKH |
| vs. | Judge Alvin K. Hellerstein |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, DAVID S. KAY, BRIAN BLOCK, AND LISA MCALISTER, | |
| Defendants. | |
| SIMON ABADI, Individually and on Behalf of All Others Similarly Situated, | Electronically Filed |
| Plaintiff, | Civil Action No. 1:14-cv-09006-AKH |
| vs. | Judge Alvin K. Hellerstein |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, DAVID S. KAY, PETER M. BUDKO, BRIAN S. BLOCK, LISA E. BEESON, WILLIAM M. KAHANE, EDWARD M. WEIL, JR., LESLIE D. MICHELSON, EDWARD G. RENDELL, AND SCOTT J. BOWMAN, | |
| Defendants. | |

| | |
|---|---|
| THE CITY OF TAMPA GENERAL EMPLOYEES RETIREMENT FUND, Individually and on Behalf of All Others Similarly Situated, | Electronically Filed |
| | Civil Action No. 1:14-cv-10134 |
| Plaintiff, | Judge Alvin K. Hellerstein |
| vs. | |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, DAVID S. KAY, BRIAN BLOCK, PETER M. BUDKO, EDWARD M. WEIL, JR., BRIAN D. JONES, WILLIAM M. KAHANE, EDWARD G. RENDELL, WALTER P. LOMAX, JR., LESLIE D. MICHELSON, SCOTT J. BOWMAN, MERRILL LYNCH, PIERCE, FENNER & SMITH INC., CITIGROUP GLOBAL MARKETS INC., BARCLAYS CAPITAL INC., J.P. MORGAN SECURITIES LLC, CAPITAL ONE SECURITIES INC., CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., WELLS FARGO SECURITIES, LLC, ROBERT W. BAIRD & CO. INC., LADENBURG THALMANN & CO. INC., BMO CAPITAL MARKETS CORP., JMP SECURITIES LLC, JANNEY MONTGOMERY SCOTT LLC, MIZUHO SECURITIES USA INC., PNC CAPITAL MARKETS LLC, PIPER JAFFRAY & CO., AND RBS SECURITIES INC., | |
| Defendants. | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ..................................................................................................................... 5

I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED ...................................... 5

       A.     The Court Should Resolve the Consolidation Issue as
              a Prerequisite to the Determination of Lead Plaintiff ............................................ 5

       B.     The Related Actions Should Be Consolidated ...................................................... 5

II.    THE COURT SHOULD APPOINT THE OHIO FUNDS AS LEAD PLAINTIFF .......... 7

       A.     The Procedure Required By The PSLRA .............................................................. 7

       B.     The Ohio Funds Are The Most Adequate Plaintiffs .............................................. 8

              1.     The Ohio Funds Have Satisfied the PSLRA's
                     Procedural Requirements ............................................................................ 9

                     (a)   The Ohio Funds Are Willing To Serve As Class Representatives ...... 9

              2.     The Ohio Funds Are Institutional Investors With The Largest Financial
                     Interest In The Relief Sought By The Class .............................................. 9

              3.     The Ohio Funds Are Sophisticated and Experienced Institutional
                     Investors That Congress Envisioned To Serve As Lead Plaintiff............. 10

              4.     The Ohio Funds Meet The Requirements Of Fed. R. Civ. P. 23 ............. 12

                     (a)   The Ohio Funds' Claims Are Typical of Those of the Class ........... 12

                     (b)   The Ohio Funds Will Fairly and Adequately Protect
                           the Interests of the Class ................................................................. 14

III.   THE COURT SHOULD APPROVE THE OHIO FUNDS' CHOICE OF COUNSEL ... 15

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                              **Page**

*City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
269 F.R.D. 291 (S.D.N.Y. 2010) ................................................................. 10

*Ellenburg v. JA Solar Holdings Co., Ltd.*,
262 F.R.D. 262 (S.D.N.Y. 2009) ................................................................. 5

*Faig v. Bioscrip, Inc.*,
No. 13 Civ. 06922(AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ................ 6

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................. 12

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ................................................................. 7

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996) ................................................................ 11

*In re Baan Co. Sec. Litig.*,
186 F.R.D. 214 (D.D.C. 1999) .................................................................... 11

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ................................................................. 1

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
172 F.R.D. 119 (S.D.N.Y. 1997) ................................................................. 13

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328(RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) .................. 6

*In re Razorfish, Inc. Sec. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001) ....................................................... 2, 11

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990) ................................................................... 5, 7

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................. 5

*Lipetz v. Wachovia Corp.*,
No. 08 Civ. 6171 (RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) ................ 14

*Mitchell v. Complete Mgmt., Inc.*,
No. 99 CIV. 1454(DAB), 1999 WL 728678 (S.D.N.Y. Sept. 17, 1999) ................ 6

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
No. 11 Civ. 5097(JFK), 2011 WL 4831209 (S.D.N.Y. Oct. 12, 2011) ................ 13

*Richman v. Goldman Sachs Grp., Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011) ............................................................. 5, 10

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ..................................................................... 12

*Schulman v. Lumenis, Ltd.*,
    No. 02 Civ. 1989(DAB), 2003 WL 21415287 (S.D.N.Y. June 18, 2003)........................ 10, 12

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................................. 12

*Xianglin Shi v. Sina Corp.*,
    No. 05 Civ. 2154(NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005).................................. 14

**Statutes, Rules and Regulations:**

15 U.S.C. § 77z-1(a)(1)................................................................................................. 7

15 U.S.C. § 77z-1(a)(3)(A)(i)(II)................................................................................... 8

15 U.S.C. § 77z-1(a)(3)(B) ...................................................................................... 7, 11

15 U.S.C. § 77z-1(a)(3)(B)(i) ....................................................................................... 8

15 U.S.C. § 77z-1(a)(3)(B)(ii) ................................................................................... 5, 7

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) .............................................................................. 8, 9

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) ................................................................................ 8

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa) ........................................................................ 15

15 U.S.C. § 77z-1(a)(3)(B)(v)..................................................................................... 15

15 U.S.C. § 77z-1(a)(3)(B) ........................................................................................... 1

15 U.S.C. § 78u-4(a)(1) ................................................................................................ 7

15 U.S.C. § 78u-4(a)(3)(A)(i) ....................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(A)(ii)(II)................................................................................. 8

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................. 1, 9, 11

15 U.S.C. § 78u-4(a)(3)(B)(i) ....................................................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)(ii) ................................................................................... 5, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .............................................................................. 8, 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)................................................................................ 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................ 15

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................... 15

15 U.S.C. § 78u-4(a)(3)(A)(i)(II).................................................................................. 8

Sections 21D(a)(1) ....................................................................................................... 7

Section 21D(a)(3)(B) ................................................................................................. 1, 9

Fed. R. Civ. P. 23 ............................................................................................... passim

Fed. R. Civ. P. 42(a) ................................................................................................ 5, 7

**Other Authorities**

Elliott J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions,*
    104 Yale L.J. 2053 (1995) ................................................................................................. 11, 12

H.R. CONF. REP. NO. 104-369 (1995),
    reprinted in 1995 U.S.C.C.A.N. 730, 733 ................................................................................. 10

S. REP. NO. 104-98 (1995),
    reprinted in 1995 U.S.C.C.A.N. 679, 690 .......................................................................... 11, 12

The State Teachers Retirement System of Ohio and the Ohio Public Employees Retirement System (collectively, the "Ohio Funds") respectfully submit this memorandum of law in support of their motion for: (a) consolidation of the related captioned actions (the "Actions"); (b) appointment as lead plaintiff, pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (c) approval of their selection of Bernstein Liebhard LLP ("Bernstein Liebhard") and Berman DeValerio as co-lead counsel for the class.

## PRELIMINARY STATEMENT

Presently pending in this District are seven related securities class action lawsuits brought on behalf of all persons or entities who purchased or acquired the securities of American Realty Capital Properties ("American Realty" or the "Company") between May 6, 2013 and October 29, 2014 (the "Class Period"), as well as those who acquired American Realty shares pursuant to the Company's acquisition of Cole Real Estate Investments, Inc., which was consummated on February 7, 2014, and those who purchased American Realty shares pursuant to a May 21, 2014 Registration Statement (the "Class").[1] Plaintiffs allege violations of the Securities Act and the Exchange Act against American Realty and several of its current and former officers ("Defendants"). American Realty investors, including the Ohio Funds, incurred significant

---

[1] The complaints filed in the captioned actions each allege substantially the same wrongdoing during different, overlapping periods. The period of May 6, 2013 through October 29, 2014 is the longest of the class periods alleged. On motions for lead plaintiff, courts generally utilize the longest class period when determining the financial interest of the various movants. *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113-14 (E.D.N.Y. 2012) (citing cases).

losses following the disclosure that the Company's true financial condition was not as it was represented to be during the Class Period.

Under the PSLRA, the presumptive lead plaintiff is the movant or movants that has both the largest financial interest in the litigation and has made a *prima facie* showing that it is a typical and adequate class representative under Fed. R. Civ. P. 23. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001). The Ohio Funds satisfy these requirements.

The Ohio Funds are the "most adequate" plaintiffs within the meaning of the PSLRA. First, the Ohio Funds lost $7,741,213.39 as a result of the wrongful conduct alleged in the Actions – a substantial financial interest that will ensure their vigorous prosecution of the Class's claims. Second, the Ohio Funds satisfy Rules 23(a)(3) and (a)(4) of the Federal Rules of Civil Procedure; their claims are typical of the claims of the Class, and they will fairly and adequately represent the interests of the Class. In fact, the Ohio Funds served as lead plaintiff in three cases where they prosecuted securities class actions to tremendous success: *In re Bank of America Corp. Sec. Litig.*, No. 09 MDL 2058 (DC) (S.D.N.Y.) ("*BOA*") (settlement of $2.43 billion); *In re AIG Sec. Litig.*, Master File No. 04 Civ. 8141 (S.D.N.Y.) (DAB) (AJP) ("*AIG*") (settlement of over $1 billion); and *In Re: Marsh & McLennan Companies, Inc. Securities Litigation*, No. 04-cv-8144 (CM) (S.D.N.Y. 2009) ("*Marsh*") ($400 million settlement). Finally, the Ohio Funds are sophisticated and experienced institutional investors – the kind envisioned by Congress to serve as lead plaintiff when it enacted the PSLRA.

Accordingly, for the reasons discussed below, the Ohio Funds respectfully request that the Court grant their motion to consolidate the Actions; appoint them as lead plaintiff; and approve their choice of co-lead counsel.

During the Class Period, Defendants issued materially false and misleading financial statements by, among other things, overstating reported adjusted funds from operations ("AFFO"), a key non-GAAP metric used by investors to measure the performance of the Company and its operations. Defendants did so by improperly including certain amounts related to ARCP's non-controlling interests in the calculation of AFFO, and then by intentionally covering up their impropriety. In addition, Defendants improperly accounted for various accruals and expenses that materially affected the Company's reported earnings per share, a key GAAP metric used by investors to measure the profitability of the Company. As a result of Defendants' improper accounting and cover-up, AFFO was overstated and reported net losses for the three and six months ended June 30, 2014 were understated.

On October 29, 2014, before the market opened, ARCP disclosed the existence of accounting "errors" and a subsequent cover-up relating to its previously issued 2014 quarterly financial statements. In this regard, the Company announced that AFFO had been overstated for the first quarter, noting that the "error was identified but intentionally not corrected," during the second quarter, and that other adjusted funds from operations and financial statement errors "were intentionally made," resulting in an overstatement of AFFO and an understatement of net losses for first three and six months of this year. The Company also said that its Audit Committee had forced the immediate resignations of Defendants Block (the CFO) and McAlister (the CAO), who were deemed responsible for the accounting "errors" and subsequent cover-up. At the same time, both Block and McAlister forfeited expected salary, options and incentive payments: Block forfeited approximately $35 million and McAlister forfeited approximately $247,600. Because of its investigation, the Audit Committee said that the Company's financial statements for 2013 and the first two quarters of 2014 "should no longer be relied upon."

Defendant McAlister subsequently filed suit against Defendants Schorsch and Kay in New York State court, alleging that her October 2014 termination was in retaliation for her statements that changes in accounting practices during the Class Period were improper and an attempt to hide the Company's faltering financial performance. Critically, McAlister said she voiced her concerns during the first quarter of 2014, well before the October 2014 announcement and her termination.[2] McAlister's allegations against Schorsch and Kay and the facts that support them strongly support Plaintiffs' allegations that Defendants acted with scienter when making the misleading statements and omissions.

Defendants' false and misleading statements caused the price of American Realty's stock to be artificially inflated. In response to the October 29 disclosure, the price of the Company's stock declined substantially, falling as much as $4.53, or over 36%, on extremely heavy volume, to as low as $7.85 per share. By the closing bell, the price of American Realty stock fell $2.38 per share, or approximately 19%, to close at $10.00 per share. During the Class Period, the price of ARCP's stock traded as high as $14.96 per share.

Notably, days after the October 29 announcement, the SEC opened an investigation into the Company's accounting practices and the FBI, along with the U.S. Attorney for the Southern District of New York, opened a criminal investigation into the accounting fraud and subsequent cover-up.

---

[2] Schorsch resigned from the Company on December 12, 2014. Kay quit three days later, along with Chief Operating Officer Lisa Beeson, according to the Company.

**ARGUMENT**

## I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED

### A.     The Court Should Resolve the Consolidation Issue
###          as a Prerequisite to the Determination of Lead Plaintiff

The PSLRA provides that prior to ruling on any motion for lead plaintiff the Court must

first determine whether to consolidate any pending actions. 15 U.S.C. § 77z-1(a)(3)(B)(ii), 15

U.S.C. § 78u-4(a)(3)(B)(ii) ("[i]f more than one action on behalf of a class asserting substantially

the same claim or claims arising under this [sub-] chapter has been filed," the court shall not

make the determination of the most adequate plaintiff until "after the decision on the motion to

consolidate is rendered."); *see also Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475

(S.D.N.Y. 2011) (consolidating actions with "nearly identical allegations" prior to addressing

lead plaintiff appointment).  Once the Court makes that ruling, it is required to "appoint the most

adequate plaintiff as lead plaintiff for the consolidated actions."  15 U.S.C. § 77z-1(a)(3)(B)(ii),

15 U.S.C. § 78u-4(a)(3)(B)(ii).

### B.     The Related Actions Should Be Consolidated

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation of related actions

is appropriate when the actions involve common questions of law or fact.  *See* Fed. R. Civ. P.

42(a); *Ellenburg v. JA Solar Holdings Co., Ltd.*, 262 F.R.D. 262, 264 (S.D.N.Y. 2009) (citation

omitted).  The Court has "broad discretion to determine whether consolidation is appropriate"

under Rule 42(a). *Id.* (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)).

Consolidation is particularly appropriate in securities class action litigation because the

unification of cases expedites proceedings, reduces duplication, and minimizes the expenditure

of time and money by all concerned. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 92 (S.D.N.Y.

2007) (consolidating securities class actions with common allegations noting "the well

recognized principle that the consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs") (citation omitted); *Mitchell v. Complete Mgmt., Inc.*, No. 99 CIV. 1454(DAB), 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999). "[S]light differences in the facts alleged and legal issues raised do not preclude consolidation." *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008). *See also Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922(AJN), 2013 WL 6705045, at *1 (S.D.N.Y. Dec. 19, 2013) (ordering consolidation, noting that "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law") (internal quotations and citations omitted).

There are at least six related securities fraud class actions filed against Defendants on behalf of investors who purchased or acquired American Realty securities during the Class Period:

| Case Caption | Docket Number | Date Filed |
|---|---|---|
| *Perry Ciraulu v. American Realty Capital Properties, Inc., et al.* | 1:14-cv-08659-AKH | October 30, 2014 |
| *Bernard Priever v. American Realty Capital Properties, Inc., et al.* | 1:14-cv-08668-AKH | October 30, 2014 |
| *Stuart Rubinstein v. American Realty Capital Properties, Inc., et al.* | 1:14-cv-08669-AKH | October 30, 2014 |
| *Kevin Patton v. American Realty Capital Properties, Inc., et al.* | 1:14-cv-08671-AKH | October 30, 2014 |
| *Berney Harris v. American Realty Capital Properties, Inc., et al.* | 1:14-cv-08740-AKH | October 31, 2014 |
| *Simon Abadi v. American Realty Capital Properties, Inc., et al.* | 1:14-cv-09006-AKH | November 12, 2014 |
| *City of Tampa v. American Realty Capital Properties, Inc., et al.* | 1:14-cv-10134 | December 29, 2014 |

The foregoing actions are well-suited for consolidation. The complaints filed in each the action are substantially similar as they allege similar violations of law and arise from a common

nucleus of facts and circumstances; namely, the making of materially false and misleading statements concerning, among other things, American Realty's results of operations and financial condition. *See*, *e.g.*, *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006) ("[T]his Court has recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports.") (internal quotations and citations omitted). Moreover, each complaint alleges similar and overlapping class periods and is brought against nearly identical defendants. Further, consolidation will avoid duplicative discovery, motion practice, and other proceedings that will result if the Actions are not consolidated. Therefore, Defendants will not be prejudiced by consolidation.

Accordingly, the Court should consolidate the Actions, and any other subsequently-filed related actions pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii) and Federal Rule of Civil Procedure 42(a).

## II.     THE COURT SHOULD APPOINT THE OHIO FUNDS AS LEAD PLAINTIFF

### A.     The Procedure Required By The PSLRA

The PSLRA establishes a straightforward, sequential procedure for selecting a lead plaintiff in "each private action arising under [Securities Act and Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 27(a)(1) and (a)(3)(B), 15 U.S.C. §§ 77z-1(a)(1) and (a)(3)(B); Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(ii); 15 U.S.C. § 78u-4(a)(3)(A)(i). Second, the Court is to consider within 90 days all motions made by any person or group of

persons who are members of the proposed class to be appointed lead plaintiff that are filed within 60 days after publication of that notice. 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II) and (a)(3)(B)(i); 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i). Finally, in considering any motion to serve as the lead plaintiff, the Court is required to appoint the "most adequate plaintiff." 15 U.S.C. §§ 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating the lead plaintiff motion, the Court should adopt the presumption that the most "adequate plaintiff" is the person or group of persons that:

     i)      has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

     ii)     in the determination of the court, has the largest financial interest in the relief sought by the class; and

     iii)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, the Ohio Funds satisfy the foregoing criteria.

**B.     The Ohio Funds Are The Most Adequate Plaintiffs**

The Ohio Funds respectfully submit that they are presumptively the "most adequate plaintiff" because they have complied with the PSLRA's procedural requirements, possess the largest financial interest of any qualified movant, and satisfy Rule 23's typicality and adequacy requirements.

### 1. The Ohio Funds Have Satisfied the PSLRA's Procedural Requirements

#### (a) The Ohio Funds Are Willing To Serve As Class Representatives

On October 30, 2014, counsel in Civil Action No. 1:14-cv-08659-AKH caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against, among others, American Realty, and which advised putative class members that they had 60 days from the date of the Notice to file a motion to seek appointment as a lead plaintiff in the action. *See* Seidman Decl. Ex. 1. The Ohio Funds have reviewed one of the complaints filed in the Actions and have timely filed their motion pursuant to the Notice. In doing so, the Ohio Funds have attached their certifications attesting to their willingness to serve as representatives of the Class and provide testimony at deposition and trial, if necessary. *See* Seidman Decl. Ex. 2. Accordingly, the Ohio Funds satisfy the procedural requirements of the PSLRA.

### 2. The Ohio Funds Are Institutional Investors With The Largest Financial Interest In The Relief Sought By The Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The State Teachers Retirement System of Ohio purchased and/or acquired 2,033,888 shares, or 1,711,894 net shares, of American Realty stock during the Class Period, expending $21,796,148 on a net basis and incurring a substantial total loss of $6,778,116 on those

transactions.[3]  The Ohio Public Employees Retirement System purchased 277,525 shares, or 256,041 net shares, of American Realty stock during the Class Period, expending $3,209,908 on a net basis and incurring a substantial total loss of $963,097 on those transactions.  Collectively, the Ohio Funds incurred a loss of $7,741,213 on their transaction in American Realty stock.[4]  *See* Seidman Decl. Ex. 3.  The Ohio Funds believe that given these losses they are the presumptive "most adequate plaintiff" and should be appointed the lead plaintiff in the Actions.

### 3.  The Ohio Funds Are Sophisticated and Experienced Institutional Investors That Congress Envisioned To Serve As Lead Plaintiff

The Ohio Funds are the type of institutional investors envisioned by Congress to serve as a lead plaintiff.  Indeed, the legislative history of the PSLRA demonstrates that Congress intended to encourage institutional investors, such as the Ohio Funds, to serve as a lead plaintiff in securities class actions.  H.R. CONF. REP. NO. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733.  This congressional preference has been noted repeatedly by the courts within this District.  *See*, *e.g.*, *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 477 (S.D.N.Y. 2011) ("Congress has instructed [that securities class actions] should be guided by institutional investors"); *City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 294 (S.D.N.Y. 2010) ("[t]he drafters of the PSLRA sought to reduce the influence of lawyers on class action securities suits by weighting the determination of lead plaintiff in favor of large institutional investors"); *see also Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989(DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003).

---

[3] These loss calculations use the book value of the Cole Real Estate Investments, Inc. shares that were exchanged for American Realty shares at the time of the merger.  Using the price of American Realty shares on February 7, 2014, the closing date of the merger, the State Teachers Retirement System of Ohio sustained a loss of $8,930,757.

[4] The Ohio Funds' losses are the same whether calculated on a first-in, first-out ("FIFO") or last-in, first-out ("LIFO") basis.

Furthermore, Congress believed that "increasing the role of institutional investors in class actions [would] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999) (citations omitted). *See also* S. REP. NO. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 ("increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts."). Congress reasoned that the empowerment of institutional investors would result in the appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel. *Razorfish*, 143 F. Supp. 2d at 309 (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interest … would control the litigation ...."); Elliott J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"). *See also* S. REP. NO. 104-98, at 11 n.32 (noting that Weiss & Beckerman "provided the basis for the 'most adequate plaintiff' provision"). For this reason, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996).

Moreover, the Ohio Funds constitute an appropriate group under the PSLRA. 15 U.S.C. § 77z-1(a)(3)(B); 15 U.S.C. § 78u-4(a)(3)(B) ("[T]he court shall adopt a presumption that the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class."). Indeed, the legislative history of the PSLRA demonstrates that Congress specifically intended for institutions to join together to litigate securities class action cases. The law review article cited in the legislative history "as provid[ing] the basis for the 'most adequate plaintiff' provision" states that Congress used the "group of persons" language

because "if several institutions were interested in becoming involved, they could either compete to become lead plaintiff or agree to work together." S. Rep. No. 104-98, n. 32 6-12 (1995) (citing Weiss & Beckerman).

Here, the Ohio Funds are precisely the type of sophisticated institutional investors that courts have found appropriate to serve as lead plaintiffs under the PSLRA. Indeed, they have a proven track record prosecuting securities fraud actions and recovering record amounts for injured investors, including the successful resolution of the *BOA*, *AIG*, and *Marsh* securities class actions. Therefore, appointing the Ohio Funds as co-lead plaintiffs will accomplish exactly what the PSLRA was meant to accomplish: putting important securities fraud class actions under the control of strong, institutional investors with significant financial stakes in the outcome.

### 4. The Ohio Funds Meet The Requirements Of Fed. R. Civ. P. 23

Equally important, the Ohio Funds satisfy the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, which are the provisions of Rule 23 relevant to the appointment of lead plaintiff under the PSLRA. *See Schulman*, 2003 WL 21415287, at *2. *See also Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (considering only typicality and adequacy on a motion for designation of lead plaintiff and lead counsel). At this stage of the litigation, however, only a preliminary showing of typicality and adequacy is required. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011).

### (a) The Ohio Funds' Claims Are Typical of Those of the Class

The Ohio Funds' claims are typical of the Class in that they: (i) suffered the same, or substantially the same, injuries as the absent Class members; (ii) suffered the same injuries as a result of the same, or substantially the same, course of conduct by the named defendants; and (iii) base their claims on the same, or substantially the same, legal theories as the Class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). *See also* Seidman Decl. Ex. 1. Like

all Class members, the Ohio Funds:  (1) purchased and/or acquired American Realty common stock during the Class Period; (2) at prices allegedly artificially inflated by the named defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby.  *See Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11 Civ. 5097(JFK), 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011) (finding typicality requirement "easily met" when proposed lead plaintiff "asserted that it purchased [the company's] securities during the class period and was injured by false and misleading representations made by defendants").

Moreover, Rule 23 does not require that the named plaintiffs be identically situated with all class members.  It is enough if they share a common issue of law or fact.  *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 172 F.R.D. 119, 127 (S.D.N.Y. 1997).  A finding of commonality frequently supports a finding of typicality.

Here, the questions of law and fact common to the members of the Class and which may affect individual Class members include whether:

- Defendants violated the federal securities laws;

- statements made by Defendants to the investing public contained material misrepresentations and/or omissions concerning, *inter alia*, American Realty's business, operations and financial reporting; and

- the members of the Class sustained damages and, if so, what is the proper measure of damages.

These questions apply equally to the Ohio Funds as to all members of the Class.  Because the Ohio Funds' claims are based on the same, or substantially the same, legal theories and "arise from the same course of conduct that gives rise to the claims of other Class members," the typicality requirement is satisfied.  *See NASDAQ Mkt.-Makers*, 172 F.R.D. at 126.

### (b)     The Ohio Funds Will Fairly and Adequately Protect the
                Interests of the Class

The Ohio Funds also satisfy the adequacy requirement of Rule 23 of the Federal Rules of

Civil Procedure.   Under Rule 23(a)(4), the representative party must "fairly and adequately

protect the interests of the Class." Fed. R. Civ. P. 23(a)(4).  In order for the Class's interests to be

fairly and adequately represented, "(1) there should be no conflict between the proposed lead

plaintiff and the members of the class, (2) the selected counsel should be qualified, experienced,

and able to conduct the litigation, and (3) the lead plaintiff should have a sufficient interest in the

outcome to insure vigorous advocacy."  *Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154(NRB),

2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005) (citation omitted).  The Ohio Funds satisfy the

foregoing elements.

The Ohio Funds' interests are perfectly aligned with those of the other Class members

and are not antagonistic in any way.  Indeed, the Ohio Funds and members of the Class have the

same interest: to maximize the recovery from Defendants.  Because of their substantial financial

stake in the litigation, Class members can be assured that the Ohio Funds have the incentive to

vigorously represent their interests.  *See Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171 (RJS), 2008

WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting that an institutional investor's "substantial

financial stake in the litigation" suggests that "as lead plaintiff, [the institutional investor] would

prosecute the claim vigorously").  Moreover, there are no facts to suggest any actual or potential

conflict of interest or other antagonism between the Ohio Funds and other Class members.

Further, the Ohio Funds are highly qualified to fulfill the duties and responsibilities

required to serve as lead plaintiff.  As noted, the Ohio Funds secured three outstanding

settlements in *BOA*, *AIG*, and *Marsh* for $2.43 billion, over $1 billion, and $400 million,

respectively, in securities class actions in courts in this District.  As they did in those litigations,

the Ohio Funds will diligently lead the litigation, including supervising lead counsel and directing litigation strategy and any settlement discussions to obtain the maximum recovery achievable for the Class.

Finally, the Ohio Funds have demonstrated their adequacy through their selection of Bernstein Liebhard and Berman DeValerio as co-lead counsel for the Class. As discussed more fully below, these firms are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated their ability to prosecute complex securities class action lawsuits.

## III. THE COURT SHOULD APPROVE THE OHIO FUNDS' CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. 15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Bernstein Liebhard and Berman DeValerio have extensive experience prosecuting complex securities class actions, such as this one, and are well qualified to represent the Class. *See* Seidman Decl. Exs. 4 and 5 for the firm resumes of Bernstein Liebhard and Berman DeValerio. As a result, the Court may be assured that by approving Bernstein Liebhard and Berman DeValerio as co-lead counsel, the Class is receiving the best legal representation available.

Bernstein Liebhard has frequently been appointed as lead counsel or co-lead counsel since the passage of the PSLRA, and has frequently appeared in major actions before this and other courts throughout the country. *The National Law Journal* has recognized Bernstein Liebhard for twelve consecutive years as one of the top plaintiffs' firms in the country – the only

firm to have achieved such sustained recognition.  Bernstein Liebhard has also been listed in *The Legal 500*, a guide to the best commercial law firms in the United States, for the past eight years, as well as in *Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms & Attorneys* for the past four years.  Bernstein Liebhard was also recently selected to the *National Law Journal's* inaugural "America's Elite Trial Lawyers" list.

Some of Bernstein Liebhard's outstanding successes include:

- *In re Beacon Associates Litigation*, No. 09 CIV 0777 (LBS) (AJP) (S.D.N.Y. 2013) (settlement of $219 million);

- *In re Fannie Mae Securities Litigation*, No. 04-1639 (FJL) (D.D.C. 2013) (settlement of $153 million);

- *In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08-CV-11117 (S.D.N.Y. 2011) (settlement in excess of $100 million);

- *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04-CV-8144 (CM) (S.D.N.Y. 2009) (settlement:  $400 million); and

- *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-374 (JAP) (D.N.J. 2008) (U.S.-based settlement with a minimum cash value of $138.3 million; substantial factor in bringing about a $350 million European settlement);

Further, Bernstein Liebhard partner Stanley Bernstein served as Chairman of the Executive Committee in *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (SAS) (S.D.N.Y. 2009), before Judge Shira Scheindlin in this District.  The *IPO* litigation is one of the biggest securities class actions ever prosecuted.  On October 5, 2009, the Court granted final approval to a $586 million settlement.

Berman DeValerio is one of the country's premier class action law firms with over 30 years prosecuting securities litigation cases.  Since the passage of the PSLRA, Berman DeValerio has held leadership positions in more than 100 federal securities class actions, recovering $3.1 billion on behalf of defrauded investors under the PSLRA such as in: *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, Nos. 08-Civ-2793 (RWS), 08 MDL No. 1963

(RWS) (S.D.N.Y.) (representing The State of Michigan Retirement Systems and obtaining a $294.9 million settlement); *Carlson v. Xerox Corp, et al.*, No. 3:00-CV-1621 (AWT) (D. Conn.) (representing the Louisiana State Employees' Retirement System and achieving a $750 million settlement); *In re Bristol-Myers Squibb Sec. Litig.*, No. 02-cv-2251 (LAP) (S.D.N.Y.) (representing the Louisiana State Employees' Retirement System and the Fresno County Employees' Retirement Association and securing a $300 million settlement); and *Wyatt v. El Paso Corp. et al.*, No. H-02-2717 (LNH) (S.D. Tex.) (representing Oklahoma Firefighters Pension and Retirement System and reaching settlements worth $285 million). Two recently settled cases that are subject to final approval are *In re IndyMac MBS Sec. Litig.*, No. 09-cv-04583-LAK (S.D.N.Y.) ($346 million settlement), and *In re 2008 Fannie Mae Sec. Litig.*, No. 08-civ-07831-PAC (S.D.N.Y) ($170 million settlement).

## CONCLUSION

For the foregoing reasons, the Ohio Funds respectfully request that this Court: (1) consolidate the related Actions, and all subsequently-filed, related actions; (2) appoint the Ohio Funds as lead plaintiff in the Actions, and all subsequently-filed, related actions; and (3) approve the Ohio Funds' selection of Bernstein Liebhard and Berman DeValerio as co-lead counsel.

Dated:   December 29, 2014                    Respectfully submitted,

**BERNSTEIN LIEBHARD LLP**

/s/  Jeffrey M. Haber
_____
Stanley D. Bernstein
(bernstein@bernlieb.com)
Jeffrey M. Haber
(haber@bernlieb.com)
Joseph R. Seidman, Jr.
(seidman@bernlieb.com)
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414
Facsimile:  (212) 779-3218

**BERMAN DEVALERIO**

Glen DeValerio
(gdevalerio@bermandevalerio.com)
Leslie Stern
(lstern@bermandevalerio.com)
Jay Eng
(jeng@bermandevalerio.com)
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile:  (617) 542-1194

*Attorneys for the Ohio Funds and Proposed*
*Co-Lead Counsel for the Class*