**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X
PERRY CIRAULU, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

  vs.

AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, DAVID S. KAY, BRIAN BLOCK and LISA MCALISTER,

      Defendants.

Case No. 14-cv-08659 (AKH)

------------------------------------- X
BERNARD PRIEVER, Individually And On Behalf Of All Others Similarly Situated,

      Plaintiff,

  vs.

AMERICAN REALTY CAPITAL PROPERTIES, INC., LISA P. MCALISTER, and BRIAN S. BLOCK,

      Defendants.

Case No. 14-cv-08668 (AKH)

------------------------------------- X
STUART RUBINSTEIN, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

  vs.

AMERICAN REALTY CAPITAL PROPERTIES, INC., BRIAN S. BLOCK, LISA MCALISTER AND NICHOLAS S. SCHORSCH,

      Defendants.

Case No. 14-cv-08669 (AKH)

------------------------------------- X

```
------------------------------------ X
KEVIN PATTON, Individually and on Behalf  :
of All Other Persons Similarly Situated,
                                          :
        Plaintiff,
                                          :
  vs.                                          Case No. 14-cv-08671 (AKH)
                                          :
AMERICAN REALTY CAPITAL
PROPERTIES, INC.; DAVID S. KAY;           :
NICHOLAS S. SCHORSCH; BRIAN S.
BLOCK; AND LISA MCALISTER,                :

        Defendants.                       :
------------------------------------ X
JAMES W. EDWARDS, JR., Individually and   :
on Behalf of All Others Similarly Situated,
                                          :
        Plaintiff,
                                          :
  vs.                                          Case No. 14-cv-08721 (AKH)
                                          :
AMERICAN REALTY CAPITAL
PROPERTIES, INC., NICHOLAS S.             :
SCHORSCH, DAVID S. KAY, BRIAN
BLOCK and LISA PAVELKA MCALISTER,         :

        Defendants.                       :
------------------------------------ X
BERNEY HARRIS, individually and on behalf :
of all others similarly situated,
                                          :
        Plaintiff,
                                          :
  vs.                                          Case No. 14-cv-08740 (AKH)
                                          :
AMERICAN REALTY CAPITAL
PROPERTIES, INC., NICHOLAS S.             :
SCHORSCH, BRIAN S. BLOCK, and LISA
MCALISTER,                                :

        Defendants.                       :
------------------------------------ X
```

**MEMORANDUM OF LAW IN SUPPORT OF THE NYC FUNDS' MOTION FOR CONSOLIDATION OF ALL ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND <u>APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................. 3

III. ARGUMENT ....................................................................................................................... 5

    A. The Related Actions Should Be Consolidated Pursuant to Fed. R. Civ. P. 42(a) ................................................................................................................. 5

    B. The NYC Funds Satisfy the Procedural Requirements for Appointment as Lead Plaintiff ............................................................................................................... 6

    C. The NYC Funds Satisfy Statutory Prerequisites for Appointment ........................ 7

        1. The NYC Funds Are Presumptively the Most Adequate Plaintiff ............. 7

        2. The NYC Funds Satisfy the Requirements of Rule 23 ............................... 8

    D. The Court Should Appoint Cohen Milstein as Lead Counsel ............................. 13

IV. CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Able Labs. Sec. Litig.*,
 425 F. Supp. 2d 562 (D.N.J. 2006) ...................................................................................12

*Alkhoury v. Lululemon Athletica, Inc.*,
 No. 13 Civ. 4596 (KBF), 2013 WL 5496171 (S.D.N.Y. Oct. 1, 2013) ...................................9

*In re Bank of Amer. Corp. Sec., Derivative, and Emps. Ret. Income Sec. Act (ERISA) Litig.*,
 281 F.R.D. 134 (S.D.N.Y. 2012) ..........................................................................................9

*In re Commtouch Software Ltd. Sec. Litig.*,
 No. C 01-00719 WHA, 2001 WL 34131835 (N.D. Cal. June 27, 2001) .............................12

*In re Elan Corp. Sec. Litig.*,
 No. 02 Civ. 865 (WK) (FM), 2002 U.S. Dist. LEXIS 23162 (S.D.N.Y. Dec. 3, 2002) ............8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir.2009) ....................................................................................................9

*Hargett v. Valley Fed. Sav. Bank*,
 60 F.3d 754 (11th Cir. 1995) ................................................................................................5

*Hevesi v. Citigroup*,
 366 F.3d. 70 (2d Cir. 2004) ................................................................................................10

*Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*,
 208 F.R.D. 59 (S.D.N.Y. 2002) ............................................................................................5

*In re Methly Tertiary Butyl Ether (MTBE) Products Liability Litig.*,
 241 F.R.D. 185 (S.D.N.Y. 2007) ..........................................................................................9

*Miller v. United States Postal Serv.*,
 729 F.2d 1033 (5th Cir. 1995) ..............................................................................................5

*In re Network Assoc., Inc., Sec. Litig.*,
 76 F. Supp. 2d 1017 (N.D. Cal. 1999) ................................................................................12

*Primavera Familienstiftung v. Askin*,
 173 F.R.D. 115 (S.D.N.Y. 1997) ..........................................................................................6

*Reimer v. Ambac Fin. Grp., Inc.*,
 No. 08 Civ. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ....................................8

# TABLE OF AUTHORITIES

**Page(s)**

*Reitan v. China Mobile Games & Entertainment Grp., Ltd.*,
  Nos. 14–CV–4471 (KMW), 2014 WL 6491433 (S.D.N.Y. Nov. 20, 2014) ............................ 13

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................................ 5, 11

**STATUTES**

15 U.S.C. § 78u-4 ............................................................................................................. *passim*

15 U.S.C. § 77z-1 .............................................................................................................. *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ............................................................................................................ 7, 8, 9, 11

Fed. R. Civ. P. 42(a) ................................................................................................................. 5, 6

## I. INTRODUCTION

Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and for the reasons set forth below, the New York City Employees' Retirement System ("NYCERS"); the New York City Police Pension Fund ("Police") and the New York City Police Officers' Variable Supplements Fund ("POVSF"); the Board of Education Retirement System of the City of New York ("BERS"); the Teachers' Retirement System of the City of New York ("TRS") and the Teachers' Retirement System of the City of New York Variable A ("TRS Var-A"); and the New York City Fire Department Pension Fund ("Fire"), the New York City Fire Officers' Variable Supplements Fund ("FOVSF"), and the New York City Fire Fighters' Variable Supplements Fund ("FFVSF") (collectively, the "NYC Funds") respectfully move this Court for an Order appointing the NYC Funds as Lead Plaintiff on behalf of themselves and all others similarly situated who purchased the debt and equity securities of American Realty Capital Properties ("ARCP" or the "Company"), during the period between May 6, 2013 and October 29, 2014, inclusive (the "Class Period"). The NYC Funds also seek appointment of the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel.

The above-captioned six actions, Nos. 14-cv-08659, 08668, 08669, 08671, 08721, and 08740, (collectively, the "Related Actions") have been filed against ARCP and certain of its officers and/or directors for violations of the federal securities laws. The Related Actions are predicated on losses that plaintiffs sustained as a result of Defendants' materially false or misleading financial statements filed during the Class Period and repeated in connection with ARCP's issuance of securities.

The NYC Funds suffered losses[1] of $11.7 million[2] from their investments in ARCP securities during the Class Period as a result of Defendants' misleading conduct. Notably, the NYC Funds, in addition to losses of $10.3 million on their purchases of ARCP stock, have also lost $1.4 million on purchases of several ARCP debt securities, and so are able to advance claims under Sections 11, 12, and 15 of the Securities Act against ARCP and additional parties. None of the complaints filed in the Related Actions has asserted such claims. The NYC Funds believe it is important to have an investor who purchased bonds as well as ARCP common stock appointed as Lead Plaintiff who can immediately advance those Securities Act claims as well as the Exchange Act claims that already have been filed. The NYC Funds, because of their stock and bond purchases, could capably represent all ARCP investors if appointed Lead Plaintiff.

Cohen Milstein represents the NYC Funds in this action. Cohen Milstein was selected through a competitive bidding process undertaken by the NYC Funds and is eminently qualified to prosecute securities class actions such as this one. Moreover, the NYC Funds have been actively considering an alliance with a Lead Plaintiff movant that also values representation by excellent counsel with fee agreements aimed to maximize recovery to all class members. The NYC Funds would be amenable to leading this action with another pension fund or funds to secure the most favorable relief for the class.

---

[1] The losses suffered by the NYC Funds, as detailed herein, are not the same as legally compensable damages, measurement of which is often a complex legal question that generally cannot be determined at this stage of the litigation. *See* Declaration of Christopher Lometti ("Lometti Decl."), at Exs. B and C.

[2] The various complaints filed in the above-captioned actions allege different class periods. The NYC Funds' losses calculated herein are for the longest class period from May 6, 2013 to October 29, 2014, inclusive, as alleged in *Rubinstein v. American Realty Capital Properties*, No. 14-cv-08669-AKH (S.D.N.Y. filed Oct. 30, 2014).

## II. BACKGROUND

The claims in these Related Actions arise from Defendants' materially false financial statements issued during the Class Period and are asserted against ARCP; Nicholas S. Schorsch, ARCP's Chief Executive Officer ("CEO") until October 1, 2014, as well as Executive Chairman and Director until his resignation from all duties at ARCP on December 15, 2014; David S. Kay, who was appointed ARCP's successor CEO on October 1, 2014, but who also resigned on December 15, 2014; Brian S. Block, Chief Financial Officer ("CFO"), Executive Vice President, Treasurer and Secretary of ARCP until October 28, 2014; and Lisa P. McAlister, the Chief Accounting Officer of ARCP until October 28, 2014 (collectively, the "Defendants").

On October 29, 2014, ARCP announced that its 10-K for the fiscal year ended on December 31, 2013 and its Quarterly Reports for the fiscal periods ended March 31, 2014 and June 30, 2014 should no longer be relied upon. ARCP issued a press release on October 29, 2014 prior to the commencement of trading by filing with the SEC an 8-K that stated:

> the Audit Committee of the Board of Directors [] of American Realty Capital Properties, Inc. (the "Company") concluded that the previously issued audited consolidated financial statements and other financial information contained in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013, the previously issued unaudited financial statements and other financial information contained in the Company's Quarterly Reports on Form 10-Q for the fiscal periods ended March 31, 2014 and June 30, 2014, and the Company's earnings releases and other financial communications for these periods [] should no longer be relied upon.

The press release also stated that, at the request of the Audit Committee, Defendants Block and McAlister had both resigned. ARCP revealed that "[t]he Audit Committee believes that this error was identified but intentionally not corrected, and other AFFO and financial statement errors were intentionally made." Later that same day, Defendant Kay further announced during an investor call that certain matters related to the Company's improper accounting would affect

3

earnings per share based on generally accepted accounting principles ("GAAP"). This adverse news, released October 29, 2014, shocked the market and caused the Company's share price to immediately plunge more than 30%, by as much as $4.53 in intraday trading, and on extremely heavy volume, representing billions of dollars of a single-day loss of market capitalization. The following day, on October 30, 2014, media outlets further reported ARCP acknowledged that the accounting errors were intentionally concealed and that the SEC, FBI and the U.S. Attorney's Office in New York had begun an inquiry into ARCP's accounting.

On December 15, 2014, ARCP issued a press release announcing that Defendant Schorsch had "stepped down as Executive Chairman of ARCP and from the ARCP Board of Directors and the Boards of Directors." That same day, ARCP filed a form 8-K with the SEC stating that Defendant Kay had resigned as Chief Executive Officer and a director of the Company and as Chief Executive Officer of the Partnership.[3] The next day on December 16, 2014, Moody's Investors Service downgraded the senior unsecured rating of ARCP bonds to junk status with a negative outlook due to ARCP's announcement that its Defendant Schorsch resigned along with Defendant CEO Kay and President/Chief Operating Officer Lisa Beeson. Finally, on December 18, 2014, Defendant McAlister filed a lawsuit in New York state court in which she alleged that her October termination was in retaliation for her statements that changes in accounting practices were an attempt to hide the ARCP's faltering financial performance. Defendant McAlister also alleged that Defendant Schorsch instructed her and Defendant Block to alter numbers in the Company's second-quarter results to cover up errors from the first quarter.

---

[3] The Form 8-K also clarified that Defendant Schorsch's resignation had occurred on December 12, 2014, three days before the December 15th press release announcing his resignation.

4

## III. ARGUMENT

As discussed below, the Related Actions should be consolidated. The NYC Funds respectfully request that they be appointed Lead Plaintiff as the NYC Funds satisfy each of the requirements of the PSLRA. Additionally, the NYC Funds seek appointment of Cohen Milstein as Lead Counsel for the Class. Alternatively, if the Court finds that the NYC Funds did not suffer the largest losses and therefore it, alone, may not be most capable of adequately representing the interests of class members, that it appoint the NYC Funds as co-lead plaintiff on behalf of bond purchasers and Cohen Milstein co-lead counsel together with one or more public pension funds with large losses so that there is an adequacy of representation across equity and bond holders who suffered losses.

### A. The Related Actions Should Be Consolidated Pursuant to Fed. R. Civ. P. 42(a)

Class action shareholder suits are ideally suited for consolidation pursuant to Rule 42(a). *See Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001). Indeed, "in securities actions where the complaints are based on the same public statements and reports, consolidation is appropriate if there are common questions of law and fact and the parties will not be prejudiced." *Id*. (internal quotations and citation omitted).

The Related Actions present virtually identical factual and legal issues and allege similar violations of the federal securities laws. They involve the same parties and arise from the same underlying facts and circumstances. "The proper solution to problems caused by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court would be to consolidate them under Rule 42(a)." *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 765-66 (11th Cir. 1995) (quoting *Miller v. United States Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1995)); *see also Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 208

F.R.D. 59, 61 (S.D.N.Y. 2002); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Because these actions are based on the same facts and involve the same subject matter, discovery obtained in one lawsuit will undoubtedly be relevant to all others. Consolidation of the Related Actions is thus appropriate as common questions of law and fact predominate in these actions. Fed. R. Civ. P. 42(a). Thus, the Related Actions should be consolidated and this motion should be granted.

### B. The NYC Funds Satisfy the Procedural Requirements for Appointment as Lead Plaintiff

Section 21D of the Exchange Act, 15 U.S.C. § 78u-4, establishes a procedure for the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The first such notice here was published on October 30, 2014 (*see* Lometti Decl. Ex. A).

The PSLRA further provides that within 90 days after the publication of the notice of pendency, or as soon as practicable after the actions have been consolidated, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The 60-day time period provided by the PSLRA in which applications for appointment as lead plaintiff must be filed expires on December 29, 2014. The NYC Funds have moved within the statutory 60-day time period. The motion contains the required certifications setting forth, *inter alia*, the NYC Funds' transactions in ARCP securities during the Class Period, and

indicates that the NYC Funds have reviewed a complaint filed in the case and are willing to serve as a representative party on behalf of the Class. *See* Lometti Decl. Ex. D. In addition, the NYC Funds have selected and retained competent and experienced counsel, as described in the Declaration of Alan H. Kleinman, Senior Counsel, Affirmative Litigation Division, New York City Law Department, and as set forth in counsel's resume. *See* Cohen Milstein resume at Lometti Decl. Exs. D & E. As its resume reflects, Cohen Milstein has developed an excellent reputation for successfully prosecuting federal securities claims, including many substantial cases in this court.

## C. The NYC Funds Satisfy Statutory Prerequisites for Appointment

### 1. The NYC Funds Are Presumptively the Most Adequate Plaintiff

The PSLRA sets forth procedures for the appointment of a lead plaintiff in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(1). The PSLRA provides that this Court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class *that the court determines to be most capable of adequately representing the interests of class members* (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). In adjudicating this motion, the Court must be guided by a presumption that the most adequate plaintiff is the person who (a) filed the Complaint or made a motion to serve as lead plaintiff, (b) has the largest financial interest in the relief sought by the class, and (c) otherwise satisfies the requirements of Fed. R. Civ. P. 23 and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The NYC Funds are qualified for appointment as Lead Plaintiff. During the Class Period, the NYC Funds suffered losses of approximately $11,782,573.93 from their purchases of ARCP common stock and debt securities. Because the NYC Funds possess a significant interest in the outcome of this litigation across multiple securities issued by ARCP during the class period, they are presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The NYC Funds are unaware of any other movant with a larger financial interest that has purchased both ARCP common stock and bonds. Further, as set forth below, the NYC Funds are both qualified to represent the class and willing to serve as a representative party. Finally, through a competitive bidding process, the NYC Funds have selected counsel that is highly experienced in prosecuting securities class actions such as this one. Accordingly, the NYC Funds satisfy the requirements for appointment as Lead Plaintiff under the PSLRA and the instant motion should be granted.

### 2. The NYC Funds Satisfy the Requirements of Rule 23

In addition to requiring that the lead plaintiff have the largest financial interest, the PSLRA requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also Reimer v. Ambac Fin. Grp., Inc.*, No. 08 Civ. 411(NRB), 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008); *In re Elan Corp. Sec. Litig.,* No. 02 Civ. 865 (WK) (FM), 2002 U.S. Dist. LEXIS 23162, at *7 (S.D.N.Y. Dec. 3, 2002). Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy of representation are the most relevant provisions to the determination of Lead Plaintiff under the PSLRA and a movant for lead plaintiff "need only make a 'preliminary showing' as to those two

prerequisites." *Alkhoury v. Lululemon Athletica, Inc.*, No. 13 Civ. 4596 (KBF), 2013 WL 5496171, at *2 (S.D.N.Y. Oct. 1, 2013).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where class representatives have claims typical of those shared by the class members. Fed. R. Civ. P. 23(a)(3). A claim is typical when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Bank of Amer. Corp. Sec., Derivative, and Emps. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (citing *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir.2009)). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *In re Methly Tertiary Butyl Ether (MTBE) Products Liability Litig.*, 241 F.R.D. 185, 197-98 (S.D.N.Y. 2007). The typicality requirement is plainly satisfied in the instant case, where the NYC Funds seek the same relief and advance the same legal theories as class members on nearly all of the securities issued by ARCP during the class period.

Here, in addition to $10.3 million in losses from ARCP stock investments, the NYC Funds also have approximately $1.4 million in losses from purchases of debt securities. None of the Related Actions have advanced any claims on behalf of bond purchasers, pursuant to the Securities Act. Yet, the claims subject to Section 11 of the Securities Act and arising from Defendants' debt offerings should be brought since the same misstated financials that have given rise to the Related Actions' Exchange Act claims were also included in the offering documents provided to ARCP's bond investors. Additionally, pursuant to Securities Act, those who signed the offering documents also may be liable for the issuance of false financial statements – including the underwriters and auditor. As such, appointment of a lead plaintiff who purchased and has a large financial interest in multiple bonds will best represent bond holders by enabling

9

claims against additional, essential defendant parties who are not yet named in the Related Actions, and who, if ultimately found liable, could serve as an additional source of recovery for those injured class members. To date, bond purchaser class members' interests have not been protected. As one court has noted:

> The problem of stock versus bonds, in my view, is that inasmuch as nobody seems to dispute the fact that something in the neighborhood of 85 percent of the losses here were suffered with respect to the bonds and inasmuch as whatever pot of money is available someday to settle this case, as surely there will be, will be finite, there is going to be an issue, both in negotiating the size of the pot and in whacking it up, as to the respective interest of stockholders and bondholders, former stockholders and bondholders, and I am sufficiently troubled by that that I think it inadvisable to allow a stock trader, a stockholder, alone to represent the entire class. So I am perfectly happy to have Hermes as lead plaintiff on behalf of the equity. But because of this concern, I think it appropriate to appoint also a lead plaintiff on behalf of the debt, the debt traders, and I will come to whom in a minute.

Transcript of Proceedings, Hearing held on May 21, 2004 at 42:21-25-43:1-10, *In re Parmalat Sec. Litig.*, 04 Civ. 0030 (LAK) (S.D.N.Y. filed Jan. 5, 2004). Appointment of the NYC Funds as Lead Plaintiff will ensure that both debt and equity purchasers' claims are actively prosecuted and that the plan of allocation for any distribution of funds as between bond and stock purchasers is reasonable and fair.

Moreover, should another investor with larger common stock losses than the NYC Funds file a lead plaintiff motion, the logic in the Second Circuit's *Hevesi v. Citigroup*, 366 F.3d. 70, 82 (2d Cir. 2004) decision does not detract from the Court appointing the NYC Funds as a Co-Lead Plaintiff to ensure adequate representation of the interests of all class members. In *Hevesi*, an investor who had purchased both equity and debt securities was appointed lead plaintiff during the initial lead plaintiff briefing process, but then later added additional named plaintiffs who had purchased bonds in other offerings in which the appointed lead plaintiff had not purchased. *Id.* at 74. After the district court granted class certification, certain underwriter

defendants challenged the appointment of additional named plaintiffs (and thus the inclusion of additional offerings). In response, the Second Circuit acknowledged the district court's discretion to appoint bond purchasers representing offerings otherwise unaccounted for in the litigation to "ensure that the litigation will continue to focus on the claims raised by bondholders." *Id.* at 82. In so doing, the Second Circuit acknowledged that "in some cases, the lead plaintiff will not have standing to sue on every claim" and affirmed the addition of new named plaintiffs to cure the standing issue. *Id.* Therefore, despite the Second Circuit's conclusion that the lead plaintiff may add additional plaintiffs to help advance the interests of the class to ensure standing on all claims, it nowhere precluded district courts from using their discretion to appoint at the outset a bond-purchaser lead plaintiff that would ensure that class interests are fully represented throughout the litigation.

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members [d]o not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous [advocacy]." *Weltz*, 199 F.R.D. at 133. The NYC Funds are an adequate representative for the class. The NYC Funds purchased both ARCP equity and debt securities during the Class Period and, like other putative class members, suffered a loss in the form of diminution of the value of those securities. Moreover, the NYC Funds have retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and have timely submitted their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Additionally, the NYC Funds are precisely the type of institutional investor that the PSLRA intended to serve as lead plaintiff. *See* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.) (the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake") (reprinted at 1995 U.S.C.C.A.N. 730, 733). The NYC Funds have experience serving as lead plaintiff in federal securities class actions and have a demonstrated record of success in such cases. For example, in *In re Countywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), the NYC Funds and certain other New York State pension funds oversaw litigation resulting in a recovery of $624 million for investors. In addition, certain of the NYC Funds and other funds recovered $169 million for class members in *In re Juniper Networks, Inc. Securities Litigation*, No. 3:06-cv-4327-MJJ (N.D. Cal.). And in *In re Wachovia Equity Securities Litigation*, No. 1:08-cv-06171 (S.D.N.Y.), the NYC Funds, along with other funds, achieved a $75 million settlement for the benefit of the class.

The New York City Law Department actively staffs and oversees litigation on behalf of the NYC Funds. *See In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 570 (D.N.J. 2006) (describing "various benefits" to the appointment of a group of institutional investors, including that general counsel for one fund had "eight years of experience overseeing outside counsel in complex litigation" as well as staff members dedicated to managing oversight and prior experience as lead plaintiff). Moreover, the NYC Funds chose their proposed lead counsel through a competitive bidding process designed to secure accomplished, qualified counsel at the most efficient cost to class members. Indeed, "the lead plaintiff owes a fiduciary duty to obtain the highest quality representation at the lowest price" and "competitive bidding for the lead

counsel role tends to reduce substantially the amount of fees awarded and tends to increase the amount of recovery to the class." *In re Network Assoc., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1033 (N.D. Cal. 1999); *see also In re Commtouch Software Ltd. Sec. Litig.*, No. C 01-00719 WHA, 2001 WL 34131835, at *5 (N.D. Cal. June 27, 2001). Here, NYC Funds have honored their fiduciary duty to prospective class members by choosing their proposed lead counsel through a competitive bidding process. Due to the NYC Funds' selection of counsel and oversight of litigation, NYC Funds satisfy the PSLRA's prerequisites for appointment as lead plaintiff by ensuring that the litigation will be prosecuted solely for the benefit of the class. .

### D. The Court Should Appoint Cohen Milstein as Lead Counsel

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should not disturb the lead plaintiff's selection of counsel unless such interference is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The NYC Funds have selected Cohen Milstein to serve as Lead Counsel, and appointing Cohen Milstein as Lead Counsel would be prudent to protect the interests of the class.

As detailed in its firm resume,[4] Cohen Milstein has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. Thus, the Court may be confident that the class will receive the highest caliber of legal representation in full compliance with the mandates of the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Reitan v. China Mobile Games & Entertainment Grp., Ltd.*, Nos. 14–CV–4471 (KMW), 2014 WL

---

[4] A copy of Cohen Milstein's firm resume is attached to the Lometti Decl. as Exhibit E.

13

6491433, at *4 (S.D.N.Y. Nov. 20, 2014) ("when making the decision to approve proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience").

## IV. CONCLUSION

Based on the foregoing, the NYC Funds respectfully request that the Court: (i) appoint them as Lead Plaintiff; (ii) appoint Cohen Milstein as Lead Counsel; and (iii) grant such other relief as the Court may deem to be just and proper.

Dated: December 29, 2014	Respectfully submitted,

**COHEN MILSTEIN SELLERS
   & TOLL PLLC**

_____/s/ Christopher Lometti_____
Christopher Lometti
88 Pine St., 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
clometti@cohenmilstein.com

Steven J. Toll
Julie Goldsmith Reiser
1100 New York Ave. N.W., Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
jreiser@cohenmilstein.com

*Counsel for New York City Pension Funds*